UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE PHYLLIS J. HAMILTON, JUDGE

MONIQUE PEREZ, THAXTON V.
ROWE, JR., PORCELYNNE HAWTHORNE,
CORRY A. WILLIAMS, KARLA P.
SALAZAR, BRIAN LYNCH, SEZGIN UNAY,
JOHN SOROCENSKI, BRANDON GRZAN,
JASON L. HOFFMAN, SONA K. ANAND,
JASON M. OTTO, ANTHONY SOSA AND
ANTHONY AUSTIN, INDIVIDUALLY AND
ON BEHALF OF ALL OTHERS SIMILARLY
SITUATED.

PLAINTIFFS,

VS.                              NO. C-14-00989 PJH
                                 PAGES 1 - 36
WELLS FARGO & COMPANY, WELLS FARGO
BANK, N.A.,  WFC HOLDINGS  CORPORATION,
WACHOVIA CORPORATION, WACHOVIA BANK, N.A..
AND DOES 1-50, INCLUSIVE.

DEFENDANTS.
_____

OAKLAND, CALIFORNIA
WEDNESDAY, MARCH 18, 2015
TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

**FOR PLAINTIFFS:**
**WILLS LAW FIRM, PLLC**
1776 YORKTOWN STREET, SUITE 570.
HOUSTON, TEXAS 77056.

BY:  RHONDA WILLS, ATTORNEY AT LAW

FURTHER APPEARANCES ON NEXT PAGE.

REPORTED BY:  KATHERINE WYATT, CSR, RPR, RMR

```
1   FURTHER APPEARANCES:

2   ALSO FOR PLAINTIFFS:

3   PADILLA & RODRIGUEZ, LLP

4   601 SOUTH FIGUEROA STREET, SUITE 4050

5   LOS ANGELES, CALIFORNIA 90017

6   BY:  JOSE MOISES CEDILLOS, ESQUIRE.

7

8   FOR DEFENDANTS:

9   SEYFARTH SHAW, LLP

10  WORLD TRADE CENTER EAST

11  TWO SEAPORT LANE

12  SUITE 300

13  BOSTON, MA 02210-2028

14  BY:  RICHARD L. ALFRED, ESQUIRE.

15  AND.

16  SEYFARTH SHAW, LLP

17  700 MILAM STREET

18  SUITE 1400

19  HOUSTON, TEXAS 77002

20  BY:  TIMOTHY M. WATSON, ESQUIRE

21

22

23

24

25
```

```
1    MARCH 18, 2015                    9:00 O'CLOCK A.M.

2

3                    P R O C E E D I N G S

4         THE CLERK:  CALLING CIVIL CASE NUMBER 14-989, PEREZ, ET

5    AL VERSUS WELLS FARGO.

6       COUNSEL, PLEASE STEP FORWARD, AND STATE YOUR APPEARANCES.

7         MR. ALFRED:  YOUR HONOR, RICHARD ALFRED.  AND WITH ME,

8    MY PARTNER, TIMOTHY WATSON FOR THE DEFENDANTS.

9        AND WITH THE COURT'S PERMISSION IF I MAY JUST ASK MR.

10   WATSON IS PREPARED TO ADDRESS THE COURT'S QUESTIONS REGARDING THE

11   FIRST TWO ARGUMENTS THAT WE RAISE, RULE 8 AND STANDING, AND I AM

12   PREPARED TO ADDRESS THE OTHER ARGUMENTS REGARDING MR.  OTTO'S

13   CLAIM IN THE SECOND COUNT AND THE MOTION TO DISMISS OR STRIKE THE

14   COLLECTIVE ALLEGATIONS.

15            THE COURT:  OKAY.

16            MR. ALFRED:  THANK YOU.

17            MS. WILLS:  GOOD MORNING, YOUR HONOR.  RHONDA WILLS ON

18   BEHALF OF THE PLAINTIFFS.  I ALSO HAVE WITH ME, YOUR HONOR,

19   MOISES CEDILLOS.  MR. CEDILLOS IS WITH MR. PADILLA'S FIRM.  HE

20   LATE YESTERDAY, YOUR HONOR, SUBMITTED AT PRO HAC VICE

21   APPLICATION, AND WE WOULD REQUEST THE COURT'S PERMISSION THAT HE

22   BE ALLOWED TO APPEAR THIS MORNING, ALTHOUGH I WILL BE MAKING THE

23   ARGUMENT FOR PLAINTIFFS.

24            THE COURT:  ALL RIGHT.  I WASN'T HERE YESTERDAY, SO I

25   HAVE NOT SEEN THE PRO HAC VICE APPLICATION.  BUT SINCE HE'S NOT
```

1    MAKING A PRESENTATION, THERE'S NO PROBLEM.

2            **MS. WILLS:**  THANK YOU, YOUR HONOR.

3            **THE COURT:**  OKAY. AND NICHOLE, MAYBE YOU COULD LOOK.

4            **THE CLERK:**  I SAW IT THIS MORNING, BUT I HAVEN'T HAD A

5    CHANCE TO LOOK IT UP.  BUT I NEED TO LOOK UP TO --

6            **THE COURT:**  OKAY.  YOU CAN BE SEATED.  AND YOU CAN BE

7    SEATED.  WE'LL START FIRST WITH THE DEFENDANTS' ARGUMENTS WITH

8    REGARD TO THE MOTION TO DISMISS AND/OR STRIKE.  LET'S DO THE

9    MOTION TO DISMISS FIRST, IF YOU WISH, IF YOU WOULD LIKE TO.

10       DOESN'T MATTER TO ME, ACTUALLY, IF BETWEEN YOU YOU WORKED

11   OUT A DIFFERENT ORDER.  IT'S YOUR MOTION.  YOU CAN DO IT IN

12   WHATEVER ORDER YOU WISH.

13           **MR. WATSON:**  GOOD MORNING, JUDGE.  TIM WATSON.  I'M

14   REPRESENTING THE DEFENDANTS.  AND AS MR. ALFRED SAID, I WILL

15   ADDRESS THE DEFENDANTS' ARGUMENTS REGARDING THE PLEADING

16   DEFICIENCIES, AS WELL AS OUR ARGUMENT THAT THE PLAINTIFFS HAVE

17   NOT ADEQUATELY ALLEGED STANDING OR DO NOT HAVE STANDING AND,

18   THEREFORE, THE COURT LACKS SUBJECT MATTER JURISDICTION.

19       ON THE PLEADING DEFICIENCIES, JUDGE, AS WE'VE SAID IN OUR

20   BRIEF, THE PLEADING IS NEEDLESSLY LONG AND REPETITIVE AND

21   REDUNDANT.  AND WE BELIEVE THAT IT FAILS TO COMPLY WITH RULE 8

22   FOR THOSE REASONS.

23       WE'VE LISTED IN THE BRIEFING PAPERS SOME EXAMPLES OF THE

24   REPETITIVE NATURE, THE INCONSISTENCIES IN THE COMPLAINT AND THE

25   REDUNDANCIES.  I'M GLAD TO WALK THROUGH THOSE IF THE COURT WOULD

1    LIKE ME TO.

2        WE'VE ALSO REURGED OUR ARGUMENT THAT EVEN THOUGH THE

3    COMPLAINT CONTINUES TO BE UNWIELDILY, IT'S BECOME LONGER AND MORE

4    UNWIELDILY.  THE PLAINTIFFS HAVE ADDED ALLEGATIONS THAT PURPORT

5    TO BE SPECIFIC ALLEGATIONS ABOUT THE HOURS THAT THEY HAVE WORKED,

6    BUT AT THIS POINT, YOUR HONOR, WE STILL DON'T BELIEVE THAT THEY

7    HAVE COMPLIED WITH THE REQUIREMENTS OF LANDERS BECAUSE THEY HAVE

8    NOT ALLEGED WITH ENOUGH SPECIFICITY IN THE CONTEXT OF THE CASE AS

9    IT STANDS NOW, ENOUGH -- WITH ENOUGH SPECIFICITY TO ALERT THE

10   DEFENDANTS TO THE ACTUAL HOURS THEY ALLEGE, THE OVERTIME HOURS

11   THAT THEY ALLEGE TO HAVE WORKED AND THE SPECIFIC WORKWEEKS THAT

12   THEY HAVE MENTIONED.

13       THEY HAVE MENTIONED SOME SPECIFIC WORKWEEKS, BUT THEY HAVE A

14   FORMULAIC RECITATION FOR EACH PLAINTIFF IN WHICH THEY AT FIRST

15   SAY THAT EACH PLAINTIFF GIVES AN APPROXIMATION OF THE HOURS

16   WORKED.

17       AND THEY HAVE THAT LAID OUT.  AND THEN, THEY GO TO THE

18   SPECIFIC WORKWEEKS.  AND THEN, THEY HAVE AN APPROXIMATION OF

19   THOSE HOURS WORKED.  SO THEY HAVE AN APPROXIMATION OF AN

20   APPROXIMATION.

21       AND IN LANDERS THE COURT SAID THAT ALTHOUGH THERE DOESN'T

22   NEED TO BE A MATHEMATICAL CERTAINTY, THEY SAID THE ANALYSIS IS

23   CONTEXT SPECIFIC AND IT DEPENDS ON THE CONTEXT OF THE CASE.  AND

24   SPECIFICALLY THAT THE COURT IN LANDERS SAID THAT TYPICALLY IN THE

25   COMPLAINT THE PLAINTIFF DOES NOT HAVE ACCESS TO THE RECORDS AND

1    THE INFORMATION THAT WOULD ALLOW THEM TO MAKE SPECIFIC

2    ALLEGATIONS OF THE NUMBER OF HOURS WORKED.

3         AND IN OUR CASE, JUDGE, WE'VE GONE THROUGH SIGNIFICANT

4    DISCOVERY.  WE HAVE PRODUCED ALL OF THE PAYROLL AND PAY DATA

5    RECORDS THAT WE HAVE WITH RESPECT TO THE DEFENDANTS. SO IN THAT

6    CONTEXT WE BELIEVE THEY STILL HAVE NOT MET THE LANDERS STANDARD.

7         REGARDING STANDING, JUDGE, THE STANDING ARGUMENT WE BELIEVE

8    IS A STRAIGHTFORWARD, SIMPLE ARGUMENT.  THE SECOND-AMENDED

9    COMPLAINT MAKES A SINGLE ALLEGATION THAT THE PLAINTIFFS WERE

10   EMPLOYED BY ALL OF THE DEFENDANTS.  AND THAT IS IT.  THERE IS NO

11   FURTHER ALLEGATION ABOUT WHAT DEFENDANT EMPLOYED THEM, WHAT

12   DEFENDANT ENGAGED IN WHAT CONDUCT.

13        THERE'S NO SPECIFIC ALLEGATIONS ABOUT HOW ANY PARTICULAR

14   DEFENDANT DID ANYTHING TO THE PLAINTIFFS.  AND THE CASE LAW, AS

15   WE'VE POINTED OUT IN OUR MOTION, IS VERY CLEAR THAT, YOU KNOW,

16   AFTER TWOMBLY AND IQBAL A PLAINTIFF MUST SPECIFY HOW EACH

17   DEFENDANT ALLEGEDLY HARMED THE PLAINTIFF.

18        AND IN PARTICULAR IN THE FAIR LABOR STANDARDS ACT CONTEXT,

19   JUDGE, WE'VE CITED A NUMBER OF CASES.  THEY ARE IN FOOTNOTE SIX

20   OF OUR REPLY BRIEF THAT HOLD THAT A PLAINTIFF CANNOT ALLEGE

21   BROADLY ALLEGATIONS AGAINST A NUMBER OF RELATED CORPORATE

22   ENTITIES.

23        THAT IS NOT SUFFICIENT TO INVOKE THE COURT'S JURISDICTION.

24   THERE IS NOT -- THERE'S NO STANDING IN THOSE SITUATIONS.

25        AND THEN, LASTLY, JUDGE, WITH RESPECT TO THE THAXTON ROWE,

1  THE PLAINTIFF HAS CONCEDED THAT MR. ROWE DOES NOT ALLEGE A GAP

2  TIME CLAIM UNDER THE FAIR LABOR STANDARDS ACT.  AND OUR MOTION

3  POINTS OUT THAT IN ADDITION TO NOT HAVING A GAP TIME HE HAS

4  ABSOLUTELY NO CLAIM UNDER THE FEDERAL STATUTE BECAUSE TAKING HIS

5  ALLEGATIONS AS TRUE HE WORKED AT MOST 35 HOURS A WORKWEEK.

6       SO HE'S NEVER CROSSED THE THRESHOLD INTO OVERTIME TERRITORY.

7  AND, THEREFORE, HE HAS NO CLAIM UNDER THE FAIR LABOR STANDARDS

8  ACT.

9       THAT, IN A NUTSHELL, IS THE ARGUMENTS THAT I'M ADDRESSING.

10 I'M HAPPY TO ANSWER ANY QUESTIONS THE COURT HAS.  IF NOT, I'LL

11 TURN IT OVER TO MR. ALFRED.

12            **THE COURT:**  ALL RIGHT.  MR. ALFRED.

13            **MR. ALFRED:**  THANK YOU, YOUR HONOR.

14      AGAIN, RICHARD ALFRED FOR THE DEFENDANTS IN THIS CASE.

15      THE MOTION TO DISMISS OR STRIKE THE PLAINTIFFS' COLLECTIVE

16 ALLEGATIONS SHOULD BE GRANTED BECAUSE THE COMPLAINT CONTAINS

17 FATAL DEFICIENCIES THAT MAKE COLLECTIVE TREATMENT INAPPROPRIATE.

18      THE PLAINTIFFS ARGUE FORCIBLY IN THEIR OPPOSITION BASED ON A

19 2012 CASE OUT OF THE NORTHERN DISTRICT OF ILLINOIS CALLED

20 DOMINGUEZ AGAINST MICRO CENTER FOR THE PRINCIPLE THAT -- AND TO

21 QUOTE FROM THE CASE:

22            "AS GENERAL RULE, WHETHER A SUIT CAN BE

23       MAINTAINED AS A CLASS OR COLLECTIVE ACTION IS

24       DETERMINED NOT ON A RULE 12 (B) (6) MOTION, BUT ON A

25       MOTION TO CERTIFY A CLASS ACTION UNDER RULE 23 OR A

```
1          MOTION TO CERTIFY A COLLECTIVE ACTION UNDER 29 U.S.C.

2          216 (B)."

3          WHAT THE PLAINTIFFS DON'T DO IS QUOTE THE NEXT SENTENCE OF

4     THE SAME PARAGRAPH WHICH GOES ON TO SAY -- AND, AGAIN, A QUOTE:

5               "AN EXCEPTION TO THE GENERAL RULE APPLIES WHERE

6          THE COMPLAINT REVEALS FATAL DEFICIENCIES WITH CLASS

7          OR COLLECTIVE ACTION CLAIMS THAT WARRANT THEIR

8          DISMISSAL AT THE PLEADING STAGE."

9          SUCH FATAL DEFICIENCIES IN THE SECOND-AMENDED COMPLAINT,

10    WHICH, BY THE WAY, IS 92 PAGES, AND MORE THAN 300 PARAGRAPHS,

11    WARRANT DISMISSAL OF THE FAIR LABOR STANDARDS ACT COLLECTIVE

12    ALLEGATIONS.

13          AND I JUST WANT TO SAY THE NINTH CIRCUIT'S DECISION IN

14    VINOLE AGAINST COUNTRYWIDE HOME LOANS SUPPORTS THE PREEMPTIVE --

15    A PREEMPTIVE MOTION TO DENY A CLASS CERTIFICATION IN THAT CASE.

16    AND WE BELIEVE THAT THE SAME PRINCIPLE SHOULD APPLY WITH RESPECT

17    TO A COLLECTIVE ACTION.

18          THE THREE DEFICIENCIES THAT I'VE JUST MENTIONED ARE IN

19    ORDER.  FIRST, WITH RESPECT TO MR. OTTO'S INDIVIDUAL CLAIM FOR

20    THE SECOND CAUSE OF ACTION, LET'S LOOK AT THE HISTORY OF THE

21    CASE.  THIS CASE WAS BROUGHT ALMOST A YEAR AGO.

22          MR. OTTO IS THE ONLY INDIVIDUAL WHO HAS ALLEGED A SHORT

23    BREAK, AN UNPAID SHORT BREAK CLAIM IN AN OVERTIME WEEK.  AND THAT

24    ALLEGATION IS LIMITED TO ONE 10-MINUTE BREAK ON A SPECIFIC DATE

25    REFERENCED IN THE COMPLAINT.
```

1    THAT'S THE ONLY CLAIM THAT IS MADE:  A 10-MINUTE BREAK ONCE

2   IN THE THREE YEARS STATUTE OF LIMITATIONS PERIOD, THE MAXIMUM

3   PERIOD UNDER THE FAIR LABOR STANDARDS ACT THAT COULD APPLY.

4    AND HE MAKES THAT CLAIM WITH NO SPECIFICITY ABOUT WHAT THAT

5   TEN MINUTES WAS FOR.  WE'RE NOT GOING TO GO OUTSIDE THE

6   PLEADINGS.  WE UNDERSTAND WHAT IT WAS FOR, BUT WE'RE NOT GOING TO

7   GO OUTSIDE THE PLEADINGS.  HE MAKES NO ALLEGATIONS ABOUT WHETHER

8   HE ASKED FOR IT, WHETHER IT WAS A MEAL BREAK WHERE HE WAS NOT

9   INTERRUPTED FROM WORK, WHERE HE WAS ALLOWED TO EAT THE FULL MEAL

10  THAT HE WANTED TO EAT, WHERE HE HAD AN AGREEMENT WITH HIS

11  SUPERVISOR.

12   HE GIVES NO INFORMATION ABOUT THAT AT ALL.  BUT MORE

13  RELEVANT IS THAT 10-MINUTE BREAK IS A DE MINIMIS CLAIM, YOUR

14  HONOR.  AND AS A DE MINIMIS CLAIM IT'S EXCEPTED FROM OVERTIME

15  TREATMENT.

16   SO IN DETERMINING WHETHER TIME SHOULD BE TREATED AS DE

17  MINIMIS, IN THE NINTH CIRCUIT WE LOOK TO THE LINDOW TEST.  THE

18  LINDOW TEST IS BROKEN DOWN INTO THREE FACTORS THAT ARE VIEWED IN

19  THE TOTALITY.  IT'S NOT A BRIGHT LINE TEST.  IT LOOKS AT THE

20  FACTORS IN A TOTALITY.

21   THE FIRST PART OF THAT TEST IS THE REGULARITY OF THE

22  ADDITIONAL WORK, THAT TEN MINUTES.  OBVIOUSLY, ONE 10-MINUTE

23  BREAK ISN'T REGULAR.  IT'S NOT REPEATED.  THERE'S NO ALLEGATION

24  THAT IT WAS REPEATED.  ONE 10-MINUTE BREAK.

25   AND, IN FACT, PLAINTIFFS DON'T RESPOND TO THAT PART OF THE

1    LINDOW TEST AND, THEREFORE, ACCEDE TO IT.

2        THE SECOND PART OF THE TEST IS THAT THE AGGREGATE AMOUNT OF

3    COMPENSABLE TIME HAS TO BE DE MINIMIS.  AND IN LINDOW, IN FACT,

4    IT WAS A 15-MINUTE PERIOD THAT WAS AT ISSUE THAT WAS REPEATED TWO

5    OR THREE TIMES A MONTH.

6        AND THE NINTH CIRCUIT IN THAT CASE SAID:

7            "WELL, THAT'S STILL DE MINIMIS.  IT'S NOT -- IF

8        YOU AGGREGATE IT IT'S NOT ENOUGH TIME TO WARRANT

9        OVERTIME PAYMENT."

10       COURTS HAVE HELD THAT SIMILAR AMOUNTS OF TIME OCCURRING

11   DAILY MET THE DE MINIMIS REQUIREMENTS OF LINDOW.  AND ONE POINT

12   THAT THE PLAINTIFFS MAKE IN THEIR OPPOSITION PAPERS THAT IS

13   REJECTED SOUNDLY BY THE COURTS IS YOU DON'T AGGREGATE ACROSS A

14   COLLECTIVE, OR A CLASS FOR THAT MATTER.  HERE WE'RE LOOKING JUST

15   AT A COLLECTIVE CLAIM.

16       AND YOU DON'T AGGREGATE ACROSS THE COLLECTIVE CLAIM FOR A

17   COUPLE OF REASONS.  FIRST OF ALL, IN AN FLSA ACTION, YOUR HONOR,

18   WE DON'T KNOW WHO MIGHT OPT IN.

19       PLAINTIFFS HERE ALLEGE A COLLECTIVE OF 150,000 PEOPLE.

20   150,000 PEOPLE.  AND BASED ON ONE 10-MINUTE CLAIM FROM MR. OTTO

21   AFTER A YEAR OF LITIGATION LOOKING AT THE 13 ORIGINAL PLAINTIFFS,

22   PLUS THREE OPT-INS.  THAT'S ALL THEY HAVE GOTTEN IS THREE OPT-INS

23   IN A YEAR WHO THEY HAVE ADDED AS NAMED PLAINTIFFS.

24       WE BELIEVE CONTRARY TO THE COURT'S ORDER, DECEMBER 11 ORDER.

25   BUT PUTTING THAT ASIDE, THEY SEEK SOMEHOW TO AGGREGATE THAT

1    ACROSS SOME UNKNOWN NUMBER OF PEOPLE WHO MAY OR MAY NOT OPT IN,

2    WHO MAY OR MAY NOT HAVE CLAIMS.  THERE'S NO INFORMATION IN THE

3    COMPLAINT.

4         THE COURTS HAVE SAID:

5              "YOU CAN'T DO THAT.  YOU CAN'T AGGREGATE ACROSS A

6         CLASS OR A COLLECTIVE.  IF YOU COULD DO THAT YOU

7         WOULD DEFEAT THE WHOLE PURPOSE OF THE DE MINIMIS

8         TEST."

9         AND THEN, THE THIRD FACTOR -- AND, BY THE WAY, THE CASES

10   THAT WE RELY ON FOR THAT PRINCIPLE ARE REED AGAINST COUNTY OF

11   ORANGE.  THESE ARE CITED IN OUR PAPERS.  CHOW AGAINST TYSON

12   FOODS, RUTTI AGAINST LOJACK. AND THEN, THERE ARE OTHER CASES IN

13   OUR REPLY BRIEF AT PAGE SEVEN THAT SIMILARLY MAKE THAT POINT.

14        THE THIRD LINDOW FACTOR IS THE PRACTICAL ADMINISTRATIVE

15   DIFFICULTY OF RECORDING ADDITIONAL TIME.  AND IN LINDOW, IT WAS

16   DIFFICULT FOR THE DEFENDANT TO DETERMINE HOW MUCH TIME WAS

17   COMPENSABLE VERSUS HOW MUCH TIME PRE OR POST SHIFT WAS NOT

18   COMPENSABLE.

19        AND SO THE COURT SAID:

20             "WELL, THAT WOULD REQUIRE AN INDIVIDUAL ANALYSIS

21        OF EVERY OFF-THE-CLOCK CLAIM.  EVERY TIME A PLAINTIFF

22        ALLEGED 15 MINUTES OF OFF-THE-CLOCK TIME, WE WOULD

23        HAVE TO LOOK. THE DEFENDANT WOULD HAVE TO MAKE AN

24        ASSESSMENT ABOUT WHETHER THAT WAS COMPENSABLE TIME OR

25        NOT COMPENSABLE TIME."

1    COURT SAID:

2         "THAT'S JUST NOT PRACTICAL.  IT DOESN'T COMPORT

3    WITH THE MODERN WORKPLACE," AND FOUND THAT THE PRACTICAL

4    ADMINISTRATIVE DIFFICULTY WAS TOO GREAT TO WARRANT GOING FORWARD

5    WITH THAT.  AND THAT PRONG THEN WAS SATISFIED IN LINDOW.

6         SIMILARLY HERE, YOUR HONOR, AS WE ARGUE IN OUR PAPERS, EVERY

7    SINGLE ALLEGED SHORT MEAL BREAK -- AND I'M GOING TO GET TO THIS

8    IN A MINUTE -- BUT EVERY SINGLE SHORT MEAL BREAK BY EVERY SINGLE

9    PERSON WHO MAY OPT INTO THE CASE WOULD HAVE TO BE ANALYZED

10   SPECIFICALLY BY THE EMPLOYER IN ORDER TO DETERMINE:  IS IT A BONA

11   FIDE MEAL BREAK OR IS IT AT REST BREAK?  REST BREAKS ARE

12   COMPENSABLE.  BONA FIDE MEAL BREAKS ARE NOT.  AND WELLS FARGO

13   WOULD HAVE TO MAKE THAT DETERMINATION ON A CASE-BY-CASE BASIS,

14   WHICH IS ULTIMATELY WHAT THE DEPARTMENT OF LABOR SAYS.

15        THE SECOND DEFICIENCY:  OTTO MAKES NO ALLEGATIONS ABOUT ANY

16   OTHER MEMBERS OF THE PUTATIVE COLLECTIVE WHO HAVE ACTUAL UNPAID

17   BREAK CLAIMS THAT THEY CAN ASSERT.

18        FIRST OF ALL, AS I REFERENCE, NONE OF THE 13 PLAINTIFFS,

19   NONE OF THE OPT-INS WHO WERE NAMED HAVE CLAIMS OTHER THAN THE ONE

20   STATED BY OTTO.

21        SECOND, THE COMPLAINT HAS IN PARAGRAPH 83 COMPLETELY

22   REPEATED WORD FOR WORD IN PARAGRAPH 254 -- I'M SORRY.  IT'S

23   PARAGRAPH 85 AND PARAGRAPH 254.  IT LISTS THREE INDIVIDUALS WHO

24   THE PLAINTIFFS SAY ALSO HAD OFF-THE-CLOCK UNPAID -- I'M SORRY --

25   UNPAID SHORT BREAKS.

1      EACH OF THOSE INDIVIDUALS DOESN'T HAVE A CLAIM.  WITHOUT

2  DISPUTE DOESN'T HAVE A CLAIM.  COULDN'T BE PART OF THE PUTATIVE

3  COLLECTIVE HERE.

4      MR. VANGALACOS (PHONETIC) SETTLED HIS CLAIMS, RELEASED WELLS

5  FARGO, SO HE COULDN'T BE PART OF THE COLLECTIVE.

6      MS. POSEY (PHONETIC) AND MS. PASTORA (PHONETIC), THE TWO

7  OTHER INDIVIDUALS, HAD CLAIMS ALLEGED TO HAVE BEEN IN 2011.

8  AGAIN, NO DETAIL ABOUT WHAT THOSE CLAIMS ARE IN THE COMPLAINT IN

9  THOSE PARAGRAPHS.

10      BUT A CLAIM IN 2011 UNDER THE FAIR LABOR STANDARDS ACT IS

11  BARRED.  THOSE INDIVIDUALS COULDN'T OPT-IN TO THIS CASE.  THEY

12  COULDN'T BE PART OF THE PUTATIVE COLLECTIVE BECAUSE THE MAXIMUM

13  LOOK-BACK PERIOD IS THREE YEARS.  AND THE STATUTE OF LIMITATIONS

14  IN A COLLECTIVE ACTION, UNLIKE A CLASS ACTION RUNS -- IS TOLLED

15  ONLY WHEN THE OPT-IN NOTICE IS FILED WITH THE COURT.

16      IT'S TOO LATE FOR THEM TO FILE AN OPT-IN NOTICE NOW.  SO

17  THERE'S NO INDIVIDUAL NAMED, MENTIONED IN THE COMPLAINT.  ALL THE

18  COMPLAINT DOES IS MAKE KIND OF BALD-FACE, CONCLUSORY STATEMENTS

19  ABOUT OTHERS; THAT MR. OTTO THINKS THERE ARE OTHER PEOPLE WHO

20  HAVE SIMILARLY BEEN VICTIMIZED BY WELLS FARGO.

21      BUT NO INFORMATION ABOUT THAT.  THERE'S NO ALLEGATION.

22  THERE'S NO DECLARATION.  THERE'S NO OTHER EVIDENCE OR MATERIALS

23  SUBMITTED TO THE COURT, PART OF THE RECORD, THAT WOULD

24  ENABLE -- THAT WOULD ENABLE A DETERMINATION BY THE COURT THAT

25  THERE ARE OTHERS.

1    AND, IN FACT, THE EVIDENCE IN THIS CASE, THREE OPT-INS OUT

2    OF AN ALLEGED PUTATIVE COLLECTIVE OF 150,000 PEOPLE IN A YEAR

3    DOESN'T EXACTLY DEMONSTRATE AN INTEREST ACROSS THIS ALLEGED

4    GROUP, THIS ALLEGED COLLECTIVE IN JOINING THE LAWSUIT.

5    ONE OTHER POINT WITH RESPECT TO THIS DEFICIENCY, YOUR

6    HONOR -- AND IT'S AN IMPORTANT POINT -- THE COURTS HAVE GENERALLY

7    --

8    **THE COURT:** DOES THAT MEAN YOUR OTHER POINTS WEREN'T

9    IMPORTANT?

10    **MR. ALFRED:** NO, THEY ARE ALL VERY IMPORTANT, YOUR

11    HONOR. BUT THIS IS IMPORTANT WITH RESPECT TO THE SECOND

12    DEFICIENCY. COURTS HAVE LOOKED TO THE SIZE OF THE PUTATIVE

13    COLLECTIVE IN DETERMINING WHERE THE STANDARD SHOULD BE FOR

14    INITIAL CERTIFICATION. AND WHERE THE SIZE OF THE COLLECTIVE IS

15    LARGE COURTS IMPOSE A HIGHER BURDEN. AND THE PULLEN AGAINST

16    MCDONALD'S CASE IS THE PRIMARY EXAMPLE, AS IS OUR OTHER CASES

17    CITED.

18    THE THIRD DEFICIENCY THAT I WANT TO GET TO, YOUR HONOR, IS

19    OTTO'S UNPAID BREAK CLAIM IS PREMISED ON A FALLACY, A WRONG,

20    PURE, LEGAL CONCLUSION. THAT LEGAL CONCLUSION IS AND THE

21    ARGUMENT IS THAT ANY BREAK 20 MINUTES OR LESS MUST BE PAID.

22    THAT'S WRONG. THAT'S CLEARLY WRONG. IT'S WRONG WHEN ONE LOOKS

23    AT THE INTERPRETATIVE GUIDANCE SECTION 785.18, 785.19.

24    THE .18 INTERPRETATIVE GUIDANCE, ALSO REFERRED TO AS A

25    REGULATION, DEALS WITH REST BREAKS .19 DEALS WITH MEAL BREAKS.

1   PLAINTIFFS NEVER MENTION THE .19 MEAL BREAK CLAIM BECAUSE THE

2   DETERMINATION HAS TO BE MADE WITH RESPECT TO ANY BREAK THAT IS

3   ALLEGED TO BE A MEAL BREAK, WHETHER IT'S A BONA FIDE MEAL BREAK.

4        IF IT'S A BONA FIDE MEAL BREAK, THERE'S NO OBLIGATION TO

5   PAY.  AND EVEN THOUGH THE INTERPRETATIVE GUIDANCE USES BENCHMARKS

6   FOR TIME, IT ALSO RECOGNIZES, AS DOES THE D.O.L. IN ITS FIELD

7   HANDBOOK, FIELD OPERATORS' HANDBOOK, THAT THAT TIME IS FLEXIBLE.

8        SO, FOR EXAMPLE, IN THE FIELD OPERATIONS HANDBOOK,  THE

9   DEPARTMENT OF LABOR TALKS ABOUT SPECIAL CIRCUMSTANCES, SPECIAL

10  CIRCUMSTANCES REFERENCED IN THE INTERPRETATIVE GUIDANCE 785.19

11  THAT WOULD ALLOW A BONA FIDE MEAL BREAK TO BE A SHORTER PERIOD OF

12  TIME.

13       AND THERE ARE FIVE FACTORS THAT THE DEPARTMENT OF LABOR

14  SPELLS OUT.  AND IT SAYS:

15            "THESE FIVE FACTORS MUST BE DETERMINED ON A

16       CASE-BY-CASE INDIVIDUALIZED BASIS."

17       AND THOSE FIVE FACTORS -- WE LIST THEM IN OUR PAPERS -- ARE

18  SPORADIC OR MINIMAL WORK-RELATED INTERRUPTIONS, WHETHER OR NOT

19  THE TIME IS SUFFICIENT TO EAT A MEAL, WHETHER THERE'S BEEN AN

20  AGREEMENT BETWEEN THE EMPLOYEE AND EMPLOYER.  FOR EXAMPLE:

21            "IF I SHORTEN MY BREAK, SUPERVISOR, MAY I LEAVE

22       WORK EARLY FOR THE DAY TO GO TO MY SON'S BASEBALL

23       GAME, OR GO HOME AND MAKE DINNER, OR WHATEVER."

24       AND THEN, THE FINAL FACTOR IS APPLICABLE STATES AND LOCAL

25  LAWS.  ALL OF THESE FACTORS TAKEN TOGETHER INDICATE THAT IN ORDER

1   TO DETERMINE WHETHER OR NOT A MEAL BREAK IS BONA FIDE REQUIRES AN

2   INDIVIDUALIZED FACT-INTENSIVE INQUIRY SIMILAR TO THE GESSELE

3   AGAINST JACK IN THE BOX INQUIRY OR THE HILLEY INQUIRY, THE CASES

4   CITED IN OR PAPERS.

5        AND THAT INDIVIDUALIZED INQUIRY CAN'T BE AVOIDED.  THERE IS

6   NO BRIGHT LINE TEST.  AND PLAINTIFFS' CASE DEPENDS ON A BRIGHT

7   LINE 20-MINUTE TEST.  AND THAT'S OBVIOUSLY WRONG.  IT'S OBVIOUSLY

8   WRONG UNDER THE INTERPRETATIVE GUIDANCE AND UNDER THE D.O.L.

9        AND THEN, UNDER AN OPINION LETTER WE CITE, A 2004 OPINION

10  LETTER FROM THE DEPARTMENT OF LABOR, AGAIN, SAYS THAT YOU HAVE TO

11  LOOK AT THESE DETERMINATIONS OF A BONA FIDE MEAL BREAK ON A

12  CASE-BY-CASE INDIVIDUALIZED BASIS.

13       YOU HAVE TO UNDERSTAND WHY THE BREAK WAS SHORTER THAN 20

14  MINUTES AND WHETHER IT MET, IN A GENERAL SENSE, LOOKING AT THE

15  ENTIRE SITUATION, WHETHER IT MET THOSE FACTORS AND WAS,

16  THEREFORE, BONA FIDE, EVEN IF IT'S TEN MINUTES.  EVEN IF IT'S TEN

17  MINUTES, AND THAT'S WHAT THE EMPLOYEE AND THE EMPLOYER AGREED.

18       WE LIST A NUMBER OF CASES THAT SUPPORT THAT.  THE BLAIN

19  AGAINST GENERAL ELECTRIC CASE, YOUR HONOR.  I MENTIONED GESSELE,

20  THE JACKSON AGAINST AIRWAYS PARKING CASE AND THE HILLEY AGAINST

21  TACALA CASE JUST LAST YEAR, 2014.

22       FINALLY, YOUR HONOR, THERE ARE SHORT BREAKS THAT ARE TAKEN

23  FOR MATTERS SUCH AS ACCOMMODATION UNDER THE AMERICANS WITH

24  DISABILITIES ACT OR STATE LAWS.  THOSE AREN'T COMPENSABLE.

25  NURSING MOTHER OR LACTATION BREAKS ARE ALSO BY STATUTE NOT

1   COMPENSABLE.

2        SO ALL OF THOSE FACTORS TOGETHER REQUIRE THE CASE-BY-CASE

3   INDIVIDUALIZED ANALYSIS THAT IS REQUIRED AND, THEREFORE, PREVENTS

4   COLLECTIVE CERTIFICATION.

5             **THE COURT:**  ALL RIGHT.

6             **MR. ALFRED:**  YOUR HONOR, I AM -- I'VE FINISHED WHAT I

7   HAD TO SAY REGARDING THE MOTION ITSELF, BUT I CERTAINLY WELCOME

8   QUESTIONS.

9             **THE COURT:**  I DON'T HAVE ANY QUESTIONS.  YOUR POSITION

10  IS, I THINK, FAIRLY WELL STATED.

11       THE PROBLEM I HAVE IS THAT YOUR ARGUMENTS GO TO WHETHER OR

12  NOT A COLLECTIVE ACTION SHOULD BE CERTIFIED.  AND I AM RELUCTANT

13  IN ALMOST EVERY CASE TO MAKE THAT DETERMINATION ON A MOTION TO

14  STRIKE THE ALLEGATIONS.  IT'S TYPICALLY MADE WITH A RECORD AND

15  NOT ON THE PLEADINGS AT THE CERTIFICATION STAGE.

16       SO YOU HAVE SORT OF A HIGH HURDLE TO JUMP OVER IN ORDER TO

17  PERSUADE ME TO GRANT A MOTION TO STRIKE THE ALLEGATIONS AT THIS

18  PARTICULAR EARLY STAGE OF THE CASE, NOTWITHSTANDING THE FACT THAT

19  IT'S BEEN PENDING FOR A YEAR.

20            **MR. ALFRED:**  BUT, YOUR HONOR, IF I COULD SAY -- AND I

21  UNDERSTAND THAT, AND WE'VE READ YOUR PRIOR DECISIONS.  THIS CASE

22  IS DIFFERENT BECAUSE OF THE LEGAL DEFICIENCIES IN THE COMPLAINT.

23  THE LEGAL DEFICIENCIES.  IF MR. OTTO'S A 10-MINUTE BREAK, A

24  10-MINUTE BREAK THAT UNDER THE DE MINIMIS STANDARDS SET FORTH --

25  AND <u>LINDOW</u> IS CLEARLY DE MINIMIS -- HE DOESN'T HAVE A CLAIM.  HE

1    DOESN'T HAVE A CLAIM.

2         AND HIS CLAIM THEN BEING DISMISSED MEANS THAT THERE IS NO

3    COUNT TWO.  THERE IS NO ONE TO BRING A COLLECTIVE CLAIM, JUST AS

4    THERE WAS NO ONE TO BRING A COLLECTIVE CLAIM IN THE FIRST-AMENDED

5    COMPLAINT.

6              **THE COURT:**  OKAY.

7              **MR. ALFRED:**  THANK YOU, YOUR HONOR.

8              **THE COURT:**  ALL RIGHT.  RESPONSE.

9         I STILL HAVE PROBLEMS WITH YOUR COMPLAINT.  I KNOW YOU'VE

10   ADDED A NUMBER OF ADDITIONAL FACTUAL ALLEGATIONS, BUT THE

11   COMPLAINT SUFFERS FROM A HOST OF ISSUES, INCLUDING THE FACT THAT

12   YOU'VE ADDED THREE ADDITIONAL PLAINTIFFS WITHOUT LEAVE OF COURT.

13        I KNOW THAT YOU SAY THAT YOU WOULD JUST FILE ANOTHER

14   LAWSUIT, BUT PERHAPS THAT'S WHAT YOU SHOULD HAVE DONE.  SO YOU

15   ARE GOING TO HAVE TO EXPLAIN WHY IT IS, NOTWITHSTANDING THE ORDER

16   THAT WAS ISSUED, ON THE FIRST-AMENDED COMPLAINT THAT YOU WEREN'T

17   TO ADD ANY NEW PARTIES, WHY YOU DID THAT NOTWITHSTANDING THAT

18   DIRECTIVE.

19        ADDITIONALLY, THE REAL PROBLEM THAT I HAVE WITH THE

20   COMPLAINT IS A FAILURE TO SORT OF CONNECT THE DOTS.  WE'VE GOT

21   NOW 14 PLAINTIFFS.  WE'RE ONLY DEALING WITH THE FAIR LABOR

22   STANDARDS ACT CAUSES OF ACTION NOW, AND I BELIEVE THERE ARE A

23   TOTAL OF TEN PLAINTIFFS THAT ARE ASSERTED IN THE FLSA CLAIMS.

24        BUT YOU'VE GOT -- SO YOU'VE GOT 14 PLAINTIFFS ALL TOGETHER,

25   TEN WITH REGARD TO THESE TWO CAUSES OF ACTION THAT ARE AT ISSUE,

1    AND YOU'VE GOT FIVE DEFENDANTS.  AND THERE STILL HAS BEEN NO

2    ATTEMPT THAT I CAN DISCERN TO LINK A PARTICULAR PLAINTIFF WITH A

3    PARTICULAR DEFENDANT.

4         AND IN ORDER TO ESTABLISH STANDING TO SUE A PARTICULAR

5    DEFENDANT YOU HAVE TO, AT A MINIMUM, TELL ME WHAT THAT DEFENDANT

6    DID TO THAT PARTICULAR PLAINTIFF THAT GIVES RISE TO LIABILITY.

7    AND I DON'T SEE THAT.

8         I CAN'T IMAGINE THAT THE PLAINTIFFS' POSITION IS THAT EACH

9    OF THESE INDIVIDUAL TEN PLAINTIFFS WORK FOR EACH OF THESE FIVE

10   DEFENDANTS.  THERE MIGHT BE SOME CORPORATE RELATIONSHIP BETWEEN

11   THEM, BUT CLEARLY EACH PLAINTIFF DIDN'T WORK FOR EACH OF THE

12   DEFENDANTS.

13        I FRANKLY HAVE NO IDEA HOW AN INDIVIDUAL DEFENDANT COULD

14   RESPOND.  I THINK THE DEFENDANTS HAVE SORT OF -- BECAUSE THEY ARE

15   REPRESENTED BY THE SAME COUNSEL HAVE SORT OF JUST COLLECTIVELY

16   RESPONDED TO THE BEST OF THEIR ABILITY.  BUT THEY CAN'T RESPOND

17   TO THE INDIVIDUAL ALLEGATIONS.  AND, FRANKLY, I'M NOT EVEN SURE

18   WHAT THE INDIVIDUAL ALLEGATIONS ARE.

19        I'M NOT SURE WHAT EACH DEFENDANT IS ACTUALLY RESPONSIBLE

20   FOR.  IN A RULE 23 ACTION OR A COLLECTIVE ACTION, YOU DO HAVE A

21   RESPONSIBILITY WITH REGARD TO THE NAMED PARTIES, THE NAMED

22   PLAINTIFFS.  AND WHILE YOU HAVE DONE SO WITH REGARD TO MR. OTTO,

23   YOU HAVEN'T GIVEN ME SPECIFICITY WITH REGARD TO EACH OF THE OTHER

24   NAMED PLAINTIFFS, PLAINTIFFS IN THE FIRST CAUSE OF ACTION,

25   INVOLVING THE FLSA, THE OFF-THE-CLOCK VIOLATIONS AND THE FAILURE

 1   TO PAY OVERTIME AND THE FAILURE TO MAINTAIN ACCURATE PAY RECORDS.

 2        I'M NOT SURE WHICH DEFENDANT DID WHAT IN WHICH PARTICULAR

 3   PERIOD OTHER THAN THESE SORT OF GENERAL KINDS OF TIME FRAMES THAT

 4   YOU'VE GIVEN.  I'M NOT SURE WHICH APPLIES.

 5        SO I HAVE A PROBLEM WITH THAT.  AND I STILL HAVE A PROBLEM

 6   WITH YOUR COMBINING ALL THESE VARIOUS DIFFERENT THEORIES.  THERE

 7   ARE TOO MANY PLAINTIFFS.  TOO MANY CAUSES OF ACTION.  TOO MANY

 8   LEGAL THEORIES.  YOU BRING IT UNDER FEDERAL LAW, CALIFORNIA LAW,

 9   NEW YORK LAW.  YOU'RE BRINGING COLLECTIVE ACTIONS, CLASS CLAIMS

10   AND INDIVIDUAL CLAIMS.

11        I STILL FEEL THE CLAIM IS UNWIELDILY.  I'M WAITING FOR A

12   MOTION TO SEVER SOME OF THESE THINGS.  I DON'T KNOW HOW THIS CAN

13   ALL WORK TOGETHER.  I KNOW I SAID THAT TO YOU AT THE VERY FIRST

14   CASE MANAGEMENT CONFERENCE WE HAD.  AND THE MORE THIS GOES ON THE

15   MORE CONVINCED I AM THAT THIS IS GOING TO BE UNMANAGEABLE.

16        BUT I GUESS WE COULD SPEND THE NEXT TWO OR THREE YEARS JUST

17   ON MOTION PRACTICE ON THE COMPLAINT BECAUSE THIS COMPLAINT

18   DOESN'T WORK FOR ME, FOR A LOT OF DIFFERENT REASONS.

19        ALL RIGHT.  SO I'D LIKE YOU TO RESPOND TO THE DEFENSE

20   ARGUMENTS.  BUT I ALSO WOULD LIKE YOU TO TELL ME HOW ARE YOU

21   GOING TO FIX THIS PROBLEM, IF IT IS FIXABLE, WITH REGARD TO THE

22   LACK OF A NEXUS BETWEEN THE -- BETWEEN EACH INDIVIDUAL NAMED

23   PLAINTIFF AND EACH NAMED DEFENDANT, AND WITH REGARD TO THE

24   ADDITION OF THESE ADDITIONAL DEFENDANTS.  AND THEN, WE'LL TALK

25   AFTER THAT ABOUT THE PROBLEM WITH MR. OTTO.

1    **MS. WILLS:** YOUR HONOR, I'LL FIRST ADDRESS THE FIRST

2   ISSUE RAISED BY THE COURT. THE THREE PERSONS THAT THE COURT

3   REFERRED TO AS "NEW PARTIES," YOUR HONOR, BEFORE YOUR ORDER CAME

4   OUT THOSE THREE INDIVIDUALS, INCLUDING JASON OTTO, ANTHONY

5   AUSTIN, AS WELL AS ONE OTHER INDIVIDUAL -- I BELIEVE IT WAS

6   ANTHONY SOSA -- THEY HAD ALL ALREADY FILED NOTICES OF CONSENT

7   BEFORE YOUR HONOR'S ORDER CAME OUT. WELL BEFORE THE ORDER CAME

8   OUT THEY HAD ALREADY FILED NOTICES OF CONSENT. IN FACT --

9        **THE COURT:** TO OPT INTO THE ACTION.

10       **MS. WILLS:** YES, YOUR HONOR. SO IT WAS OUR

11  UNDERSTANDING THAT ONCE THEY FILED A NOTICE OF CONSENT, WHICH WAS

12  NEVER OBJECTED TO BY THE DEFENDANTS, NEVER RAISED AS AN ISSUE BY

13  THE DEFENDANTS, THAT THEY DIDN'T WANT ANYONE BEING ABLE TO FILE

14  NOTICES OF CONSENT. TYPICALLY, WHEN AN FLSA ACTION IS PENDING,

15  OTHERS MAY FILE NOTICES OF CONSENT, WHICH THEY HAVE ACKNOWLEDGED

16  THEY KNEW THAT THESE THREE INDIVIDUALS HAD FILED NOTICES OF

17  CONSENT.

18      THEIR NOTICES OF CONSENT WERE FILED WELL BEFORE YOUR HONOR'S

19  ORDER CAME OUT IN DECEMBER. WE WERE UNDER THE IMPRESSION BASED

20  --

21       **THE COURT:** BEFORE THE HEARING? I DON'T BELIEVE YOU

22  MENTIONED TO ME AT THE HEARING THAT THERE WERE ADDITIONAL --

23       **MS. WILLS:** IT WAS AFTER OUR INITIAL HEARING IN AUGUST,

24  YOUR HONOR, BUT BEFORE YOUR HONOR'S ORDER CAME OUT IN DECEMBER.

25  SO BEFORE YOUR HONOR'S ORDER CAME OUT SAYING "NO NEW PARTIES,"

1    THESE THREE INDIVIDUALS HAD ALREADY FILED NOTICES OF CONSENT.

2    AND WE WERE UNDER THE IMPRESSION -- AND PERHAPS IT WAS A

3    MISGUIDED IMPRESSION -- THAT UNDER NORTHERN DISTRICT CASE LAW

4    THAT ONCE THEY FILE THEIR NOTICES OF CONSENT THEY WERE PARTIES TO

5    THE LAWSUIT, AND, THEREFORE, WOULD NOT BE CONSIDERED NEW PARTIES.

6         SO PERHAPS THAT WAS JUST OUR MISINTERPRETATION OF REVIEWING

7    THE CASE LAW.

8              **THE COURT:**  AND, OBVIOUSLY, YOU DID NOT MEET AND CONFER

9    WITH THE DEFENDANTS BEFORE YOU ADDED THEM.

10             **MS. WILLS:**  WELL, BECAUSE, YOUR HONOR, WE DIDN'T

11   BELIEVE THAT WE WERE ADDING THEM.  WE THOUGHT THEY HAD ALREADY

12   BEEN ADDED WHEN THEY FILED THEIR NOTICES OF CONSENT.

13        MR. AUSTIN FILED HIS NOTICE OF CONSENT, I BELIEVE, IN

14   AUGUST.  AND I BELIEVE THAT JASON OTTO AND ANTHONY SOSA FILED

15   THEIR NOTICES OF CONSENT EITHER LATE OCTOBER OR EARLY NOVEMBER.

16        AND THERE WERE NEVER ANY OBJECTIONS TO THOSE NOTICES OF

17   CONSENT BEING FILED.  AND OUR REVIEW OF THE CASE LAW IN THE

18   NORTHERN DISTRICT OF CALIFORNIA IS ONCE YOU FILE THAT THEN YOU

19   BECOME A PARTY.

20        SO, YOUR HONOR, WE DID NOT BELIEVE THAT THEY WERE NEW

21   PARTIES.  THAT IS WHY WE DIDN'T EITHER CONFER WITH DEFENSE

22   COUNSEL OR SEEK LEAVE OF COURT BECAUSE WE THOUGHT ONCE THEY FILED

23   THE NOTICES OF CONSENT THEY WERE PARTIES.

24             **THE COURT:**  OKAY.  GO AHEAD.

25             **MS. WILLS:**  WITH RESPECT TO THE COMPLAINT, YOUR HONOR,

1    THERE ARE BASICALLY THREE ELEMENTS OF THE COMPLAINT. THE FIRST IS

2    THE FLSA.  THE SECOND ARE THE CALIFORNIA STATE LAW CLAIMS.  AND

3    THE THIRD ARE THE NEW YORK STATE LAW CLAIMS.

4         THE FLSA CLAIMS HAVE TWO COMPONENTS.  ONE IS FOR THE

5    UNCOMPENSATED BREAKS OF 20 MINUTES OR LESS IN VIOLATION OF

6    DEPARTMENT OF LABOR REGULATION 785.18, AND THE OTHER IS FOR

7    INDIVIDUAL OFF-THE-CLOCK FLSA VIOLATIONS.

8         AND THOSE ARE OUR FLSA CLAIMS IN A NUTSHELL, YOUR HONOR.

9         THE ONLY PORTION OF THE FLSA THAT WE ARE SEEKING COLLECTIVE

10   TREATMENT ON IS FOR THE VIOLATION OF THE FEDERAL REGULATION THAT

11   SAYS IF YOU HAVE A BREAK THAT'S 20 MINUTES OR LESS, IT HAS TO BE

12   COUNTED AS WORK TIME.  THEREFORE, THEY HAVE TO BE PAID FOR IT.

13        THAT IS THE ONLY CLAIM, YOUR HONOR, FOR WHICH WE ARE SEEKING

14   ANY SORT OF COLLECTIVE TREATMENT UNDER THE FLSA.

15        THE OTHER CLAIMS SPECIFICALLY RELATE TO THE INDIVIDUAL

16   OFF-THE-CLOCK CLAIMS OF THE NAMED PLAINTIFFS.

17             **THE COURT:**  AND IT ONLY PERTAINS TO THOSE TEN NAMED

18   PLAINTIFFS.  THERE'S NO CLASS.  NO RULE 23 CLASS SOUGHT FOR THIS

19   GROUP.

20        **MS. WILLS:**  NOT UNDER FLSA, THAT IS CORRECT, YOUR

21   HONOR.

22             **THE COURT:**  IS THERE A RULE 23 CLASS SOUGHT AND DO THE

23   TEN FLSA PLAINTIFFS REPRESENT THE CLASS REPRESENTATIVES FOR RULE

24   23 CLASS IF NOT A COLLECTIVE ACTION?

25        **MS. WILLS:**  WITH RESPECT TO OUR CALIFORNIA ALLEGATIONS,

```
 1    YOUR HONOR --

 2              THE COURT:  NO.  WELL, YES.  YOU DO HAVE ONE, TWO,

 3    THREE, FOUR, FIVE, SIX, SEVEN DIFFERENT CALIFORNIA CLAIMS.  IS

 4    YOUR RULE 23 CLASS ONLY MADE UP OF THOSE CALIFORNIA CLAIMS?

 5              MS. WILLS:  THAT IS CORRECT, YOUR HONOR.

 6              THE COURT:  WHERE DO THE NEW YORK CLAIMS FIT IN?

 7              MS. WILLS:  THE NEW YORK CLAIMS, YOUR HONOR, ALSO ARE

 8    FOR FAILURE TO PAY -- THERE ARE TWO ELEMENTS OF THE NEW YORK

 9    CLAIMS.  FAILURE TO PAY FOR THE BREAKS OF 20 MINUTES OR LESS IN

10    DURATION IN VIOLATION OF NEW YORK LABOR LAW, WHICH INCORPORATES

11    THE REG.  AND, SECONDLY, FOR THE OFF-THE-CLOCK CLAIMS OF THESE

12    INDIVIDUALS.

13       THE ONLY RULE 23 THAT WE'RE SEEKING UNDER NEW YORK LABOR

14    LAW, YOUR HONOR, IS FOR THE VIOLATIONS OF THE BREAKS.

15              THE COURT:  ALL RIGHT.  SO YOU EXPECT -- I MEAN, IS

16    THERE ANY OVERLAP BETWEEN THE CALIFORNIA AND NEW YORK CLAIMS?

17    ARE YOU SEEKING SOME SORT OF NATIONAL ORDER OR CERTIFICATION?

18              MS. WILLS:  NOT UNDER RULE 23, YOUR HONOR, WE ARE NOT.

19    THE ONLY NATIONAL CERTIFICATION WE'RE SEEKING IS UNDER THE FAIR

20    LABOR STANDARDS ACT FOR THE BREAKS OF 20 MINUTES OR LESS.

21              THE COURT:  SO THE NATIONWIDE COLLECTIVE ACTION IS ONE.

22    TEN INDIVIDUAL FLSA ACTIONS.

23              MS. WILLS:  THAT'S CORRECT, YOUR HONOR.

24              THE COURT:  A CALIFORNIA RULE 23 --

25              MS. WILLS:  THAT IS CORRECT.
```

1          **THE COURT:**  -- CLASS.

2          **MS. WILLS:**  YES, YOUR HONOR.

3          **THE COURT:**  AND A NEW YORK RULE 23 CLASS.

4          **MS. WILLS:**  THAT IS CORRECT, YOUR HONOR.

5          **THE COURT:**  THOSE ARE TWO DIFFERENT CLASSES.  NOT

6  SUBCLASSES OF SOME LARGER NATIONWIDE CLASS.

7          **MS. WILLS:**  THAT IS CORRECT, YOUR HONOR.  THOSE ARE TWO

8  SEPARATE CLASSES.  ONE WOULD BE FOR THE INDIVIDUALS THAT WORKED

9  IN NEW YORK.  AND THE OTHER WOULD BE FOR THE INDIVIDUALS THAT

10  WORKED IN CALIFORNIA.

11          **THE COURT:**  ALL RIGHT.  WELL, I STILL THINK THAT IS

12  FAIRLY UNWIELDILY.  GO AHEAD WITH YOUR ARGUMENT, THOUGH.  I DO

13  NEED TO WRAP THIS UP, THOUGH, BECAUSE I HAVE SOME OTHER CASES.

14  SO PLEASE ADDRESS HIS ARGUMENTS, AND THEN WE'LL TURN TO THE

15  STANDING QUESTION.

16          **MS. WILLS:**  OKAY.  I'LL TAKE THEM IN THE ORDER THAT

17  THEY ARGUED, YOUR HONOR, AND I'LL WAIT AND DO THE STANDING ISSUE

18  LAST.

19          WITH RESPECT TO THE DE MINIMIS ARGUMENT, YOUR HONOR, THE

20  NINTH CIRCUIT HAS SAID THAT IF YOU CAN RECORD THE TIME IT'S NOT

21  DE MINIMIS.  IN FACT, IN THE ABOUD CASE, WHICH WAS OUT OF THE

22  DISTRICT COURT OF OREGON AND WAS LATER AFFIRMED BY THE NINTH

23  CIRCUIT, THAT WAS A ONE-MINUTE BREAK.  AND THAT ONE-MINUTE BREAK

24  WAS FOUND TO NOT BE DE MINIMIS.

25          THE REGULATION REGARDING THE DE MINIMIS EXCEPTION

1   SPECIFICALLY SAYS THAT IT IS NOT THE AMOUNT OF TIME.  IT COULD

2   EVEN BE SECONDS.  THE QUESTION IS WHETHER OR NOT THAT TIME CAN BE

3   RECORDED.

4        IN LINDOW, THE DE MINIMIS EXCEPTION WAS APPLIED SIMPLY

5   BECAUSE THEY COULD NOT RECORD THE AMOUNT OF TIME.  THERE WAS NO

6   WAY TO PRACTICALLY SAY HOW MUCH TIME WAS INVOLVED.

7        HERE WE DON'T SUFFER FROM THAT ISSUE, YOUR HONOR.  THESE

8   BREAKS ARE RECORDED.  THEY ARE RECORDED.  WE KNOW THE PRECISE

9   AMOUNT OF TIME DOWN TO THE VERY MINUTE OF HOW LONG THESE BREAKS

10  WERE.

11       WE KNOW EXACTLY WHICH EMPLOYEE TOOK THESE BREAKS.  WE KNOW

12  THE EXACT TIME THAT THE BREAKS WERE TAKEN.  WE KNOW THE EXACT

13  DATE ON WHICH THE BREAKS WERE TAKEN.

14       ACCORDING TO THE VICE PRESIDENT OF HUMAN RESOURCES FOR WELLS

15  FARGO, WELLS FARGO & COMPANY, WELLS FARGO BANK.  N. A., WELLS

16  FARGO, THE COMPANY, THEIR VICE PRESIDENT OF HUMAN RESOURCES,

17  ROGER SAUCERMAN, TESTIFIED THAT THESE ARE ELECTRONIC RECORDS.  WE

18  CAN RUN A SEARCH, YOUR HONOR, AND IDENTIFY PRECISELY EVERY SINGLE

19  EMPLOYEE WHO RECORDED A BREAK OF 20 MINUTES OR LESS, THE DURATION

20  OF THAT BREAK, AND HOW MUCH EACH EMPLOYEE IS OWED FOR THAT

21  PARTICULAR BREAK.

22       THESE ARE ELECTRONIC RECORDS.  THIS IS SIMPLY A MATTER, YOUR

23  HONOR, OF CALCULATING HOW MUCH THESE WELLS FARGO WORKERS ARE OWED

24  FOR THESE BREAKS.

25       THE DE MINIMIS STANDARD DOES NOT ADDRESS -- IT'S NOT AN

1   EXCEPTION THAT ADDRESSES WHERE YOU HAVE ACTUAL RECORDED AMOUNTS

2   OF TIME.  BECAUSE THE DE MINIMIS EXCEPTION DOESN'T SAY:

3              "HEY, EMPLOYER, YOU GET TO CHEAT YOUR EMPLOYEES

4         OUT OF A CERTAIN AMOUNT OF WORK.  YOU KNOW, THEY MAY

5         RECORD THAT THEY WORKED TEN MINUTES, BUT YOU CAN SAY

6         THAT'S DE MINIMIS AND JUST NOT PAY THEM FOR TEN

7         MINUTES EVERY DAY."

8         THAT'S NOT WHAT THE DE MINIMIS EXCEPTION PROVIDES.

9   EMPLOYERS DON'T GET A FREE AMOUNT OF WORK EVEN IF IT'S ONE

10  MINUTE, AS WE HAVE POINTED OUT BY THE DISTRICT COURT IN OREGON.

11        THIS WAS CLEARLY HELD NOT ONLY BY THE NINTH CIRCUIT, BUT WE

12  CITE TO A NUMBER OF CASES, YOUR HONOR, IN THE NORTHERN DISTRICT

13  OF CALIFORNIA AND VARIOUS OTHER COURTS IN CALIFORNIA THAT THE DE

14  MINIMIS STANDARD ONLY REALLY APPLIES WHEN YOU CAN'T RECORD THE

15  AMOUNT OF TIME AND THERE'S JUST NO WAY TO KNOW HOW MUCH TIME

16  YOU'RE TALKING ABOUT, AND THE AMOUNT OF TIME IS SO FLEETING THAT

17  YOU JUST CAN'T RECORD IT.

18        THAT'S NOT WHAT WE HAVE AT ISSUE HERE.  THE SECOND ARGUMENT

19  THAT THE DEFENDANTS MAKE WITH RESPECT TO THE DE MINIMIS STANDARD

20  IS THAT YOU LOOK AT JUST THE ONE OTTO, MR. OTTO BREAK.  AND,

21  AGAIN, THE NINTH CIRCUIT HAS SAID THAT IS NOT THE CASE.  THE

22  NINTH CIRCUIT SAID THAT YOU HAVE TO AGGREGATE THE CLAIMS OF THE

23  ENTIRE CASE.  YOU AGGREGATE THE CLAIMS OF EVERYONE.

24        THIS WAS STATED IN LINDOW.  AND WE POINT THAT OUT IN OUR

25  BRIEF.  IT WAS LATER REITERATED BY THE COURT IN A LATER MORE

1     RECENT CASE IN 2010 BY THE NINTH CIRCUIT, AND THEN THE TENTH

2     CIRCUIT CITING TO <u>LINDOW</u> ALSO POINTED OUT THAT YOU AGGREGATE THE

3     CLAIMS OF ALL OF THE WORKERS.

4          SO HERE, YOUR HONOR, IF WE AGGREGATE THE CLAIMS OF ALL OF

5     THE WORKERS WE ARE TALKING ABOUT A HUGE SUM BECAUSE THERE IS A

6     CORPORATE NATIONAL POLICY THAT WELLS FARGO HAS THAT IT DOES NOT

7     PAY ITS EMPLOYEES FOR ANY BREAKS, ANY RECORDED BREAKS,

8     IRRESPECTIVE OF HOW LONG THAT BREAK IS OR HOW SHORT THAT BREAK

9     IS.  THAT IS A NATIONWIDE CORPORATE POLICY.

10         IF WE LOOK AT THE AGGREGATE OF 150,000 POTENTIAL EMPLOYEES

11    THAT WELLS FARGO HAS DONE THIS TO, WE ARE TALKING A HUGE, HUGE

12    AGGREGATE AMOUNT IN TERMS OF WELLS FARGO CHEATING ITS EMPLOYEES.

13         WE INCLUDED IN OUR COMPLAINT, WE POINTED OUT THAT THERE ARE

14    OTHERS, NOT JUST MR. OTTO.  THERE ARE OTHERS THAT THIS HAPPENED

15    TO.  GEORGE VANGALACOS IS AN EXAMPLE.  AND WE INCLUDED THE

16    SPECIFIC TIMES OF MR. VANGALACOS, AS WELL.

17         AND DEFENDANTS ARE CORRECT.  MR. VANGALACOS, WELLS FARGO

18    SETTLED HIS CLAIMS.  HE MADE THE SAME CLAIMS THAT WE'RE MAKING

19    HERE, AND THEY SETTLED THOSE CLAIMS.  AND I BELIEVE THEY PROVIDED

20    THE COURT WITH A COPY OF HIS SETTLEMENT AGREEMENT.

21         AND WE PROVIDED TWO OTHERS.  AND THESE ARE JUST THE FOLKS

22    THAT WE HAVE BEEN ABLE TO GET THE RECORDS FOR, YOUR HONOR.

23         ONE POINT THEY MADE WAS, WELL, THEY ONLY HAVE A COUPLE OF

24    OPT-INS.

25         IF WE WERE ABLE TO SEND OUT NOTICE, YOUR HONOR, I FEEL

1   CONFIDENT THAT THESE PEOPLE WOULD SAY:

2        "YEAH, I WANT TO BE PAID FOR MY MONEY THAT

3     FEDERAL REGULATIONS SAY I SHOULD HAVE BEEN PAID FOR,

4     BUT WELLS FARGO JUST DECIDED 'WE'RE NOT GOING TO PAY

5     YOU FOR IT.'"

6        AND I WOULD POINT OUT, YOUR HONOR, THAT THIS IDEA THAT THEY

7   MUST PAY FOR THESE BREAKS OF 20 MINUTES OR LESS, IT'S VERY CLEAR

8   IN THE REGULATION.  785.18 IS VERY CLEAR.  OTHER CASES HAVE BEEN

9   CERTIFIED.  FLSA COLLECTIVE ACTIONS HAVE BEEN CERTIFIED ON THAT

10  BASIS.

11       WELLS FARGO'S OWN LAWYERS TOLD THEM YEARS AGO THAT THEY

12  WOULD HAVE TO PAY THEIR EMPLOYEES FOR THESE BREAKS.  YET WELLS

13  FARGO CHOSE TO HAVE A POLICY AND PRACTICE OF NOT DOING SO THAT

14  CLEARLY VIOLATED THE LAW.

15       IF WE AGGREGATE THESE CLAIMS, YOUR HONOR, CLEARLY THEY ARE

16  NOT GOING TO BE DE MINIMIS.

17       FINALLY, YOUR HONOR, ONE OTHER ARGUMENT THAT THEY MADE THAT

18  I WANTED TO ADDRESS -- AND I'M HAPPY TO POINT OUT TO THE COURT

19  ALL OF THE CASES THAT WE CITE TO ABOUT THE FACT THAT ANY BREAK OF

20  20 MINUTES OR LESS MUST BE PAID.

21       MOST OF THESE CASES, YOUR HONOR, THE SECRETARY OF LABOR

22  ACTUALLY FILED SUIT, AND FREQUENTLY GOT SUMMARY JUDGMENT ON

23  785.18.

24       THEY JUST HAVE TO PAY THEM FOR THE BREAKS.  THEY KNEW THEY

25  DID.  WELLS FARGO HAS ATTEMPTED TO SAY:

1        "WELL, NO.  WHY DON'T WE CALL THESE 'MEAL

2        BREAKS' AND TRY TO AVOID THE FACT THAT THE FEDERAL

3        REGULATIONS SAY WE HAVE TO PAY FOR THEM?"

4        IT'S VERY CLEAR, YOUR HONOR, THAT THOSE ARE VERY DIFFERENT

5   BREAKS.  IN FACT, IF YOUR HONOR LOOKS AT EVERY SINGLE CASE CITED

6   BY THE DEFENDANTS IN SUPPORT OF THAT ARGUMENT, THOSE CASES ALL

7   DEAL WITH BREAKS THAT ARE OVER 20 MINUTES, BUT LESS THAN 30

8   MINUTES.

9        THOSE ARE NOT THE BREAKS AT ISSUE HERE. THE BREAKS AT ISSUE

10  HERE ARE THOSE THAT ARE SPECIFICALLY 20 MINUTES OR LESS.

11       ONE PERFECT EXAMPLE OF THAT, YOUR HONOR, IS THEY CITE

12  REPEATEDLY TO THE CASE GESSELE V. JACK IN THE BOX, WHICH WAS HERE

13  IN CALIFORNIA.

14       WHAT THE DEFENDANTS FAIL TO POINT OUT TO THE COURT HERE IS

15  THAT GESSELE V. JACK IN THE BOX CASE SPECIFICALLY DEALT WITH

16  BREAKS THAT WERE GREATER THAN 20 MINUTES BUT LESS THAN 30

17  MINUTES.

18       IN FACT, JACK IN THE BOX WAS PREVIOUSLY SUED FOR FAILING TO

19  PAY THEIR EMPLOYEES FOR BREAKS OF 20 MINUTES OR LESS.  JACK IN

20  THE BOX AFTER BEING SUED AND SETTLING THAT CASE, REMEDIED THE

21  PROBLEM.  THEY CHANGED THEIR TIMEKEEPING SYSTEM SO THAT THEY

22  BEGAN PAYING ALL OF THEIR EMPLOYEES FOR BREAKS OF 20 MINUTES OR

23  LESS.

24       THE GESSELE CASE DEALT WITH A COMPLETELY DIFFERENT BLOCK OF

25  BREAKS WHICH WERE GREATER THAN 20 MINUTES BUT LESS THAN 30

1    MINUTES.  THOSE ARE NOT THE BREAKS THAT ARE AT ISSUE HERE.

2        YOUR HONOR, IT SEEMS THAT THEY WANT TO TAKE UP THE

3    COLLECTIVE ACTION ALLEGATIONS AND MOVE TO STRIKE THEM HERE.  I

4    WON'T BELABOR THAT POINT, AS THE COURT HAS INDICATED THAT THE

5    COURT IS HESITANT TO DO SO.  BUT I WILL SAY THAT THIS IS NOTHING

6    BUT AN END RUN OF DEFENDANTS ATTEMPTING TO INSERT THE MERITS AT

7    THE CONDITIONAL CERTIFICATION STAGE, WHICH YOUR HONOR, AS WELL AS

8    OTHER COURTS --

9            **THE COURT:**  WELL, WE ARE NOT EVEN AT THE CONDITIONAL

10   CERTIFICATION STAGE YET.

11           **MS. WILLS:**  THAT IS CORRECT, YOUR HONOR.

12           **THE COURT:**  THE MOTION WAS TAKEN OFF CALENDAR PENDING

13   SETTLING OF THE PLEADINGS.

14           **MS. WILLS:**  YES, YOUR HONOR.  BUT IT SEEMS THAT WHAT

15   THEY WANT TO DO HERE IS SAY:

16       "WE WANT TO DECIDE CONDITIONAL CERTIFICATION

17        RIGHT NOW BECAUSE WE WANT TO DELVE INTO THE MERITS.

18        WE WANT THE COURT TO MAKE A DETERMINATION ABOUT

19        WHETHER OR NOT THERE WILL BE INDIVIDUALIZED INQUIRIES

20        HERE, WHETHER OR NOT THE BREAKS THAT ARE 20 MINUTES

21        OR LESS ARE GOING TO BE COMPENSABLE, ALTHOUGH THE

22        REGULATIONS CLEARLY STATE THAT THEY ARE."

23       AND THERE ARE TONS OF CASES SAYING THAT THEY ARE.  BUT THEY

24   ARE TRYING TO INTERJECT THE MERITS WHEN WE HAVE CERTAINLY MET OUR

25   PLEADING STANDARD FOR STATING THAT SUCH A CLAIM EXISTS.

```
 1        SO WE BELIEVE, YOUR HONOR, THAT THERE ARE NO CASES WITHIN
 2   THE NINTH CIRCUIT THAT WOULD ALLOW A STRIKING OF COLLECTIVE
 3   ALLEGATIONS AT THIS STAGE.  AND WE BELIEVE THAT'S FOR GOOD
 4   REASON.  IF WE LOOK OUTSIDE OF THE CIRCUIT -- THE COURTS WITHIN
 5   THE NINTH CIRCUIT, ACROSS THE COUNTRY COURTS, HAVE REFUSED TO
 6   STRIKE COLLECTIVE ACTION ALLEGATIONS AT THE PLEADING STAGE ON A
 7   RULE 12 (B) (6) MOTION.  AND WE WOULD CERTAINLY STATE THAT THAT
 8   WOULD BE INAPPROPRIATE HERE, AS WELL.
 9             THE COURT:  ALL RIGHT.  ARE YOU FINISHED?
10             MS. WILLS:  I AM, YOUR HONOR.
11             THE COURT:  YOU HAVEN'T REALLY ADDRESSED THE QUESTION
12   OF THE LACK OF NEXUS BETWEEN --
13             MS. WILLS:  YES, YOUR HONOR.
14             THE COURT:  -- THE INDIVIDUAL PLAINTIFFS AND
15   DEFENDANTS.
16             MS. WILLS:  YES, YOUR HONOR.
17        YOUR HONOR, WE OF DEFINED WELLS FARGO AND DEFENDANTS TO
18   INCLUDE THOSE FIVE ENTITIES.  AND THE REASON THAT WE INCLUDE
19   THOSE ENTITIES IS BECAUSE THEY ARE BASICALLY ONE AND THE SAME.
20        OUR ALLEGATIONS ARE THAT EVERY LAST ONE OF THESE ENTITIES
21   EMPLOYED THESE DEFENDANTS.  AND THE SUPREME COURT HAS SAID THAT
22   AND THE NINTH CIRCUIT BOTH SAID THAT TO EMPLOY SOMEONE UNDER THE
23   FLSA HAS THE BROADEST POSSIBLE DEFINITION OF "EMPLOYEE."
24        ALL THAT YOU SIMPLY NEED TO PLEAD IS THAT THEY MAINTAINED
25   CONTROL OVER THESE WORKERS.  THAT THEY SUFFERED OR PERMITTED THEM
```

1    TO WORK.

2            **THE COURT:**  WHEN YOU SAY "THEY" YOU MEAN COLLECTIVELY

3    ALL FIVE OF THEM DID THAT?

4            **MS. WILLS:**  THAT IS CORRECT, YOUR HONOR.

5            **THE COURT:**  YOU DON'T BELIEVE YOU HAVE TO IDENTIFY

6    WHICH PLAINTIFF WORKED FOR WHICH DEFENDANT?

7            **MS. WILLS:**  THE PLAINTIFFS ALL WORKED FOR ALL OF THESE

8    DEFENDANTS, YOUR HONOR.  THERE CAN BE MORE THAN ONE EMPLOYER

9    UNDER THE FLSA AND THAT IS OUR ALLEGATION.

10       WHEN WE SENT THESE REQUESTS FOR ADMISSIONS TO THE

11   DEFENDANTS, WHICH WE ATTACHED, THEY HAVE ADMITTED THAT TWO OF

12   THESE ENTITIES EMPLOYED THEM.  THEY SAID THAT THEY WERE EMPLOYED

13   BY -- THEY SPECIFICALLY SAID THEY WERE EMPLOYED BY WELLS FARGO

14   BANK, N. A., WACHOVIA BANK N. A. AND/OR BOTH.  THAT'S WAS THEIR

15   ANSWER.  SO THERE'S --

16           **THE COURT:**  WELL, THAT'S BECAUSE OF THE MERGER BETWEEN

17   WACHOVIA AND WELLS FARGO BANK.  WHAT ABOUT THE OTHER DEFENDANTS?

18           **MS. WILLS:**  WELLS FARGO & COMPANY, YOUR HONOR, AND WTH

19   HOLDINGS (SIC) ARE PARENT COMPANIES OF WELLS FARGO BANK, N. A.

20   THEY OWN THE BANKS.  THEY CONTROL THE BANKS.

21       THE HANDBOOK THAT PROMULGATES THESE POLICIES THAT SETS FORTH

22   THE CORPORATE POLICIES, THOSE WERE ALL DONE BY WELLS FARGO AND

23   COMPANY AND WTH HOLDINGS.

24       THAT'S WHY THESE ARE -- THEY ARE ALL EMPLOYERS.  WACHOVIA

25   BANK -- WACHOVIA CORPORATION, I UNDERSTAND, WAS ACQUIRED BY WELLS

1    FARGO & COMPANY.  SO WHEN WE REFER TO "WELLS FARGO & COMPANY"

2    AND "WACHOVIA CORPORATION," THOSE ARE BASICALLY ONE ENTITY.  SO

3    WE'RE REALLY TALKING ABOUT THREE DEFENDANTS, YOUR HONOR, BECAUSE

4    WACHOVIA WAS SUBSUMED INTO VARIOUS WELLS FARGO ENTITIES.  AND

5    WELLS FARGO HAS ASSUMED ALL OF THE DEBTS AND LIABILITIES AND

6    RESPONSIBILITIES OF WACHOVIA.

7         SO WE'RE REALLY TALKING ABOUT THREE ENTITIES SIMPLY BECAUSE

8    WACHOVIA NO LONGER EXISTS, AS I UNDERSTAND.

9              **THE COURT:**  OKAY.  ALL RIGHT.  I UNDERSTAND YOUR

10   POSITION.  THANK YOU.

11        ALL RIGHT.

12             **MR. ALFRED:**  YOUR HONOR, COULD I HAVE ONE MINUTE?  JUST

13   ONE MINUTE?

14             **THE COURT:**  ALL RIGHT.  FINE.

15             **MR. ALFRED:**  THANK YOU, YOUR HONOR.

16        TWO POINTS.  OBVIOUSLY, WE DISAGREE WITH THE READING OF THE

17   CASES THAT OPPOSING COUNSEL HAS STATED.  BUT WITH RESPECT TO

18   ABOUD, OBVIOUSLY LINDOW IS THE NINTH CIRCUIT CASE THAT CONTROLS.

19   THERE ARE THREE FACTORS.  ABOUD IS AN AGGREGATION AND REGULARITY

20   CASE.

21             **THE COURT:**  WELL, SHE SAYS YOU CAN AGGREGATE.  YOU SAY

22   YOU CAN'T AGGREGATE.

23             **MR. ALFRED:**  WELL, BUT ABOUD AGGREGATES WITH RESPECT TO

24   INDIVIDUALS.  YOU CAN AGGREGATE ON AN INDIVIDUAL-BY-INDIVIDUAL

25   BASIS.  YOU CAN'T AGGREGATE ACROSS A COLLECTIVE, PARTICULARLY

1    WHERE YOU DON'T KNOW WHO IS IN THAT COLLECTIVE.

2         THERE ARE THE NO ALLEGATIONS, NO ALLEGATIONS ABOUT ANYBODY

3    IN THAT COLLECTIVE WHO COULD POSSIBLY OPT IN.  THIS COURT WOULD

4    HAVE TO MAKE A GIANT ASSUMPTION, AS MS. WILLS REQUESTS, IN ORDER

5    TO EVEN THINK ABOUT AGGREGATING.

6         THERE'S NO INFORMATION IN THE PLEADINGS WITH WHICH THE COURT

7    COULD AGGREGATE, EVEN IF IT WERE ALLOWED TO, WHICH THE CASES SAY

8    IT CAN'T BECAUSE AGGREGATION IS DONE ON AN

9    INDIVIDUAL-BY-INDIVIDUAL BASIS.

10        OBVIOUSLY, IF IT'S ONE MINUTE A DAY, ONE MINUTE A DAY FOR A

11   LONG PERIOD OF TIME, THAT FOR ONE INDIVIDUAL THAT CAN BE

12   AGGREGATED.

13        SO IN READING THE ABOUD CASE, MS. WILLS STAYS AWAY FROM

14   REGULARITY AND STAYS AWAY FROM AGGREGATION WITH RESPECT TO THAT

15   AND WOULD HAVE IT AS ONE MINUTE RECORDED.  IT'S NOT.  THERE IS

16   NOT A BRIGHT LINE TEST IN LINDOW THAT IF IT CAN BE RECORDED IT IS

17   COMPENSABLE.  THAT IS NOT WHAT THE TEST IS.

18        AND, OBVIOUSLY, THE COURT WILL MAKE ITS OWN JUDGMENT BASED

19   ON THE CASE LAW.  BUT I WANTED TO POINT THAT OUT.

20        WE HEARD ABOUT A NATIONWIDE CORPORATE POLICY.  SHE HAS

21   POINTED -- THE PLAINTIFFS HAVE POINTED TO NO NATIONWIDE POLICY

22   WHATSOEVER IN ANY DOCUMENT.  IN FACT, TO THE OPPOSITE.  THE ONLY

23   POLICIES AT ISSUE IN THIS CASE ARE PERFECTLY LAWFUL POLICIES.

24        IF THERE HAVE BEEN EXCEPTIONS MADE TO THOSE POLICIES THOSE

25   EXCEPTIONS ARE PROPER UNDER THE DEPARTMENT OF LABOR'S FIELD

1   OPERATION MANUAL, WHICH MS. WILLS DOESN'T TALK ABOUT, BECAUSE

2   THAT LOOKS AT ALL OF THE FACTORS AND MAKES A DETERMINATION

3   WHETHER OR NOT A BREAK IS A BONA FIDE MEAL BREAK.  IF AN

4   INDIVIDUAL ASKS THE EMPLOYER FOR A SHORTER BREAK SO HE OR SHE CAN

5   LEAVE EARLY AT THE END OF THE DAY, AS AN ACCOMMODATION TO THE

6   EMPLOYEE, THAT'S FINE, AS LONG AS THE INDIVIDUAL IS NOT

7   INTERRUPTED, AS LONG AS THERE'S TIME TO EAT THE MEAL.

8        THAT'S WHAT WE'RE SAYING, YOUR HONOR, AND THAT'S THE ISSUE

9   THAT IS IGNORED.

10       AND, OBVIOUSLY, THERE'S NO POLICY THAT WELLS FARGO HAS NOT

11  TO PAY BREAKS OF LESS THAN 20 MINUTES.

12           **THE COURT:**  ALL RIGHT.

13           **MS. WILLS:**  CAN I JUST --

14           **MR. ALFRED:**  THANK YOU.

15           **THE COURT:**  NO. THEY GET THE LAST WORD.  IT'S THEIR

16  MOTION.

17       MATTER SUBMITTED.

18           **MS. WILLS:**  THANK YOU, YOUR HONOR.

19           **THE COURT:**  YOU'RE WELCOME.

20

21

22

23

24

25

```
1              (THEREUPON, THIS HEARING WAS CONCLUDED.)

2    STENOGRAPHY CERTIFICATION

3              "I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT
     FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER."
4              MARCH  26, 2015
               KATHERINE WYATT
5    _____

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```