1 SEYFARTH SHAW LLP
Christian J. Rowley (SBN 187293)
2 560 Mission Street, 31st Floor
San Francisco, California  94105
3 Telephone:  (415) 397-2823
Facsimile:  (415) 397-8549
4 crowley@seyfarth.com

5 Richard L. Alfred (SBN 015000) (pro hac vice)
Two Seaport Lane, Suite 300
6 Boston, Massachusetts 02210
Telephone:  (617) 496-4802
7 Facsimile:   (617) 946-4801
ralfred@seyfarth.com
8
Timothy M. Watson (SBN 20963575) (pro hac vice)
9 700 Milam Street, Suite 1400
Houston, Texas 77002-2812
10 Telephone:     (713) 225-2300
Facsimile:      (713) 225-2340
11 twatson@seyfarth.com

12 Attorneys for Defendants
WELLS FARGO & COMPANY, WELLS FARGO
13 BANK, N.A., and WACHOVIA BANK, N.A.

14

15 UNITED STATES DISTRICT COURT

16 NORTHERN DISTRICT OF CALIFORNIA

17 OAKLAND DIVISION

18 MONIQUE PEREZ, THAXTON V. | **Case No. C 14-0989 PJH**
ROWE, JR., PORCELYNNE |
19 HAWTHORNE, CORRY A. | **CLASS ACTION**
WILLIAMS, KARLA P. SALAZAR, |
20 BRIAN LYNCH, SEZGIN UNAY, | **DEFENDANTS' AMENDED ANSWER AND DEFENSES**
JOHN SOROCENSKI, BRANDON | **TO PLAINTIFFS' THIRD AMENDED COMPLAINT**
GRZAN, JASON L. HOFFMAN, |
21 SONA K. ANAND, JASON M. | 1.   Failure to Pay Overtime (Fair Labor Standards Act, 29
OTTO, ANTHONY SOSA and |      U.S.C. § 201, *et seq.*)
22 ANTHONY AUSTIN, |
|
23               Plaintiffs, | 2.   Failure to Pay Overtime (Cal. Lab. Code §§ 510, 1194)
|
24          v. | 3.   Violation of California Business and Professions Code §
|      17200
25 WELLS FARGO & COMPANY, |
WELLS FARGO BANK, N.A., and | 4.   Failure to Provide Meal Breaks (California Labor Code
26 WACHOVIA BANK, N.A., |      §§ 226.7, 512)
|
27               Defendants. | 5.   Failure to Allow Rest Breaks (California Labor Code §
|      226.7)

28

---

6.    Waiting Time Penalties (California Labor Code §§ 201, 202, 203)

7.    Failure to Pay Overtime Wages for Breaks of 20 Minutes or Less in Duration in Violation of New York Labor Law (NYLL §§ 190, 191) [sic]

8.    Overtime Violations of New York Labor Law (NYLL §§ 190, 191; NYCRR 142-2.2) [sic]

WELLS FARGO & COMPANY ("WFC"), WELLS FARGO BANK, N.A. ("Wells Fargo"), AND WACHOVIA BANK, N.A. ("Wachovia") (collectively "Defendants"), by and through their attorneys, respectfully file this Amended Answer and Defenses to Plaintiffs' Third Amended Complaint (the "Complaint").[1]   The following sections and numbered paragraphs correspond to the sections and numbered paragraphs in Plaintiffs' Complaint.  To the extent the allegations within Plaintiffs' Complaint are not expressly admitted, they are hereby denied.

## JURISDICTION

**COMPLAINT ¶1:**

This Court has federal question jurisdiction over this action conferred by 29 U.S.C. § 216(b) and by the provisions of 28 U.S.C. § 1337 relating to "any civil action or proceeding arising under any act of Congress regulating commerce" and by the provisions of 28 U.S.C. § 1337.

**ANSWER:**

Defendants admit that Plaintiffs have attempted to invoke the jurisdiction of this Court under the Fair Labor Standards Act of 1938, as amended, and 28 U.S.C. § 1337.  Defendants admit that this Court has jurisdiction over Plaintiffs' FLSA claims, but deny that Plaintiffs are entitled to recover any damages or other relief in this lawsuit under the FLSA.  Defendants also deny that they violated any state or federal laws with respect to Plaintiffs or any other Wells Fargo employees.

---

[1] Effective March 20, 2010, Wachovia Bank, N.A. merged with and into Wells Fargo Bank, N.A., with the resulting title Wells Fargo Bank, N.A.  Defendant Wachovia Bank, N.A. no longer exists as an entity.  Wells Fargo Bank, N.A. is the successor in interest to Wachovia Bank, N.A.  Accordingly, Wells Fargo Bank, N.A. files this answer both as a named Defendant and as successor in interest to Defendant Wachovia Bank, N.A.

2

**COMPLAINT ¶2:**

This Court also has supplemental jurisdiction over the state law claims asserted in this action pursuant to 28 U.S.C. § 1367 because those claims derive from common facts.

**ANSWER:**

Defendants admit that Plaintiffs have attempted to invoke the jurisdiction of this Court under 28 U.S.C. § 1367. Defendants admit that this Court has jurisdiction over Plaintiffs' state-law claims, but deny that Plaintiffs, or any putative class members, are entitled to recover any damages or other relief in this lawsuit under the FLSA or state law, or that this lawsuit is suitable for class action treatment. Defendants also deny that they violated any state or federal laws with respect to Plaintiffs or any other employees.

**VENUE**

**COMPLAINT ¶3:**

Venue is proper in the Northern District of California because a substantial portion of the events forming the basis of this suit occurred in the Northern District of California.

**ANSWER:**

Defendants admit that venue is proper in this District. Defendants deny the remaining allegations set forth in Paragraph 3 of the Complaint.

**COMPLAINT ¶4:**

As an alternative and independent basis for venue, all of the Defendants reside in and maintain their corporate headquarters in the Northern District of California, the San Francisco Division.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 4 of the Complaint.

**INTRADISTRICT ASSIGNMENT**

**COMPLAINT ¶5:**

A substantial part of the events or omissions which give rise to the claims occurred in San Francisco County, and therefore this action is properly assigned to the San Francisco Division pursuant to Local Rule 3-2(c), (d).

3

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 5 of the Complaint.

### PLAINTIFFS

*California Residents*

**COMPLAINT ¶6:**

Plaintiff Monique Perez is a resident of California who was jointly employed by Wells Fargo & Company and Wells Fargo Bank, N.A. in California as a non-exempt employee from approximately September 4, 2012 to December 4, 2012. On March 3, 2014, Ms. Perez filed a notice of consent herein. Ms. Perez asserts individual claims for violations of California state law and the FLSA.

**ANSWER:**

Defendants admit that Plaintiff Monique Perez was employed by Wells Fargo in California as a non-exempt employee from approximately September 4, 2012 to December 4, 2012, and that she filed a notice of consent on March 3, 2014.  Defendants admit that Plaintiff Monique Perez asserts individual claims for violations of California state law and the FLSA, but deny the allegation that any such violation has occurred.  Defendants deny that Plaintiff Monique Perez was employed by WFC, jointly or otherwise.  Defendants are without knowledge or information sufficient to admit or deny the allegation that "Plaintiff Monique Perez is a resident of California," and therefore deny that allegation.  Defendants deny the remaining allegations set forth in Paragraph 6 of the Complaint.

**COMPLAINT ¶7:**

Plaintiff Thaxton V. Rowe, Jr. is a resident of California who was jointly employed by Wells Fargo & Company and Wells Fargo Bank, N.A., in California as a non-exempt employee from approximately October 25, 2011 to March 22, 2013. On March 3, 2014, Mr. Rowe filed a notice of consent herein. Mr. Rowe asserts individual claims for violations of California state law and the FLSA.

**ANSWER:**

Defendants admit that Plaintiff Thaxton V. Rowe, Jr. was employed by Wells Fargo in California as a non-exempt employee from approximately October 25, 2011 to March 22, 2013, and that he filed a notice of consent on March 3, 2014.  Defendants admit that Plaintiff Thaxton V. Rowe, Jr. asserts

4

DEFENDANTS' AMENDED ANSWER TO PLAINTIFFS' THIRD AMENDED COMPLAINT -
COLLECTIVE ACTION AND CLASS ACTION - CASE NO. C 14-00989 PJH

1   individual claims for violations of California state law and the FLSA, but deny the allegation that any
2   such violation has occurred.  Defendants deny that Plaintiff Thaxton V. Rowe, Jr. was employed by
3   WFC, jointly or otherwise.  Defendants are without knowledge or information sufficient to admit or
4   deny the allegation that "Plaintiff Thaxton V. Rowe, Jr.  is a resident of California," and therefore deny
5   that allegation.  Defendants deny the remaining allegations set forth in Paragraph 7 of the Complaint.

6   **COMPLAINT ¶8:**

7   Plaintiff Porcelynne Hawthorne is resident of California who was jointly employed by Wells
8   Fargo & Company and Wells Fargo Bank, N.A., in California as a non-exempt employee from
9   approximately February 15, 2011 to January 12, 2012 and June 25, 2012 to October 1, 2013.  On
10  March 3, 2014, Ms. Hawthorne filed a notice of consent herein.  Ms. Hawthorne asserts individual
11  claims for violations of California state law and the FLSA.

12  **ANSWER:**

13  Defendants admit that Plaintiff Porcelynne Hawthorne was employed by Wells Fargo in
14  California as a non-exempt employee from approximately February 15, 2011 to January 12, 2012 and
15  June 25, 2012 to October 1, 2013, and that she filed a notice of consent on March 3, 2014.  Defendants
16  admit that Plaintiff Porcelynne Hawthorne asserts individual claims for violations of California state law
17  and the FLSA, but deny the allegation that any such violation has occurred.  Defendants deny that
18  Plaintiff Porcelynne Hawthorne was employed by WFC, jointly or otherwise.  Defendants are without
19  knowledge or information sufficient to admit or deny the allegation that "Plaintiff Porcelynne
20  Hawthorne is a resident of California," and therefore deny that allegation.  Defendants deny the
21  remaining allegations set forth in Paragraph 8 of the Complaint.

22  **COMPLAINT ¶9:**

23  Plaintiff Jason M. Otto is a resident of California who was jointly employed by Wells Fargo &
24  Company and Wells Fargo Bank, N.A. in California as a non-exempt employee from approximately
25  August 2005 to April 29, 2014.  On November 8, 2014, Mr. Otto filed a notice of consent herein.  Mr.
26  Otto asserts individual claims for violations of the FLSA.

27
28

**ANSWER:**

Defendants admit that Plaintiff Jason M. Otto was employed by Wells Fargo in California from approximately August 2005 to April 29, 2014, and that he filed a notice of consent on November 8, 2014.   Defendants admit that Plaintiff Jason M. Otto asserts individual claims for violations of California state law and the FLSA, but deny the allegation that any such violation has occurred. Defendants deny that Plaintiff Jason M. Otto was employed by WFC, jointly or otherwise.   Defendants are without knowledge or information sufficient to admit or deny the allegation that "Plaintiff Jason M. Otto is a resident of California," and therefore deny that allegation.   Defendants deny the remaining allegations set forth in Paragraph 9 of the Complaint.

**COMPLAINT ¶10:**

Plaintiff Anthony Sosa is a resident of California who was jointly employed by Wells Fargo & Company and Wells Fargo Bank, N.A., in California as a non-exempt employee from approximately January 2011 to November 2, 2013.  On November 8, 2014, Mr. Sosa filed a notice of consent herein. Mr. Sosa asserts individual claims for violations of the FLSA.

**ANSWER:**

Defendants admit that Plaintiff Anthony Sosa was employed by Wells Fargo in California as a non-exempt employee beginning approximately January 2011, and that he filed a notice of consent on November 8, 2014, but deny that Sosa was employed by Wells Fargo until November 2, 2013. Defendants admit that Plaintiff Anthony Sosa asserts individual claims for violations of California state law and the FLSA, but deny the allegation that any such violation has occurred.  Defendants deny that Plaintiff Anthony Sosa was employed by WFC, jointly or otherwise.  Defendants are without knowledge or information sufficient to admit or deny the allegation that "Plaintiff Anthony Sosa is a resident of California," and therefore deny that allegation.  Defendants deny the remaining allegations set forth in Paragraph 10 of the Complaint.

1

2

3

4

**COMPLAINT ¶11:**

Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., Porcelynne Hawthorne, Jason M. Otto, and Anthony Sosa are former employees of Wells Fargo & Company and Wells Fargo Bank, N.A. within the meaning of 29 U.S.C. § 203(e).

5

**ANSWER:**

6

7

8

9

Defendants admit that Monique Perez, Thaxton V. Rowe, Jr., Porcelynne Hawthorne, Jason M. Otto, and Anthony Sosa are former employees of Wells Fargo, as defined by the FLSA. Defendants deny that they are former employees of WFC, and deny the remaining allegations set forth in Paragraph 11 of the Complaint.

10

**COMPLAINT ¶12:**

11

12

13

Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., and Porcelynne Hawthorne are former employees of Wells Fargo & Company and Wells Fargo Bank, N.A. within the meaning of 8 Cal. Code Regs. § 11140(2)(C), (F), and all other applicable California statutes and regulations.

14

**ANSWER:**

15

16

17

Defendants admit that Monique Perez, Thaxton V. Rowe, Jr., Porcelynne Hawthorne, Jason M. Otto, and Anthony Sosa are former employees of Wells Fargo. Defendants deny that they are former employees of WFC, and deny the remaining allegations set forth in Paragraph 12 of the Complaint.

18

*New York and New Jersey Residents*

19

**COMPLAINT ¶13:**

20

21

22

23

24

25

26

27

Plaintiff Sona K. Anand is a resident of New Jersey who was employed by Defendants as a non-exempt employee in New York and New Jersey. Ms. Anand was employed by Wachovia Bank, N.A. from approximately March 31, 2003 until Wells Fargo & Company acquired Wachovia Corporation and its subsidiary entities including Wachovia Bank, N.A., which upon information and belief occurred on or about December 31, 2008. After the acquisition of the Wachovia entities by Wells Fargo & Company, Ms. Anand became jointly employed by Wells Fargo & Company and Wachovia Bank, N.A. until Wachovia Bank, N.A. merged into Wells Fargo Bank, N.A. and ceased to exist. Upon information and belief, Wachovia Bank, N.A. ceased to exist in late 2009 or shortly thereafter. Once Wachovia Bank,

28

N.A. ceased to exist, Ms. Anand was jointly employed by Wells Fargo & Company and Wells Fargo Bank, N.A. until approximately September 5, 2011 when her employment ended. On March 28, 2014, Ms. Anand filed a notice of consent herein. Ms. Anand asserts individual FLSA claims and asserts New York state law claims both individually and as a class representative.

**ANSWER:**

Defendants admit that Plaintiff Sona K. Anand was employed by Wachovia in New York and/or New Jersey from approximately March 31, 2003 until Wachovia merged with and into Wells Fargo, and that Plaintiff Sona K. Anand was an employee of Wells Fargo after the merger until approximately September 5, 2011, when her employment ended, but deny that the merger was effective on or about December 31, 2008. Defendants admit that Plaintiff Sona K. Anand filed a notice of consent on March 28, 2014. Defendants admit that Plaintiff Sona K. Anand asserts individual and class claims for violations of New York state law and the FLSA, but deny the allegation that any such violation has occurred, and further deny that this action is appropriate for class treatment. Defendants deny that Plaintiff Sona K. Anand was employed by WFC, jointly or otherwise. Defendants are without knowledge or information sufficient to admit or deny the allegation that "Plaintiff Sona K. Anand is a resident of New Jersey," and therefore deny that allegation. Defendants deny the remaining allegations set forth in Paragraph 13 of the Complaint.

**COMPLAINT ¶14:**

Plaintiff Brandon Grzan is a resident of New York who was employed by Defendants as a non-exempt employee in New York. Mr. Grzan was employed by Wachovia Bank, N.A. from approximately August 28, 2006 until Wells Fargo & Company acquired Wachovia Corporation and its subsidiary entities including Wachovia Bank, N.A., which upon information and belief occurred on or about December 31, 2008. After the acquisition of the Wachovia entities by Wells Fargo & Company, Mr. Grzan became jointly employed by Wells Fargo & Company and Wachovia Bank, N.A. until Wachovia Bank, N.A. merged into Wells Fargo Bank, N.A. and ceased to exist. Upon information and belief, Wachovia Bank, N.A. ceased to exist in late 2009 or shortly thereafter. Once Wachovia Bank, N.A. ceased to exist, Mr. Grzan was jointly employed by Wells Fargo & Company and Wells Fargo Bank,

8

DEFENDANTS' AMENDED ANSWER TO PLAINTIFFS' THIRD AMENDED COMPLAINT -
COLLECTIVE ACTION AND CLASS ACTION - CASE NO. C 14-00989 PJH

N.A. until approximately November 27, 2009 when his employment ended. Mr. Grzan asserts individual claims for violations of New York state laws.

**ANSWER:**

Defendants admit that Plaintiff Brandon Grzan was employed by Wachovia in New York from approximately August 28, 2006 until approximately November 27, 2009. Defendants admit that Plaintiff Brandon Grzan asserts individual claims for violations of New York state law, but deny the allegation that any such violation has occurred. Defendants deny that Plaintiff Brandon Grzan was employed by WFC or Wells Fargo, jointly or otherwise. Defendants are without knowledge or information sufficient to admit or deny the allegation that "Brandon Grzan is a resident of New York," and therefore deny that allegation. Defendants deny the remaining allegations set forth in Paragraph 14 of the Complaint.

**COMPLAINT ¶15:**

Plaintiff Jason L. Hoffman is a resident of New York who was employed by Defendants as a non-exempt employee in New York. Mr. Hoffman was employed by Wachovia Bank, N.A. from approximately September 3, 2002 until Wells Fargo & Company acquired Wachovia Corporation and its subsidiary entities including Wachovia Bank, N.A., which upon information and belief occurred on or about December 31, 2008. After the acquisition of the Wachovia entities by Wells Fargo & Company, Mr. Hoffman became jointly employed by Wells Fargo & Company and Wachovia Bank, N.A. until Wachovia Bank, N.A. merged into Wells Fargo Bank, N.A. and ceased to exist. Upon information and belief, Wachovia Bank, N.A. ceased to exist in late 2009 or shortly thereafter. Once Wachovia Bank, N.A. ceased to exist, Mr. Hoffman was jointly employed by Wells Fargo & Company and Wells Fargo Bank, N.A. until approximately May 7, 2010 when his employment ended. Mr. Hoffman asserts individual claims for violations of New York state laws.

**ANSWER:**

Defendants admit that Plaintiff Jason L. Hoffman was employed by Wachovia in New York from approximately September 3, 2002 until Wachovia merged with and into Wells Fargo, and that Plaintiff Jason L. Hoffman was an employee of Wells Fargo after the merger until approximately May 7,

2010, when his employment ended, but deny that the merger was effective on or about December 31, 2008.  Defendants admit that Plaintiff Jason L. Hoffman asserts individual claims for violations of New York state law, but deny the allegation that any such violation has occurred.  Defendants deny that Plaintiff Jason L. Hoffman was employed by WFC, jointly or otherwise.  Defendants are without knowledge or information sufficient to admit or deny the allegation that "Plaintiff Jason L. Hoffman is a resident of New York," and therefore deny that allegation.  Defendants deny the remaining allegations set forth in Paragraph 15 of the Complaint.

**COMPLAINT ¶16:**

Plaintiff Brian Lynch is a resident of New York who was employed by Defendants as a non-exempt employee in New York. Mr. Lynch was employed by Wachovia Bank, N.A. from approximately October 16, 2006 until Wells Fargo & Company acquired Wachovia Corporation and its subsidiary entities including Wachovia Bank, N.A., which upon information and belief occurred on or about December 31, 2008. After the acquisition of the Wachovia entities by Wells Fargo & Company, Mr. Lynch became jointly employed by Wells Fargo & Company and Wachovia Bank, N.A. until Wachovia Bank, N.A. merged into Wells Fargo Bank, N.A. and ceased to exist. Upon information and belief, Wachovia Bank, N.A. ceased to exist in late 2009 or shortly thereafter. Once Wachovia Bank, N.A. ceased to exist, Mr. Lynch was jointly employed by Wells Fargo & Company and Wells Fargo Bank, N.A. until approximately December 6, 2010 when his employment ended. Mr. Lynch asserts individual claims for violations of New York state laws.

**ANSWER:**

Defendants admit that Plaintiff Brian Lynch was employed by Wachovia in New York from approximately October 16, 2006 until Wachovia merged with and into Wells Fargo, and that Plaintiff Brian Lynch was an employee of Wells Fargo after the merger until approximately December 6, 2010 when his employment ended, but deny that the merger was effective on or about December 31, 2008. Defendants admit that Plaintiff Brian Lynch asserts individual claims for violations of New York state law, but deny the allegation that any such violation has occurred.  Defendants deny that Plaintiff Brian Lynch was employed by WFC, jointly or otherwise.  Defendants are without knowledge or information

DEFENDANTS' AMENDED ANSWER TO PLAINTIFFS' THIRD AMENDED COMPLAINT -
COLLECTIVE ACTION AND CLASS ACTION - CASE NO. C 14-00989 PJH

1   sufficient to admit or deny the allegation that "Plaintiff Brian Lynch is a resident of New York," and

2   therefore deny that allegation.  Defendants deny the remaining allegations set forth in Paragraph 16 of

3   the Complaint.

4   **COMPLAINT ¶17:**

5         Plaintiff John Sorocenski is a resident of New York who was employed by Defendants as a non-

6   exempt employee in New York.  Mr. Sorocenski was employed by Wachovia Bank, N.A. from

7   approximately June 9, 2008 until Wells Fargo & Company acquired Wachovia Corporation and its

8   subsidiary entities including Wachovia Bank, N.A., which upon information and belief occurred on or

9   about December 31, 2008. After the acquisition of the Wachovia entities by Wells Fargo & Company,

10  Mr. Sorocenski became jointly employed by Wells Fargo & Company and Wachovia Bank, N.A. until

11  Wachovia Bank, N.A. merged into Wells Fargo Bank, N.A. and ceased to exist. Upon information and

12  belief, Wachovia Bank, N.A. ceased to exist in late 2009 or shortly thereafter. Once Wachovia Bank,

13  N.A. ceased to exist, Mr. Sorocenski was jointly employed by Wells Fargo & Company and Wells Fargo

14  Bank, N.A. until approximately April 27, 2012 when his employment ended. On March 3, 2014, Ms.

15  Sorocenski filed a notice of consent herein. Mr. Sorocenski asserts individual FLSA claims and New

16  York state law claims.

17  **ANSWER:**

18        Defendants admit that Plaintiff John Sorocenski was employed by Wachovia in New York from

19  approximately June 9, 2008 until Wachovia merged with and into Wells Fargo, and that Plaintiff John

20  Sorocenski was an employee of Wells Fargo after the merger until approximately April 27, 2012 when

21  his employment ended, but deny that the merger was effective on or about December 31, 2008.

22  Defendants admit that Plaintiff John Sorocenski filed a notice of consent on March 3, 2014.  Defendants

23  admit that Plaintiff John Sorocenski asserts individual claims for violations of New York state law and

24  the FLSA, but deny the allegation that any such violation has occurred.  Defendants deny that Plaintiff

25  John Sorocenski was employed by WFC, jointly or otherwise.  Defendants are without knowledge or

26  information sufficient to admit or deny the allegation that "Plaintiff John Sorocenski is a resident of

27

28

DEFENDANTS' AMENDED ANSWER TO PLAINTIFFS' THIRD AMENDED COMPLAINT -
COLLECTIVE ACTION AND CLASS ACTION - CASE NO. C 14-00989 PJH

1   New York," and therefore deny that allegation.  Defendants deny the remaining allegations set forth in

2   Paragraph 17 of the Complaint.

3   **COMPLAINT ¶18:**

4       Plaintiff Sezgin Unay is a resident of New York who was employed by Defendants as a non-

5   exempt employee in New York. Mr. Unay was employed by Wachovia Bank, N.A. from approximately

6   September 2, 2008 until Wells Fargo & Company acquired Wachovia Corporation and its subsidiary

7   entities including Wachovia Bank, N.A., which upon information and belief occurred on or about

8   December 31, 2008. After the acquisition of the Wachovia entities by Wells Fargo & Company, Mr.

9   Hoffman became jointly employed by Wells Fargo & Company and Wachovia Bank, N.A. until

10  Wachovia Bank, N.A. merged into Wells Fargo Bank, N.A. and ceased to exist. Upon information and

11  belief, Wachovia Bank, N.A. ceased to exist in late 2009 or shortly thereafter. Once Wachovia Bank,

12  N.A. ceased to exist, Mr. Unay was jointly employed by Wells Fargo & Company and Wells Fargo

13  Bank, N.A. until approximately May 24, 2010 when his employment ended. Mr. Unay asserts individual

14  claims for violations of New York state laws.

15  **ANSWER:**

16      Defendants admit that Plaintiff Sezgin Unay was employed by Wachovia in New York from

17  approximately September 2, 2008 until Wachovia merged with and into Wells Fargo, and that Plaintiff

18  Sezgin Unay was an employee of Wells Fargo after the merger until approximately May 24, 2010, when

19  his employment ended, but deny that the merger was effective on or about December 31, 2008.

20  Defendants admit that Plaintiff Sezgin Unay asserts individual claims for violations of New York state

21  law and the FLSA, but deny the allegation that any such violation has occurred.  Defendants deny that

22  Plaintiff Sezgin Unay was employed by WFC, jointly or otherwise.  Defendants are without knowledge

23  or information sufficient to admit or deny the allegation that "Plaintiff Sezgin Unay is a resident of New

24  York," and therefore deny that allegation.  Defendants deny the remaining allegations set forth in

25  Paragraph 18 of the Complaint.

26

27

28

DEFENDANTS' AMENDED ANSWER TO PLAINTIFFS' THIRD AMENDED COMPLAINT -
COLLECTIVE ACTION AND CLASS ACTION - CASE NO. C 14-00989 PJH

1

**COMPLAINT ¶19:**

2

Plaintiffs Sona K. Anand, Brandon Grzan, Jason L. Hoffman, Brian Lynch, John Sorocenski, and

3

Sezgin Unay are former non-exempt employees of Wachovia Bank, N.A., Wells Fargo & Company, and

4

Wells Fargo Bank, N.A. within the meaning of NYLL §§ 190(2), 651(5) and 12 NYCRR § 142-2.14,

5

and all other applicable New York state statutes and regulations.

6

**ANSWER:**

7

Defendants admit that Plaintiffs Sona K. Anand, Jason L. Hoffman, Brian Lynch, John

8

Sorocenski, and Sezgin Unay are former employees of Wachovia and Wells Fargo, who were classified

9

as non-exempt during part or all of their employment.  Defendants admit that Plaintiff Brandon Grzan is

10

a former employee of Wachovia who was classified as non-exempt during part or all of his employment.

11

Defendants admit Plaintiffs Sona K. Anand, Jason L. Hoffman, Brian Lynch, John Sorocenski, and

12

Sezgin Unay were employees of Wachovia and Wells Fargo, and that Plaintiff Brandon Grzan was an

13

employee of Wachovia, as that term is defined under the statutes and regulations cited in Paragraph 19

14

of the Complaint, in the State of New York, during part or all of their employment.  Defendants are

15

without knowledge or information sufficient to admit or deny the allegations that "Plaintiffs Sona K.

16

Anand, Brandon Grzan, Jason L. Hoffman, Brian Lynch, John Sorocenski, and Sezgin Unay are former

17

non-exempt employees of Wachovia Bank, N.A., Wells Fargo & Company, and Wells Fargo Bank, N.A.

18

within the meaning of . . . all other applicable New York state statutes and regulations," and therefore

19

deny those allegations.  Defendants deny the remaining allegations set forth in Paragraph 19 of the

20

Complaint.

21

**COMPLAINT ¶20:**

22

Plaintiffs Sona K. Anand and John Sorocenski are former non-exempt employees of Wells Fargo

23

& Company, and Wells Fargo Bank, N.A. as defined by 29 U.S.C. § 203(e).

24

**ANSWER:**

25

Defendants admit that Plaintiffs Sona K. Anand and John Sorocenski were employees of Wells

26

Fargo, as that term is defined under the FLSA, during part of their employment.  Defendants deny the

27

remaining allegations set forth in Paragraph 20 of the Complaint.

28

DEFENDANTS' AMENDED ANSWER TO PLAINTIFFS' THIRD AMENDED COMPLAINT -
COLLECTIVE ACTION AND CLASS ACTION - CASE NO. C 14-00989 PJH

*Missouri Resident*

**COMPLAINT ¶21:**

Plaintiff Anthony Austin is a resident of Missouri who was jointly employed by Wells Fargo Bank, N.A. and Wells Fargo & Company in Missouri as a non-exempt employee as defined by 29 U.S.C. § 203(e) from approximately March 7, 2011 to November 16, 2013.  On July 3, 2014, Mr. Austin filed a notice of consent herein.  Mr. Austin asserts individual FLSA claims.

**ANSWER:**

Defendants admit that Plaintiff Anthony Austin filed a notice of consent on July 3, 2014. Defendants are without knowledge or information sufficient to admit or deny the allegation that "Plaintiff Anthony Austin is a resident of Missouri," and therefore deny that allegation.  Defendants deny the remaining allegations set forth in Paragraph 21 of the Complaint.

*Florida Resident*

**COMPLAINT ¶22:**

Plaintiff Karla P. Salazar is a resident of Florida who was jointly employed by Wells Fargo & Company and Wells Fargo Bank, N.A. in Florida as a non-exempt employee as defined by 29 U.S.C. § 203(e) from approximately December 15, 2003 to March 15, 2013.  On March 3, 2014, Ms. Salazar filed a notice of consent herein. Ms. Salazar asserts individual FLSA claims.

**ANSWER:**

Defendants admit that Plaintiff Karla Salazar was employed in Florida from approximately December 15, 2003 until approximately March 15, 2013, but aver that Plaintiff Karla Salazar was employed by Wachovia until Wachovia merged with and into Wells Fargo, and that Plaintiff Karla Salazar was an employee of Wells Fargo, as that term is defined under the FLSA, after the merger. Defendants admit that Plaintiff Karla Salazar filed a notice of consent, and that Plaintiff Karla Salazar asserts individual claims for violations of the FLSA, but deny the allegation that any such violation has occurred.  Defendants deny that Plaintiff Karla Salazar was employed by WFC, jointly or otherwise. Defendants are without knowledge or information sufficient to admit or deny the allegation that

"Plaintiff Karla P. Salazar is a resident of Florida," and therefore deny that allegation. Defendants deny the remaining allegations set forth in Paragraph 22 of the Complaint.

***Texas Resident***

**COMPLAINT ¶23:**

Plaintiff Corry A. Williams is a resident of Texas who was jointly employed by Wells Fargo & Company and Wells Fargo Bank, N.A. in Texas as a non-exempt employee as defined by 29 U.S.C. § 203(e) from approximately June 21, 2010 to August 5, 2011. On March 3, 2014, Mr. Williams filed a notice of consent herein. Mr. Williams asserts individual FLSA claims.

**ANSWER:**

Defendants admit that Plaintiff Corry A. Williams was an employee of Wells Fargo, as that term is defined under the FLSA, in Texas from approximately June 21, 2010 to approximately August 5, 2011. Defendants admit that Plaintiff Corry A. Williams filed a notice of consent and that Plaintiff Corry A. Williams asserts individual claims for violations of the FLSA, but deny the allegation that any such violation has occurred. Defendants deny that Plaintiff Corry A. Williams was employed by WFC, jointly or otherwise. Defendants are without knowledge or information sufficient to admit or deny the allegation that "Plaintiff Corry A. Williams is a resident of Texas," and therefore deny that allegation. Defendants deny the remaining allegations set forth in Paragraph 23 of the Complaint.

**DEFENDANTS**

**COMPLAINT ¶24:**

Defendant Wells Fargo & Company is a Delaware Corporation that conducts business in the State of California and has its corporate headquarters at 420 Montgomery Street, San Francisco, California 94104, and has been served with process and entered an appearance herein.

**ANSWER:**

Defendants admit that WFC is a Delaware Corporation that conducts business in the State of California and has its corporate headquarters at 420 Montgomery Street, San Francisco, California 94104, that WFC has been served with process, and that WFC has entered an appearance herein. Defendants deny that WFC was Plaintiffs' employer.

1

**COMPLAINT ¶25:**

2

Defendant Wells Fargo Bank, N.A. does business in the State of California.  Wells Fargo Bank,

3

N.A. is a citizen of South Dakota.  Wells Fargo Bank, N.A. has been served with process and entered an

4

appearance herein.

5

**ANSWER:**

6

Defendants admit that Wells Fargo does business in the State of California, is a citizen of South

7

Dakota, has been served with process, and has entered an appearance herein.

8

**COMPLAINT ¶26:**

9

Defendant Wachovia Bank, N.A., merged with and into Wells Fargo Bank, N.A., with the

10

resulting title of Wells Fargo Bank, N.A. in late 2009 or shortly thereafter.  Upon information and belief,

11

Wells Fargo & Company and Wells Fargo Bank, N.A. have assumed the debts and liabilities of

12

Wachovia Bank, N.A. and its subsidiaries and affiliates.  Upon information and belief, Wachovia Bank,

13

N.A. no longer exists as a separate entity. As the successor in interest to Defendant Wachovia Bank,

14

N.A., Defendant Wells Fargo Bank, N.A. filed an answer on behalf of Defendant Wachovia Bank, N.A.

15

Accordingly, Defendant Wachovia Bank, N.A. has entered an appearance herein.

16

**ANSWER:**

17

Defendants admit that Wachovia merged with and into Wells Fargo, with the resulting title of

18

"Wells Fargo Bank, N.A.," that Wells Fargo assumed the debts and liabilities of Wachovia, and that

19

Wachovia no longer exists as an entity.  Defendants further admit that Wells Fargo filed an answer as

20

the successor in interest to Wachovia.  Defendants deny the remaining allegations set forth in Paragraph

21

26 of the Complaint.

22

**JOINT EMPLOYER FACTS**

23

**COMPLAINT ¶27:**

24

Upon information and belief, Wells Fargo & Company has assumed the debts and liabilities of

25

Wachovia Corporation and its subsidiaries and affiliates, including Wachovia Bank, N.A.

26

27

28

DEFENDANTS' AMENDED ANSWER TO PLAINTIFFS' THIRD AMENDED COMPLAINT -
COLLECTIVE ACTION AND CLASS ACTION - CASE NO. C 14-00989 PJH

1    **ANSWER:**

2        Defendants admit that WFC has assumed the debts and liabilities of Wachovia Corporation.

3    Defendants deny the remaining allegations set forth in Paragraph 27 of the Complaint.

4    **COMPLAINT ¶28:**

5        Upon information and belief, Wells Fargo Bank, N.A. has assumed the debts and liabilities of

6    Wachovia Bank, N.A.

7    **ANSWER:**

8        Defendants admit the allegations set forth in Paragraph 28 of the Complaint.

9    **COMPLAINT ¶29:**

10       Wells Fargo & Company and Wells Fargo Bank, N.A. constitute a single enterprise under the

11   FLSA because Wells Fargo & Company and Wells Fargo Bank, N.A. perform related banking and

12   financial activities through unified operation and common control for a common business purpose.

13   **ANSWER:**

14       Defendants deny the allegations set forth in Paragraph 29 of the Complaint.

15   **COMPLAINT ¶30:**

16       Upon information and belief, each Defendant named in this Complaint, knowingly and willfully

17   acted in concert, conspired and agreed together among themselves and entered into a combination and

18   systemized campaign of activity to damage Plaintiffs and the New York Class and together consciously

19   and/or recklessly act in derogation of Plaintiffs' and New York Class Members' rights. This conspiracy

20   and Defendants' concerted actions, were such that, upon information and belief, Defendants and each of

21   them, represented a unified body so that the actions of one Defendant was accomplished in concert with,

22   and with knowledge, ratification, authorization and approval of each of the other Defendants.

23   **ANSWER:**

24       Defendants deny the allegations set forth in Paragraph 30 of the Complaint.

25

26

27

28

*A. Facts Relating to Wells Fargo & Company*

**COMPLAINT ¶31:**

Wells Fargo & Company was the employer of Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., Porcelynne Hawthorne, Corry A. Williams, Karla P. Salazar, Brian Lynch, Sezgin Unay, John Sorocenski, Brandon Grzan, Jason L. Hoffman, Sona K. Anand, Jason M. Otto, Anthony Sosa, and Anthony Austin and the New York Class as evidenced by the following facts:

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 31 of the Complaint.

**COMPLAINT ¶32:**

Wells Fargo & Company provides banking and financial services to customers across the United States.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 32 of the Complaint.

**COMPLAINT ¶33:**

Wells Fargo & Company assumes financial responsibility for and claims the benefits and burdens of the profits and losses of Wells Fargo Bank, N.A.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 33 of the Complaint.

**COMPLAINT ¶34:**

In a joint submission to the Federal Reserve and the Federal Deposit Insurance Corporation, Wells Fargo & Company stated that Wells Fargo Bank, N.A. "represented nearly 90% of the Company's [Wells Fargo & Company] consolidated assets and contributed the majority of the Company's consolidated revenues and net earnings. Wells Fargo Bank, N.A. is involved with all of the Company's critical operations, either directly or through one or more of its subsidiaries, and the majority of the Company's core business lines."

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 34 of the Complaint.

**COMPLAINT ¶35:**

There is a seamless flow of corporate officers between Wells Fargo & Company and Wells Fargo Bank, N.A. that demonstrates Wells Fargo & Company's control and management over Wells Fargo Bank, N.A. For example,

    a.    John G. Stumpf is Wells Fargo & Company's President and Chief Executive Officer and a chairman of Wells Fargo Bank, N.A.;

    b.    Carrie L. Tolstedt is Head of Community Banking of Wells Fargo & Company and President and Chief Executive Officer of Wells Fargo Bank, N.A.;

    c.    Timothy Sloan is the Chief Financial Officer for Wells Fargo & Company and Wells Fargo Bank, N.A.;

    d.    Patricia R. Callahan is the Chief Administrative Officer for Wells Fargo & Company and Wells Fargo Bank, N.A.;

    e.    Wells Fargo & Company and Wells Fargo Bank, N.A. have the same Controller, Richard D. Levy;

    f.    Michael J. Loughlin is the Chief Risk Officer for Wells Fargo & Company and Wells Fargo Bank, N.A.; and

    g.    Wells Fargo & Company and Wells Fargo Bank, N.A. share the same Chief Information Officer, Kevin A. Rhein, and General Counsel, James M. Strother.

**ANSWER:**

Defendants admit that John G. Stumpf is WFC's President and Chief Executive Officer and a chairman of Wells Fargo, that Patricia R. Callahan is the Chief Administrative Officer for WFC and for Wells Fargo, that Richard D. Levy is the Controller for WFC and for Wells Fargo, that Michael J. Loughlin is the Chief Risk Officer for WFC and for Wells Fargo, that Kevin A. Rhein is the Chief Information Officer for WFC and for Wells Fargo, and that James M. Strother is General Counsel for WFC and for Wells Fargo.  Defendants deny the remaining allegations set forth in Paragraph 35 of the Complaint.

1

**COMPLAINT ¶36:**

2

During the relevant time periods, Wells Fargo & Company exercised control over the wages and

3

hours and working conditions of Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., Porcelynne

4

Hawthorne, Corry A. Williams, Karla P. Salazar, Brian Lynch, Sezgin Unay, John Sorocenski, Brandon

5

Grzan, Jason L. Hoffman, Sona K. Anand, Jason M. Otto, Anthony Sosa, Anthony Austin and the New

6

York Class.

7

**ANSWER:**

8

Defendants deny the allegations set forth in Paragraph 36 of the Complaint.

9

**COMPLAINT ¶37:**

10

During the relevant time periods, Wells Fargo & Company suffered or permitted Plaintiffs

11

Monique Perez, Thaxton V. Rowe, Jr., Porcelynne Hawthorne, Corry A. Williams, Karla P. Salazar,

12

Brian Lynch, Sezgin Unay, John Sorocenski, Brandon Grzan, Jason L. Hoffman, Sona K. Anand, Jason

13

M. Otto, Anthony Sosa, Anthony Austin and the New York Class to work.

14

**ANSWER:**

15

Defendants deny the allegations set forth in Paragraph 37 of the Complaint.

16

**COMPLAINT ¶38:**

17

During the relevant time periods, Wells Fargo & Company engaged Plaintiffs Monique Perez,

18

Thaxton V. Rowe, Jr., Porcelynne Hawthorne, Corry A. Williams, Karla P. Salazar, Brian Lynch, Sezgin

19

Unay, John Sorocenski, Brandon Grzan, Jason L. Hoffman, Sona K. Anand, Jason M. Otto, Anthony

20

Sosa, Anthony Austin and the New York Class to work.

21

**ANSWER:**

22

Defendants deny the allegations set forth in Paragraph 38 of the Complaint.

23

**COMPLAINT ¶39:**

24

Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., Porcelynne Hawthorne, Corry A. Williams,

25

Karla P. Salazar, Brian Lynch, Sezgin Unay, John Sorocenski, Brandon Grzan, Jason L. Hoffman, Sona

26

K. Anand, Jason M. Otto, Anthony Sosa, Anthony Austin and the New York Class worked at Wells

27

Fargo & Company's premises, including its banks and office locations, and used the equipment and

28

20

1   tools owned by Wells Fargo & Company to effectuate their daily employment duties as described
2   herein.

3   **ANSWER:**

4       Defendants deny the allegations set forth in Paragraph 39 of the Complaint.

5   **COMPLAINT ¶40:**

6       Wells Fargo & Company maintains employment records relating to Plaintiffs Monique Perez,
7   Thaxton V. Rowe, Jr., Porcelynne Hawthorne, Corry A. Williams, Karla P. Salazar, Brian Lynch, Sezgin
8   Unay, John Sorocenski, Brandon Grzan, Jason L. Hoffman, Sona K. Anand, Jason M. Otto, Anthony
9   Sosa, Anthony Austin and the New York Class.

10  **ANSWER:**

11      Defendants deny the allegations set forth in Paragraph 40 of the Complaint.

12  **COMPLAINT ¶41:**

13      The job duties and work performance of Plaintiffs Monique Perez, Thaxton V. Rowe, Jr.,
14  Porcelynne Hawthorne, Corry A. Williams, Karla P. Salazar, Brian Lynch, Sezgin Unay, John
15  Sorocenski, Brandon Grzan, Jason L. Hoffman, Sona K. Anand, Jason M. Otto, Anthony Sosa, Anthony
16  Austin and the New York Class are/were integral to the overall function and operation of Wells Fargo &
17  Company's business as a financial institution and continued operation.

18  **ANSWER:**

19      Defendants deny the allegations set forth in Paragraph 41 of the Complaint.

20  **COMPLAINT ¶42:**

21      Wells Fargo & Company retained the right of control and exercised that right of control over the
22  manner and method by which Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., Porcelynne Hawthorne,
23  Corry A. Williams, Karla P. Salazar, Brian Lynch, Sezgin Unay, John Sorocenski, Brandon Grzan,
24  Jason L. Hoffman, Sona K. Anand, Jason M. Otto, Anthony Sosa, Anthony Austin and the New York
25  Class accomplished the results of their work.

26  **ANSWER:**

27      Defendants deny the allegations set forth in Paragraph 42 of the Complaint.

28

21

1   **COMPLAINT ¶43:**

2       Wells Fargo & Company devised and created the Store Opening and Closing Policies, and Wells

3   Fargo & Company and Wells Fargo Bank, N.A. jointly enforced the Store Opening and Closing Policies

4   and jointly communicated its contents to Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., Porcelynne

5   Hawthorne, Corry A. Williams, Karla P. Salazar, Brian Lynch, Sezgin Unay, John Sorocenski, Brandon

6   Grzan, Jason L. Hoffman, Sona K. Anand, Jason M. Otto, Anthony Sosa, and the New York Class. The

7   Store Opening and Closing Policies are detailed procedures outlining the activities required for opening

8   and closing the bank branches and were created for the safety of all Wells Fargo employees including

9   Plaintiffs and the New York Class. The Store Opening and Closing Procedures provide rules and

10  conditions of employment, and constitutes one way, but not the only way, in which Wells Fargo &

11  Company and Wells Fargo Bank, N.A. exercised control over Plaintiffs Monique Perez, Thaxton V.

12  Rowe, Jr., Porcelynne Hawthorne, Corry A. Williams, Karla P. Salazar, Brian Lynch, Sezgin Unay, John

13  Sorocenski, Brandon Grzan, Jason L. Hoffman, Sona K. Anand, Jason M. Otto, Anthony Sosa, and the

14  New York Class.

15  **ANSWER:**

16      Defendants deny the allegations set forth in Paragraph 43 of the Complaint.

17  **COMPLAINT ¶44:**

18      Wells Fargo & Company devised and created the Team Member Handbook, and Wells Fargo &

19  Company and Wells Fargo Bank, N.A, jointly enforced the Team Member Handbook and jointly

20  communicated its contents to Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., Porcelynne Hawthorne,

21  Corry A. Williams, Karla P. Salazar, Brian Lynch, Sezgin Unay, John Sorocenski, Brandon Grzan,

22  Jason L. Hoffman, Sona K. Anand, Jason M. Otto, Anthony Sosa, Anthony Austin and the New York

23  Class.

24  **ANSWER:**

25      Defendants deny the allegations set forth in Paragraph 44 of the Complaint.

26

27

28

1

**COMPLAINT ¶45:**

2

The Team Member Handbook provides rules and conditions of employment for Plaintiffs and the

3

New York Class, and constitutes one way, but not the only way, in which Well Fargo Bank, N.A. and

4

Wells Fargo & Company exercised control over Plaintiffs Monique Perez, Thaxton V. Rowe, Jr.,

5

Porcelynne Hawthorne, Corry A. Williams, Karla P. Salazar, Brian Lynch, Sezgin Unay, John

6

Sorocenski, Brandon Grzan, Jason L. Hoffman, Sona K. Anand, Jason M. Otto, Anthony Sosa, Anthony

7

Austin and the New York Class.

8

**ANSWER:**

9

Defendants deny the allegations set forth in Paragraph 45 of the Complaint.

10

**COMPLAINT ¶46:**

11

Wells Fargo & Company, working in conjunction with Wells Fargo Bank, N.A. determined the

12

rate and method of payment for the wages of Plaintiffs Monique Perez, Thaxton V. Rowe, Jr.,

13

Porcelynne Hawthorne, Corry A. Williams, Karla P. Salazar, Brian Lynch, Sezgin Unay, John

14

Sorocenski, Brandon Grzan, Jason L. Hoffman, Sona K. Anand, Jason M. Otto, Anthony Sosa, and

15

Anthony Austin and New York Class.

16

**ANSWER:**

17

Defendants deny the allegations set forth in Paragraph 46 of the Complaint.

18

**COMPLAINT ¶47:**

19

Wells Fargo & Company, working in conjunction with Wells Fargo Bank, N.A., determined

20

where, when, and at which location or facility Plaintiffs Monique Perez, Thaxton V. Rowe, Jr.,

21

Porcelynne Hawthorne, Corry A. Williams, Karla P. Salazar, Brian Lynch, Sezgin Unay, John

22

Sorocenski, Brandon Grzan, Jason L. Hoffman, Sona K. Anand, Jason M. Otto, Anthony Sosa, Anthony

23

Austin and the New York Class worked.

24

**ANSWER:**

25

Defendants deny the allegations set forth in Paragraph 47 of the Complaint.

26

27

28

**COMPLAINT ¶48:**

Wells Fargo & Company exercised control over Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., Porcelynne Hawthorne, Corry A. Williams, Karla P. Salazar, Brian Lynch, Sezgin Unay, John Sorocenski, Brandon Grzan, Jason L. Hoffman, Sona K. Anand, Jason M. Otto, Anthony Sosa, Anthony Austin and the New York Class Members that exceeds the control normally exercised by a parent company.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 48 of the Complaint.

**COMPLAINT ¶49:**

Wells Fargo & Company possessed the power to hire and fire Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., Porcelynne Hawthorne, Corry A. Williams, Karla P. Salazar, Brian Lynch, Sezgin Unay, John Sorocenski, Brandon Grzan, Jason L. Hoffman, Sona K. Anand, Jason M. Otto, Anthony Sosa, Anthony Austin and the New York Class.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 49 of the Complaint.

**COMPLAINT ¶50:**

Wells Fargo & Company retained the right of control and exercised that right of control over the number of hours worked by Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., Porcelynne Hawthorne, Corry A. Williams, Karla P. Salazar, Brian Lynch, Sezgin Unay, John Sorocenski, Brandon Grzan, Jason L. Hoffman, Sona K. Anand, Jason M. Otto, Anthony Sosa, Anthony Austin and the New York Class, including the hours worked "off-the-clock" as alleged herein for which Plaintiffs and Class Members were not compensated.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 50 of the Complaint.

**COMPLAINT ¶51:**

Wells Fargo & Company devised, implemented, administered and enforced the payroll engine and timekeeping system for Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., Porcelynne Hawthorne,

24

Corry A. Williams, Karla P. Salazar, Brian Lynch, Sezgin Unay, John Sorocenski, Brandon Grzan, Jason L. Hoffman, Sona K. Anand, Jason M. Otto, Anthony Sosa, Anthony Austin and the New York Class Members that effected the violations described herein.  For example, under such a system, when an employee recorded a break of 20 minutes or less in duration, the system failed to credit that time as work time and Sona Anand and the New York Class were not properly compensated in violation of NYLL.  This practice was overseen by a single head of human resources for Wells Fargo & Company and all its subsidiaries, including Wells Fargo Bank, N.A. and Wachovia Bank, N.A.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 51 of the Complaint.

***B. Facts Relating to Wells Fargo Bank, N.A.***

**COMPLAINT ¶52:**

The facts which evidence that Wells Fargo Bank, N.A. was the employer of Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., Porcelynne Hawthorne, Corry A. Williams, Karla P. Salazar, Brian Lynch, Sezgin Unay, John Sorocenski, Brandon Grzan, Jason. L. Hoffman, Sona K. Anand, Jason M. Otto, Anthony Sosa, Anthony Austin and the New York Class are as follows:

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 52 of the Complaint.

**COMPLAINT ¶53:**

Wells Fargo Bank, N.A. provides banking and financial services to customers across the United States.

**ANSWER:**

Defendants admit that Wells Fargo provides banking and financial services to customers in the United States.  Plaintiffs' use of the term "across the United States" is unclear and ambiguous, and Defendants therefore deny the remaining allegations set forth in Paragraph 53 of the Complaint.

**COMPLAINT ¶54:**

During the relevant time periods, Wells Fargo Bank, N.A. exercised control over the wages and hours and working conditions of Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., Porcelynne

25

1  Hawthorne, Corry A. Williams, Karla P. Salazar, Brian Lynch, Sezgin Unay, John Sorocenski, Brandon
2  Grzan, Jason L. Hoffman, Sona K. Anand, Jason M. Otto, Anthony Sosa, Anthony Austin and the New
3  York Class.

4  **ANSWER:**

5       Defendants admit that, during their employment with Wells Fargo during the applicable statutory
6  period(s), Wells Fargo exercised some control over the wages, hours, and working conditions of
7  Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., Porcelynne Hawthorne, Corry A. Williams, Karla P.
8  Salazar, Brian Lynch, Sezgin Unay, John Sorocenski, Jason L. Hoffman, Sona K. Anand, Jason M. Otto,
9  and Anthony Sosa.  Defendants deny the remaining allegations set forth in Paragraph 54 of the
10  Complaint.

11  **COMPLAINT ¶55:**

12       Wells Fargo Bank, N.A. has admitted pursuant to Federal Rule of Civil Procedure 36 that it
13  employed Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., Porcelynne Hawthorne, Corry A. Williams,
14  Karla P. Salazar, Brian Lynch, Sezgin Unay, John Sorocenski, Brandon Grzan, Jason L. Hoffman,
15  Sona K. Anand, and Anthony Austin.

16  **ANSWER:**

17       Defendants deny the allegations set forth in Paragraph 55 of the Complaint.

18  **COMPLAINT ¶56:**

19       During the relevant time periods, Wells Fargo Bank, N.A. suffered or permitted Plaintiffs
20  Monique Perez, Thaxton V. Rowe, Jr., Porcelynne Hawthorne, Corry A. Williams, Karla P. Salazar,
21  Brian Lynch, Sezgin Unay, John Sorocenski, Brandon Grzan, Jason L. Hoffman, Sona K. Anand, Jason
22  M. Otto, Anthony Sosa, Anthony Austin and the New York Class to work.

23  **ANSWER:**

24       Defendants admit that, during their employment with Wells Fargo during the applicable statutory
25  period(s), Wells Fargo suffered or permitted Plaintiffs Monique Perez, Thaxton V. Rowe, Jr.,
26  Porcelynne Hawthorne, Corry A. Williams, Karla P. Salazar, Brian Lynch, Sezgin Unay, John
27  Sorocenski, Jason L. Hoffman, Sona K. Anand, Jason M. Otto,  and Anthony Sosa to work, but deny

28

that Wells Fargo suffered or permitted these Plaintiffs to work off the clock.  Defendants deny the remaining allegations set forth in Paragraph 56 of the Complaint.

**COMPLAINT ¶57:**

During the relevant time periods, Wells Fargo Bank, N.A. engaged Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., Porcelynne Hawthorne, Corry A. Williams, Karla P. Salazar, Brian Lynch, Sezgin Unay, John Sorocenski, Brandon Grzan, Jason L. Hoffman, Sona K. Anand, Jason M. Otto, Anthony Sosa, Anthony Austin and the New York Class to work.

**ANSWER:**

Defendants admit that, during their employment with Wells Fargo during the applicable statutory period(s), Wells Fargo engaged Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., Porcelynne Hawthorne, Corry A. Williams, Karla P. Salazar, Brian Lynch, Sezgin Unay, John Sorocenski, Jason L. Hoffman, Sona K. Anand, Jason M. Otto,  and Anthony Sosa to work, but deny that Wells Fargo engaged these Plaintiffs to work off the clock.  Defendants deny the remaining allegations set forth in Paragraph 57 of the Complaint.

**COMPLAINT ¶58:**

Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., Porcelynne Hawthorne, Corry A. Williams, Karla P. Salazar, Brian Lynch, Sezgin Unay, John Sorocenski, Brandon Grzan, Jason L. Hoffman, Sona K. Anand, Jason M. Otto, Anthony Sosa, Anthony Austin and the New York Class worked at a bank or other facility owned or controlled by Wells Fargo Bank, N.A. and used the equipment and tools provided by Wells Fargo Bank, N.A. in performing their daily employment duties.

**ANSWER:**

Defendants admit that, during their employment with Wells Fargo during the applicable statutory period(s), Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., Porcelynne Hawthorne, Corry A. Williams, Karla P. Salazar, Brian Lynch, Sezgin Unay, John Sorocenski, Jason L. Hoffman, Sona K. Anand, Jason M. Otto,  and Anthony Sosa worked at a Wells Fargo bank facility and used equipment and tools provided by Wells Fargo to perform their daily job duties.  Defendants deny the remaining allegations set forth in Paragraph 58 of the Complaint.

1

**COMPLAINT ¶59:**

2

  Wells Fargo Bank, N.A. maintains employment records relating to Plaintiffs Monique Perez,

3

Thaxton V. Rowe, Jr., Porcelynne Hawthorne, Corry A. Williams, Karla P. Salazar, Brian Lynch, Sezgin

4

Unay, John Sorocenski, Brandon Grzan, Jason L. Hoffman, Sona K. Anand, Jason M. Otto, Anthony

5

Sosa, Anthony Austin and the New York Class.

6

**ANSWER:**

7

  Defendants admit that Wells Fargo maintains employment records relating to Plaintiffs Monique

8

Perez, Thaxton V. Rowe, Jr., Porcelynne Hawthorne, Corry A. Williams, Karla P. Salazar, Brian Lynch,

9

Sezgin Unay, John Sorocenski, Jason L. Hoffman, Sona K. Anand, Jason M. Otto,  and Anthony Sosa.

10

Defendants deny the remaining allegations set forth in Paragraph 59 of the Complaint.

11

**COMPLAINT ¶60:**

12

  Wells Fargo Bank, N.A. evaluated the job performance of Plaintiffs Monique Perez, Thaxton V.

13

Rowe, Jr., Porcelynne Hawthorne, Corry A. Williams, Karla P. Salazar, Brian Lynch, Sezgin Unay, John

14

Sorocenski, Brandon Grzan, Jason L. Hoffman, Sona K. Anand, Jason M. Otto, Anthony Sosa, Anthony

15

Austin and the New York Class.

16

**ANSWER:**

17

  Defendants deny the allegations set forth in Paragraph 60 of the Complaint.

18

**COMPLAINT ¶61:**

19

  The job duties and work performance of Monique Perez, Thaxton V. Rowe, Jr., Porcelynne

20

Hawthorne, Corry A. Williams, Karla P. Salazar, Brian Lynch, Sezgin Unay, John Sorocenski, Brandon

21

Grzan, Jason L. Hoffman, Sona K. Anand, Jason M. Otto, Anthony Sosa, Anthony Austin and the New

22

York Class were integral to the overall function and operation of Wells Fargo Bank, N.A.'s business and

23

continued operation.

24

**ANSWER:**

25

  Defendants deny the allegations set forth in Paragraph 61 of the Complaint.

26

27

28

**COMPLAINT ¶62:**

Wells Fargo Bank, N.A. retained the right of control and exercised that right of control over the manner and method by which Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., Porcelynne Hawthorne, Corry A. Williams, Karla P. Salazar, Brian Lynch, Sezgin Unay, John Sorocenski, Brandon Grzan, Jason L. Hoffman, Sona K. Anand, Jason M. Otto, Anthony Sosa, Anthony Austin and the New York Class accomplished the results of their work.

**ANSWER:**

Defendants admit that, during their employment with Wells Fargo during the applicable statutory period(s), Wells Fargo had the authority to control the work of Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., Porcelynne Hawthorne, Corry A. Williams, Karla P. Salazar, Brian Lynch, Sezgin Unay, John Sorocenski, Jason L. Hoffman, Sona K. Anand, Jason M. Otto, and Anthony Sosa. Defendants deny the remaining allegations set forth in Paragraph 62 of the Complaint.

**COMPLAINT ¶63:**

Wells Fargo Bank, N.A., along with Wells Fargo & Company, jointly enforced the Store Opening and Closing Policies and jointly communicated its contents to Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., Porcelynne Hawthorne, Corry A. Williams, Karla P. Salazar, Brian Lynch, Sezgin Unay, John Sorocenski, Brandon Grzan, Jason L. Hoffman, Sona K. Anand, Jason M. Otto, Anthony Sosa, Anthony Austin and the New York Class.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 63 of the Complaint.

**COMPLAINT ¶64:**

Wells Fargo Bank, N.A, along with Wells Fargo & Company, jointly enforced the Team Member Handbook and jointly communicated its contents to Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., Porcelynne Hawthorne, Corry A. Williams, Karla P. Salazar, Brian Lynch, Sezgin Unay, John Sorocenski, Brandon Grzan, Jason L. Hoffman, Sona K. Anand, Jason M. Otto, Anthony Sosa, Anthony Austin and the New York Class.

1    **ANSWER:**

2         Defendants deny the allegations set forth in Paragraph 64 of the Complaint.

3    **COMPLAINT ¶65:**

4         The Team Member Handbook provides rules and conditions of employment for Plaintiffs and the

5    putative class members, and constitutes one way, but not the only way, in which Well Fargo Bank, N.A.

6    exercised control over Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., Porcelynne Hawthorne, Corry A.

7    Williams, Karla P. Salazar, Brian Lynch, Sezgin Unay, John Sorocenski, Brandon Grzan, Jason L.

8    Hoffman, Sona K. Anand, Jason M. Otto, Anthony Sosa, Anthony Austin and the New York Class.

9    **ANSWER:**

10        Defendants deny the allegations set forth in Paragraph 65 of the Complaint.

11   **COMPLAINT ¶66:**

12        Working in conjunction with its parent Wells Fargo & Company, Wells Fargo Bank, N.A. jointly

13   determined the rate and method of payment of wages for Plaintiffs Monique Perez, Thaxton V. Rowe,

14   Jr., Porcelynne Hawthorne, Corry A. Williams, Karla P. Salazar, Brian Lynch, Sezgin Unay, John

15   Sorocenski, Brandon Grzan, Jason L. Hoffman, Sona K. Anand, Jason M. Otto, Anthony Sosa, Anthony

16   Austin and the New York Class.

17   **ANSWER:**

18        Defendants deny the allegations set forth in Paragraph 66 of the Complaint.

19   **COMPLAINT ¶67:**

20        Along with Wells Fargo & Company, Wells Fargo Bank, N.A. jointly possessed the power to

21   hire and fire Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., Porcelynne Hawthorne, Corry A.

22   Williams, Karla P. Salazar, Brian Lynch, Sezgin Unay, John Sorocenski, Brandon Grzan, Jason L.

23   Hoffman, Sona K. Anand, Jason M. Otto, Anthony Sosa, Anthony Austin and the New York Class.

24   **ANSWER:**

25        Defendants deny the allegations set forth in Paragraph 67 of the Complaint.

26

27

28

1   **COMPLAINT ¶68:**

2       Along with Wells Fargo & Company, Wells Fargo Bank, N.A. that Plaintiff Sona K. Anand and

3   the New York Class would not be compensated for recorded breaks of 20 minutes or less in duration.

4   **ANSWER:**

5       Defendants deny the allegations set forth in Paragraph 68 of the Complaint.

6   **COMPLAINT ¶69:**

7       Along with Wells Fargo & Company, Wells Fargo Bank, N.A. jointly retained the right of

8   control and exercised that right of control over the number of hours worked by Plaintiffs Monique Perez,

9   Thaxton V. Rowe, Jr., Porcelynne Hawthorne, Corry A. Williams, Karla P. Salazar, Brian Lynch, Sezgin

10  Unay, John Sorocenski, Brandon Grzan, Jason L. Hoffman, Sona K. Anand, Jason M. Otto, Anthony

11  Sosa, Anthony Austin and the New York Class, including the hours worked "off-the-clock" as alleged

12  herein for which Plaintiffs and the New York Class Members were not compensated.

13  **ANSWER:**

14      Defendants deny the allegations set forth in Paragraph 69 of the Complaint.

15  **COMPLAINT ¶70:**

16      Wells Fargo Bank, N.A. administered and enforced the payroll engine and timekeeping system

17  for Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., Porcelynne Hawthorne, Corry A. Williams, Karla P.

18  Salazar, Brian Lynch, Sezgin Unay, John Sorocenski, Brandon Grzan, Jason L. Hoffman, Sona K.

19  Anand, Jason M. Otto, Anthony Sosa, Anthony Austin and the New York Class that effected the

20  violations described herein.

21  **ANSWER:**

22      Defendants deny the allegations set forth in Paragraph 70 of the Complaint.

23  ***C. Facts Relating to Wachovia Bank, N.A.***

24  **COMPLAINT ¶71:**

25      The facts which evidence that Wachovia Bank, N.A. was the employer of Plaintiffs Sona K.

26  Anand, Sezgin Unay, John Sorocenski, Jason L. Hoffman, Brandon Grzan, Brian Lynch, and the New

27

28

31

York Class from the beginning of their employment until Wachovia Bank, N.A. merged with Wells Fargo Bank, N.A. and ceased to exist are as follows:

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 71 of the Complaint.

**COMPLAINT ¶72:**

Wachovia Bank, N.A. has admitted pursuant to Federal Rule of Civil Procedure 36 that it employed Plaintiffs Brian Lynch, Sezgin Unay, John Sorocenski, Brandon Grzan, Jason L. Hoffman, and Sona K. Anand.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 72 of the Complaint.

**COMPLAINT ¶73:**

During the relevant time period, Wachovia Bank, N.A. exercised control over the wages and hours and working conditions of Plaintiffs Sona K. Anand, Sezgin Unay, John Sorocenski, Jason L. Hoffman, Brandon Grzan, Brian Lynch and the New York Class.

**ANSWER:**

Defendants admit that, during their employment with Wachovia during the applicable statutory period(s), Wachovia exercised some control over the wages, hours, and working conditions of Plaintiffs Sona K. Anand, Sezgin Unay, John Sorocenski, Jason L. Hoffman, Brandon Grzan, and Brian Lynch. Defendants deny the remaining allegations set forth in Paragraph 73 of the Complaint.

**COMPLAINT ¶74:**

Wachovia Bank, N.A. enforced and implemented the time and attendance system known as My Time and required that Plaintiffs Sona K. Anand, Sezgin Unay, John Sorocenski, Jason L. Hoffman, Brandon Grzan, Brian Lynch, and the New York Class comply with this system.

**ANSWER:**

Defendants admit that, during part or all their employment with Wachovia during the applicable statutory period(s), Wachovia required Plaintiffs Sona K. Anand, Sezgin Unay, John Sorocenski, Jason

32

L. Hoffman, Brandon Grzan, and Brian Lynch to use a timekeeping system known as MyTime. Defendants deny the remaining allegations set forth in Paragraph 74 of the Complaint.

**COMPLAINT ¶75:**

Wachovia Bank, N.A. instructed, informed and required Plaintiffs Sona K. Anand, Sezgin Unay, John Sorocenski, Jason L. Hoffman, Brandon Grzan, and Brian Lynch and Class Members to clock-in and out for breaks.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 75 of the Complaint.

**COMPLAINT ¶76:**

Wachovia Bank, N.A. provided rules, direction, and conditions of employment for Plaintiffs Sona K. Anand, Sezgin Unay, John Sorocenski, Jason L. Hoffman, Brandon Grzan, Brian Lynch, and the New York Class.

**ANSWER:**

Defendants admit that, during their employment with Wachovia during the applicable statutory period(s), Wachovia provided rules, direction, and conditions of employment for Plaintiffs Sona K. Anand, Sezgin Unay, John Sorocenski, Jason L. Hoffman, Brandon Grzan, and Brian Lynch. Defendants deny the remaining allegations set forth in Paragraph 76 of the Complaint.

**COMPLAINT ¶77:**

During the relevant time period, Wachovia Bank, N.A. suffered or permitted Plaintiffs Sona K. Anand, Sezgin Unay, John Sorocenski, Jason L. Hoffman, Brandon Grzan, Brian Lynch and the New York Class to work.

**ANSWER:**

Defendants admit that, during their employment with Wachovia during the applicable statutory period(s), Wachovia suffered or permitted Plaintiffs Sona K. Anand, Sezgin Unay, John Sorocenski, Jason L. Hoffman, Brandon Grzan, and Brian Lynch to work, but deny that Wachovia suffered or permitted these Plaintiffs to work off the clock. Defendants deny the remaining allegations set forth in Paragraph 77 of the Complaint.

1   **COMPLAINT ¶78:**

2        During the relevant time periods, Wachovia Bank, N.A. engaged Plaintiffs Sona K. Anand,

3   Sezgin Unay, John Sorocenski, Jason L. Hoffman, Brandon Grzan, Brian Lynch and the New York

4   Class to work.

5   **ANSWER:**

6        Defendants admit that, during their employment with Wachovia during the applicable statutory

7   period(s), Wachovia engaged Plaintiffs Sona K. Anand, Sezgin Unay, John Sorocenski, Jason L.

8   Hoffman, Brandon Grzan, and Brian Lynch to work, but deny that Wells Fargo engaged these Plaintiffs

9   to work off the clock.  Defendants deny the remaining allegations set forth in Paragraph 78 of the

10  Complaint.

11  **COMPLAINT ¶79:**

12       Plaintiffs Sona K. Anand, Sezgin Unay, John Sorocenski, Jason L. Hoffman, Brandon Grzan,

13  Brian Lynch and the New York Class worked at and/or on Wachovia Bank, N.A.'s premises and used

14  the equipment and tools owned and operated by Wachovia Bank, N.A. to effectuate their daily

15  employment duties.

16  **ANSWER:**

17       Defendants admit that, during their employment with Wachovia during the applicable statutory

18  period(s), Plaintiffs Sona K. Anand, Sezgin Unay, John Sorocenski, Jason L. Hoffman, Brandon Grzan,

19  and Brian Lynch worked on Wachovia's premises and used equipment and tools owned by Wachovia.

20  Defendants deny the remaining allegations set forth in Paragraph 79 of the Complaint.

21  **COMPLAINT ¶80:**

22       Wachovia Bank, N.A. maintained employment records relating to Plaintiffs Sona K. Anand,

23  Sezgin Unay, John Sorocenski, Jason L. Hoffman, Brandon Grzan, Brian Lynch and the New York

24  Class.

25

26

27

28

DEFENDANTS' AMENDED ANSWER TO PLAINTIFFS' THIRD AMENDED COMPLAINT -
COLLECTIVE ACTION AND CLASS ACTION - CASE NO. C 14-00989 PJH

**ANSWER:**

Defendants admit that Wachovia maintained employment records related to the employment of Plaintiffs Sona K. Anand, Sezgin Unay, John Sorocenski, Jason L. Hoffman, Brandon Grzan, and Brian Lynch.  Defendants deny the remaining allegations set forth in Paragraph 80 of the Complaint.

**COMPLAINT ¶81:**

The job duties and work performance of Sona K. Anand, Sezgin Unay, John Sorocenski, Jason L. Hoffman, Brandon Grzan, Brian Lynch and the New York Class were integral to the overall function and operation of Wachovia Bank, N.A.'s business and continued operation.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 81 of the Complaint.

**COMPLAINT ¶82:**

Wachovia Bank, N.A. retained the right of control and exercised that right of control over the manner and method by which Plaintiffs Sona K. Anand, Sezgin Unay, John Sorocenski, Jason L. Hoffman, Brandon Grzan, Brian Lynch and the New York Class accomplished the results of their work.

**ANSWER:**

Defendants admit that, during their employment with Wachovia during the applicable statutory period(s), Wachovia had the authority to control and exercised some control over work of Plaintiffs Sona K. Anand, Sezgin Unay, John Sorocenski, Jason L. Hoffman, Brandon Grzan, and Brian Lynch. Defendants deny the remaining allegations set forth in Paragraph 82 of the Complaint.

**COMPLAINT ¶83:**

Wachovia Bank, N.A. determined the rate and method of payment of wages for Plaintiffs Sona K. Anand, Sezgin Unay, John Sorocenski, Jason L. Hoffman, Brandon Grzan, Brian Lynch and the New York Class.

**ANSWER:**

Defendants admit that, during their employment with Wachovia during the applicable statutory period(s), Wachovia determined the wage rate and method of payment for Plaintiffs Sona K. Anand,

Sezgin Unay, John Sorocenski, Jason L. Hoffman, Brandon Grzan, and Brian Lynch.  Defendants deny the remaining allegations set forth in Paragraph 83 of the Complaint.

**COMPLAINT ¶84:**

Wachovia Bank, N.A. determined that Plaintiff Sona K. Anand and the New York Class would not be compensated for recorded breaks of 20 minutes or less in duration.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 84 of the Complaint.

**COMPLAINT ¶85:**

Wachovia Bank, N.A. determined where, when and at which Wachovia Bank, N.A. facility or facilities Plaintiffs Sona K. Anand, Sezgin Unay, John Sorocenski, Jason L. Hoffman, Brandon Grzan, Brian Lynch and the New York Class worked.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 85 of the Complaint.

**COMPLAINT ¶86:**

Wachovia Bank, N.A. possessed the power to hire and fire Plaintiffs Sona K. Anand, Sezgin Unay, John Sorocenski, Jason L. Hoffman, Brandon Grzan, Brian Lynch and the New York Class.

**ANSWER:**

Defendants admit that Wachovia had the authority to hire and fire Plaintiffs Sona K. Anand, Sezgin Unay, John Sorocenski, Jason L. Hoffman, Brandon Grzan, and Brian Lynch.  Defendants deny the remaining allegations set forth in Paragraph 86 of the Complaint.

**COMPLAINT ¶87:**

Wachovia Bank, N.A. retained the right of control and exercised that right of control over the number of hours worked by Plaintiffs Sona K. Anand, Sezgin Unay, John Sorocenski, Jason L. Hoffman, Brandon Grzan, Brian Lynch and the New York Class, including the hours worked "off-the-clock" as alleged herein for which Plaintiffs and New York Class Members were not compensated.

36

**ANSWER:**

Defendants admit that, during their employment with Wachovia during the applicable statutory period(s), Wachovia had the authority to control and exercised some control over the number of hours worked by Plaintiffs Sona K. Anand, Sezgin Unay, John Sorocenski, Jason L. Hoffman, Brandon Grzan, and Brian Lynch.  Defendants deny the remaining allegations set forth in Paragraph 87 of the Complaint.

**FACTUAL BACKGROUND**

**COMPLAINT ¶88:**

Wells Fargo is one of the largest financial institutions in the United States with operations throughout the country, including the U.S. Territories.

**ANSWER:**

Defendants admit that Wells Fargo is one of the largest financial institutions in the United States, with operations at many locations in the country.  Plaintiffs' use of the term "operations throughout the country" is unclear and ambiguous, and Defendants therefore deny the remaining allegations set forth in Paragraph 88 of the Complaint.

**COMPLAINT ¶89:**

Wachovia Bank, N.A. merged into Wells Fargo Bank, N.A.

**ANSWER:**

Defendants admit the allegations set forth in Paragraph 89 of the Complaint.

**COMPLAINT ¶90:**

Prior to its merger with Wells Fargo Bank, N.A., Wachovia Bank, N.A. merged with First Union Bank with the resulting entity being known as Wachovia Bank, N.A.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 90 of the Complaint.

**COMPLAINT ¶91:**

First Union Bank is a predecessor bank of both Wachovia Bank, N.A. and Wells Fargo Bank, N.A.

**ANSWER:**

Plaintiffs' use of the term "predecessor bank" is unclear and ambiguous, and Defendants therefore deny the allegations set forth in Paragraph 91 of the Complaint.

**COMPLAINT ¶92:**

Defendants employ non-exempt employees throughout the United States.

**ANSWER:**

Defendants admit that Wells Fargo employs non-exempt employees in many locations in the United States. Defendants deny the remaining allegations set forth in Paragraph 92 of the Complaint.

**COMPLAINT ¶93:**

Upon information and belief, in the last 6 years Defendants have employed more than 5,000 non-exempt employees in New York.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 93 of the Complaint.

**COMPLAINT ¶94:**

All Wells Fargo & Company and Wells Fargo Bank, N.A. non-exempt employees utilize the same electronic timekeeping system nationwide known as TimeTracker irrespective of job title. Prior to TimeTracker, the Wells Fargo & Company and Wells Fargo Bank, N.A. non-exempt employees nationwide were required to record their time using an electronic timekeeping system known as WebTime.

**ANSWER:**

Defendants admit the allegations set forth in Paragraph 94 of the Complaint.

**COMPLAINT ¶95:**

Prior to 2009 and the merger, the non-exempt employees who worked for Wachovia Bank, N.A. used an electronic timekeeping system known as MyTime.

**ANSWER:**

Defendants admit the allegations set forth in Paragraph 95 of the Complaint.

**COMPLAINT ¶96:**

Wells Fargo & Company and Wells Fargo Bank, N.A. utilizes the same pay system with respect to its non-exempt employees nationwide and therefore throughout New York.

**ANSWER:**

Plaintiffs' allegation that "Wells Fargo & Company and Wells Fargo Bank, N.A. utilizes the same pay system with respect to its non-exempt employees nationwide and therefore throughout New York" is unclear and ambiguous, and Defendants therefore deny the allegations set forth in Paragraph 96 of the Complaint.

**COMPLAINT ¶97:**

The timekeeping and pay systems utilized by Wells Fargo & Company, Wells Fargo Bank, N.A., and Wachovia Bank, N.A. all required that non-exempt employees, including Plaintiffs, clock out when taking a break and clock in at the end of a break.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 97 of the Complaint.

**COMPLAINT ¶98:**

The timekeeping and pay systems of Wells Fargo & Company, Wells Fargo Bank, N.A., and Wachovia Bank, N.A. are devised such that non-exempt employees are not paid for any break during which the employee is clocked out.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 98 of the Complaint.

**COMPLAINT ¶99:**

Wells Fargo & Company, Wells Fargo Bank, N.A., and Wachovia Bank, N.A. all maintained records of the recorded, unpaid breaks taken by their non-exempt employees, including Plaintiffs and the New York Class.  These records reflect the amount of time recorded for the break for which the non-exempt employee was not paid.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 99 of the Complaint.

**COMPLAINT ¶100:**

Wells Fargo & Company's employee handbooks (called "Team Member Handbooks") from 2008 to 2014 are/were applicable to all Wells Fargo & Company and Wells Fargo Bank, N.A. non-exempt employees nationwide and such handbooks provide that uncompensated meal periods range "from 30 to 60 minutes" and that rest periods of up to 15 minutes would be paid time.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 100 of the Complaint.

**COMPLAINT ¶101:**

There was no agreement between Wells Fargo & Company and its non-exempt employees that meals periods would be less than 30 minutes.  In fact, Wells Fargo & Company represented to its non-exempt employees that meal periods would be at least 30 minutes in duration.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 101 of the Complaint.

**COMPLAINT ¶102:**

There was no agreement between Wells Fargo Bank, N.A. and its non-exempt employees that meals periods would be less than 30 minutes.  In fact, Wells Fargo Bank, N.A. represented to its non-exempt employees that meal periods would be at least 30 minutes in duration.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 102 of the Complaint.

**COMPLAINT ¶103:**

There was no agreement between Wachovia Bank, N.A. and its non-exempt employees that meals periods would be less than 30 minutes.  In fact, Wachovia Bank, N.A. represented to its non-exempt employees that meal periods would be at least 30 minutes in duration.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 103 of the Complaint.

**COMPLAINT ¶104:**

Over the last 6 years, more than 100 non-exempt employees of each of Wells Fargo & Company, Wells Fargo Bank, N.A. and Wachovia Bank, N.A. in New York had recorded breaks of 20 minutes or less in duration (in workweeks in which he/she recorded at least 40 hours of work time) for which he/she was not paid overtime compensation.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 104 of the Complaint.

**COMPLAINT ¶105:**

At all times relevant to this action Defendants Wells Fargo & Company, Wells Fargo Bank, N.A. and Wachovia Bank, N.A. have been subject to the requirements of the FLSA, California Labor Code (as well as all applicable Wage Orders and the California Business and Professions Code), California state law, NYLL, and NYCRR.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 105 of the Complaint.

**COMPLAINT ¶106:**

More than 10 years ago, Defendants were advised by an attorney that the Department of Labor's regulations provide that breaks of 20 minutes or less are compensable work time.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 106 of the Complaint.

**COMPLAINT ¶107:**

Prior to the filing of this lawsuit, Defendants Wachovia Bank, N.A., Wells Fargo Bank, N.A. and Wells Fargo & Company, knew or should have known that breaks of 20 minutes or less are considered time worked for which non-exempt employees in New York should be compensated.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 107 of the Complaint.

1

**COMPLAINT ¶108:**

2

Prior to the filing of this lawsuit, Defendants Wells Fargo & Company, Wells Fargo Bank, N.A.

3

and Wachovia Bank, N.A. knew or should have known that their non-exempt employees in New York

4

recorded breaks of 20 minutes or less in duration for which they were not paid overtime compensation

5

owed.

6

**ANSWER:**

7

Defendants deny the allegations set forth in Paragraph 108 of the Complaint.

8

**COMPLAINT ¶109:**

9

Prior to the filing of this lawsuit, Defendants Wells Fargo & Company, Wells Fargo Bank, N.A.

10

and Wachovia Bank, N.A. knew or should have known that the FLSA and New York state law require

11

that a non-exempt employee must be paid overtime compensation at one and one-half the regular rate of

12

pay after working more than 40 hours in a workweek.

13

**ANSWER:**

14

Defendants deny the allegations set forth in Paragraph 109 of the Complaint.

15

**COMPLAINT ¶110:**

16

Prior to the filing of this lawsuit, Defendants Wells Fargo Bank, N.A. and Wells Fargo &

17

Company knew or should have known that California wage and hour laws require that a non-exempt

18

employee must be: (1) paid the California minimum wage for all hours worked; (b) paid overtime

19

compensation at premium rates for all hours worked over 40 hours in a workweek or 8 hours in a work

20

day; (c) provided with a 30 minute, uninterrupted meal period completely relieved from duty, with an

21

additional meal period provided to the employee after working 10 hours in a work day; and (d) given an

22

uninterrupted rest period of 10 minutes every four hours worked or major fraction thereof.

23

**ANSWER:**

24

Defendants deny the allegations set forth in Paragraph 110 of the Complaint.

25

**COMPLAINT ¶111:**

26

Defendants Wells Fargo & Company and Wells Fargo Bank, N.A. willfully, knowingly,

27

deliberately, and in bad faith violated the provisions of the FLSA, California Labor Code (as well as all

28

DEFENDANTS' AMENDED ANSWER TO PLAINTIFFS' THIRD AMENDED COMPLAINT -
COLLECTIVE ACTION AND CLASS ACTION - CASE NO. C 14-00989 PJH

applicable Wage Orders and the California Business and Professions Code), and California state law. Defendants Wells Fargo & Company, Wells Fargo Bank, N.A. and Wachovia Bank, N.A. willfully, knowingly, deliberately and in bad faith violated the provisions of NYLL, NYCRR and New York state laws as described herein.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 111 of the Complaint.

## NEW YORK CLASS ALLEGATIONS

**COMPLAINT ¶112:**

Plaintiff Sona K. Anand ("New York Class Representative") is the class representative for the New York Class.

**ANSWER:**

Defendants admit that Plaintiff Sona K. Anand purports to bring a Rule 23 class action as a class representative of a New York class.  Defendants deny that this lawsuit is suitable for class action treatment, deny that Plaintiff Sona K. Anand "is the class representative," and deny that they violated New York law, or any state or federal laws with respect to Plaintiff Sona K. Anand or any other employees.  Defendants deny the remaining allegations set forth in Paragraph 112 of the Complaint.

**COMPLAINT ¶113:**

The New York Class is defined as follows:

All persons who at any time in the 6 years preceding the filing of this lawsuit through the date of disposition or judgment in this action who are/were employed by Defendants (one or more of them) as a non-exempt employee in the State of New York and who recorded breaks of 20 minutes or less in duration (in workweeks in which he/she recorded at least 40 hours of work time), but was not paid overtime compensation for the recorded breaks.

**ANSWER:**

Defendants admit that Plaintiff Sona K. Anand purports to bring a Rule 23 class action for alleged violations of New York law, which she purports to define in Paragraph 113 of the Complaint. Defendants deny that this lawsuit is suitable for class action treatment, and deny that they violated New

York law, or any state or federal laws with respect to Plaintiff Sona K. Anand or any other employees. Defendants deny the remaining allegations set forth in Paragraph 113 of the Complaint.

**COMPLAINT ¶114:**

During the requisite statutory period of six years under New York law, Ms. Anand recorded unpaid breaks of 20 minutes or less in duration during workweeks in which she recorded at least 40 hours of work time without receiving overtime compensation for the recorded breaks.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 114 of the Complaint.

**COMPLAINT ¶115:**

From March 3, 2008 until December 23, 2010, Ms. Anand recorded 29 breaks of 20 minutes or less, for a total of 423 minutes (over 7 hours) for which she was not paid.  All such 29 breaks were in workweeks where Ms. Anand recorded at least 40 hours of work time and should have received overtime compensation for the recorded breaks.  However, none of the recorded breaks were paid.  A detailed list of the breaks is included in Exhibit A to this Third Amended Complaint, and incorporated herein by reference.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 115 of the Complaint.

**COMPLAINT ¶116:**

Ms. Anand brings these claims for relief for violation of the NYLL and NYCRR individually and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

**ANSWER:**

Defendants admit that the Plaintiff Anand purports to bring claims as a Rule 23 class action for alleged violations of the NYLL and the NYCRR.  Defendants deny that this lawsuit is suitable for class action treatment, deny that they violated the NYLL, the NYCRR, or any state or federal laws with respect to Plaintiff Anand or any other employees, and deny the remaining allegations set forth in Paragraph 116 of the Complaint.

**COMPLAINT ¶117:**

These claims are brought as a result of the conduct, actions and malfeasance of the New York Class and Class Representative's employers, Defendants Wells Fargo & Company, Wells Fargo Bank, N.A. and Wachovia Bank, N.A. From the time of the inception of their employment until Wachovia Bank, N.A. merged with Wells Fargo Bank, N.A., Wachovia Bank N.A. implemented and enforced a corporate policy and timekeeping and pay system whereby the New York Class and Class Representative were not paid for recorded breaks of 20 minutes or less. After acquiring the Wachovia entities, Wells Fargo & Company devised, implemented and enforced corporate policies and a timekeeping and pay system whereby the New York Class and Class Representative were not paid for recorded breaks of 20 minutes or less. Wells Fargo Bank, N.A. also implemented and enforced a corporate policy and timekeeping and pay system whereby the New York Class and Class Representative were not paid for recorded breaks of 20 minutes or less.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 117 of the Complaint.

**COMPLAINT ¶118:**

*Numerosity.* The New York Class are so numerous that joinder of all members is impracticable. Upon information and belief, there are thousands of non-exempt workers who meet the definition of the New York Class. The number and identity of the proposed New York Class are readily ascertainable through inspection of Defendants' records.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 118 of the Complaint and deny that this lawsuit is suitable for class action treatment.

**COMPLAINT ¶119:**

*Commonality.* Common questions of law and fact exist as to members of the New York Class, including but not limited to the following: (a) whether Defendants Wells Fargo & Company, Wells Fargo Bank, N.A. and Wachovia Bank, N.A. failed to pay their non-exempt employees overtime wages for recorded breaks of 20 minutes or less in duration in a workweek in which the employee recorded at

least 40 hours of work time; and (b) whether Defendants Wells Fargo & Company, Wells Fargo Bank, N.A. and Wachovia Bank, N.A. violated the NYLL and NYCRR by failing to pay overtime wages for such recorded breaks.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 119 of the Complaint and deny that this lawsuit is suitable for class action treatment.

**COMPLAINT ¶120:**

*Typicality*. Ms. Anand's claims are typical of the New York Class' claims. Like the other members of the New York Class, Ms. Anand was subject to the corporate policy and practice of not receiving overtime compensation for recorded breaks of 20 minutes or less in duration in a workweek in which she recorded at least 40 hours of work time in violation of New York state laws.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 120 of the Complaint and deny that this lawsuit is suitable for class action treatment.

**COMPLAINT ¶121:**

*Predominance*. Questions of fact and law common to the New York Class predominate over any questions affecting only individual members.  Defendants' failure to pay their non-exempt employees overtime wages for recorded breaks of 20 minutes or less in duration (in a workweek in which the employee has recorded at least 40 hours of work time) as required by the NYLL and NYCRR results from generally applicable policies or practices and does not depend on the personal circumstances of class members.  Thus, Ms. Anand's experiences are typical of the experiences of the New York Class because they sustained damages including non-payment of overtime wages for such recorded breaks of 20 minutes or less in duration as a result of the common policies and practices of Wells Fargo & Company, Wells Fargo Bank, N.A. and Wachovia Bank, N.A. as described herein.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 121 of the Complaint and deny that this lawsuit is suitable for class action treatment.

**COMPLAINT ¶122:**

*Adequacy of Representation*. Plaintiff Sona K. Anand will fairly and adequately protect the interests of the New York Class and has retained counsel experienced in pursuing complex employment matters and class action/multi-party litigation who will adequately, competently and vigorously represent the interests of the New York Class.  Ms. Anand's claims are not adverse to or in conflict with the claims of the New York Class.

**ANSWER:**

Defendants deny the allegations set forth in deny the allegations set forth in Paragraph 122 of the Complaint and deny that this lawsuit is suitable for class action treatment.

**COMPLAINT ¶123:**

*Superiority*. Class action treatment is superior to other available methods for the fair and efficient adjudication of the controversy alleged herein. Treating this as a class action will permit a large number of persons to prosecute their common claims in a single forum simultaneously, efficiently and without the duplication of effort and expenses that numerous individual actions would entail.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 123 of the Complaint and deny that this lawsuit is suitable for class action treatment.

### ALLEGATIONS RELATING TO EACH SPECIFIC PLAINTIFF

**COMPLAINT ¶124:**

Most workweeks, during the applicable federal and state statutory periods, Plaintiffs worked well over 40 hours but were not paid for all overtime hours worked.   Plaintiffs were therefore not compensated for all hours worked in excess of 40 hours in a workweek.  As to each Plaintiff specifically (in alphabetical order):

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 124 of the Complaint.

*Plaintiff Sona K. Anand*

**COMPLAINT ¶125:**

Plaintiff Sona K. Anand was employed as a financial specialist/personal banker (a non-exempt position). During the relevant time periods, Ms. Anand worked at the Park Ridge bank branch in New Jersey from around July 2011 to September 2011 and at the Spring Valley branch in New York from around 2004 to June 2011.

**ANSWER:**

Defendants admit that Wachovia employed Plaintiff Sona K. Anand as a Financial Specialist during part of her employment with Wachovia. Defendants deny the remaining allegations set forth in Paragraph 125 of the Complaint.

**COMPLAINT ¶126:**

As a financial specialist/personal banker, Ms. Anand was responsible for, among other things: (1) performing opening and closing duties at the bank branch; (2) servicing customers' needs by opening and assisting with savings accounts, checking accounts, retirement accounts, and facilitating the applications for loans, credit cards, and mortgages; (3) providing customer service in the branch; (4) meeting sales goals; (5) marketing the bank's products and services; (6) greeting customers; and (7) verifying the existence of businesses to open business accounts.

**ANSWER:**

Defendants admit that Plaintiff Anand's job duties during part or all of her employment with Wachovia and Wells Fargo included but were not limited to servicing customers' needs by opening and assisting with savings accounts, checking accounts, retirement accounts, and facilitating the applications for loans, credit cards, and mortgages; providing customer service in the branch; and selling the bank's products and services. Defendants deny the remaining allegations set forth in Paragraph 126 of the Complaint.

**COMPLAINT ¶127:**

Ms. Anand typically worked six days a week, Monday through Saturday, generally arriving each day at the bank at 8:00 a.m. On Saturdays, Ms. Anand would usually arrive to work at 8:30 a.m. Twice

during the workweek, however, she would usually conduct a site inspection of businesses that opened new bank accounts before arriving to the bank, and on those days, Ms. Anand would arrive to the businesses at 7:30 a.m. Ms. Anand would make such inspections to verify the existence and authenticity of the business that had opened an account.  Before the branch opened to the public at 9:00 a.m. (Monday through Friday), Ms. Anand was required to perform opening procedures, attend morning huddles, and participate in morning conference calls.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 127 of the Complaint.

**COMPLAINT ¶128:**

Most work days, Ms. Anand also was required to participate in evening conference calls from 5:00 p.m. to 6:00 p.m., and on Tuesdays (formerly on Mondays), she was further required to participate in "call nights" from 6:00 p.m. to 8:00 p.m.  On Thursdays, the branch stayed open until 6:00 p.m., and Ms. Anand therefore typically stayed at work until 7:30 p.m. Outside Tuesdays and Thursdays, Ms. Anand usually worked until 6:30 p.m. completing paperwork, preparing loan documents, assisting customers (either in person or on the phone) and performing closing activities at the end of each work day.  On some days, she would perform business site inspections at the request of her employer after leaving the bank. Ms. Anand also worked on Saturdays from 8:30 a.m. to 3:30 p.m.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 128 of the Complaint.

**COMPLAINT ¶129:**

Virtually every work day, Ms. Anand worked during her lunch break. Nonetheless, she was required to record a lunch break for which she was not paid.  The corporate policy and practice of Wells Fargo & Company, Wells Fargo Bank, N.A. and Wachovia Bank, N.A. (during the respective employment time periods described herein) required that customers be attended to and serviced in less than five minutes.   As a result, Ms. Anand was required to interrupt her lunch break to service customers' needs. For example, typically the branch would become very busy with customers coming to the bank or calling the branch during lunch time, and Ms. Anand was required to interrupt her meal

period and assist customers with their banking needs. Wells Fargo & Company, Wells Fargo Bank, N.A. and Wachovia Bank, N.A. failed to relieve Ms. Anand of all duty during her meal periods. Moreover, Wells Fargo & Company, Wells Fargo Bank, N.A. and Wachovia Bank, N.A. did not relinquish control over Ms. Anand's activities during her meal period and in fact, required her to work and service customers during her meal periods. Ms. Anand rarely, if ever, received an uninterrupted meal break of at least 30 minutes.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 129 of the Complaint.

**COMPLAINT ¶130:**

In summary, Ms. Anand regularly worked more than 40 hours each workweek without receiving overtime compensation at time and one-half her regular rate of pay for all hours worked in excess of 40 hours in a workweek. During most workweeks, Ms. Anand worked on average approximately 63 hours a week, but was not compensated for all overtime hours. Most workweeks Ms. Anand was paid for only 40 hours (or slightly more), despite the fact that Ms. Anand worked substantial hours over 40 hours for which she was not paid. There was never any workweek in which Ms. Anand received all overtime compensation owed for all overtime hours that she worked. Ms. Anand was instructed by her managers to limit the number of work hours that she recorded on her electronic timesheets, which was always less than the amount of time that she actually worked and was required to work. Throughout her employment, Ms. Anand's managers observed her performing her work and were aware of her job duties and requirements. Throughout her employment, Ms. Anand's managers were aware of the hours that she worked. Throughout her employment, under the timekeeping systems implemented and enforced by Wells Fargo & Company, Wells Fargo Bank, N.A. and Wachovia Bank, N.A., Ms. Anand's managers reviewed her weekly electronic timesheets. Therefore, Defendants Wells Fargo & Company, Wells Fargo Bank, N.A. and Wachovia Bank, N.A. knew or should have known that Ms. Anand was performing overtime work for which she was not compensated because Ms. Anand's managers observed her performing her work and instructed her to perform such work and were aware that she was not being compensated for all hours worked.

1    **ANSWER:**

2            Defendants deny the allegations set forth in Paragraph 130 of the Complaint.

3    **COMPLAINT ¶131:**

4            In most workweeks, Ms. Anand worked well in excess of 40 hours in a workweek and did not

5    receive all overtime compensation owed for such work.  By way of example only and without limitation,

6            •         during the workweek of June 15, 2008 through June 21, 2008, Ms. Anand was paid for

7    only 41.5 hours for the week, but worked well in excess that number of hours (approximately 63 hours)

8    without receiving all overtime compensation owed;

9            •         during the workweek of April 17, 2011 through April 23, 2011, Ms. Anand was paid for

10   only 40 hours for the week and received no overtime compensation, but worked well in excess that

11   number of hours (approximately 63 hours) without receiving all overtime compensation owed;

12           •         during the workweek of June 5, 2011 through June 11, 2011, Ms. Anand was paid for

13   only 40 hours for the week and received no overtime compensation, but worked well in excess that

14   number of hours (approximately 63 hours) without receiving all overtime compensation owed; and

15           •         during the workweek of July 24, 2011 through July 30, 2011, Ms. Anand was paid for

16   only 40 hours for the week and received no overtime compensation, but worked well in excess that

17   number of hours (approximately 63 hours) without receiving all overtime compensation owed.

18   **ANSWER:**

19           Defendants deny the allegations set forth in Paragraph 131 of the Complaint.

20   **COMPLAINT ¶132:**

21           All of the work described above, including the overtime hours that were worked, but unpaid,

22   were at the request and direction of, and with the full knowledge of her employers Defendants Wells

23   Fargo & Company, Wells Fargo Bank, N.A. and Wachovia Bank, N.A. (during the respective

24   employment time periods described herein), and Ms. Anand was therefore suffered or permitted to work

25   hours in excess of 40 hours in a workweek for which she was not paid all overtime compensation owed

26   during numerous workweeks within the applicable federal statutory period (3 years) and state statutory

27   period (6 years).

28

DEFENDANTS' AMENDED ANSWER TO PLAINTIFFS' THIRD AMENDED COMPLAINT -
COLLECTIVE ACTION AND CLASS ACTION - CASE NO. C 14-00989 PJH

1  **ANSWER:**

2         Defendants deny the allegations set forth in Paragraph 132 of the Complaint.

3  ***Plaintiff Anthony Austin***

4  **COMPLAINT ¶133:**

5         Plaintiff Anthony Austin worked as a customer service representative (a non-exempt position) in

6  Wells Fargo's Access Online Department in St. Louis, Missouri.  As a customer service representative,

7  Mr. Austin was responsible for servicing customer phone calls relating to inquiries concerning the

8  online portals of Wells Fargo & Company and Wells Fargo Bank, N.A., including the Wells Fargo

9  website and customer online banking. Mr. Austin's duties included handling hundreds of customer calls

10  per day while maintaining a high level of customer satisfaction.

11  **ANSWER:**

12         Defendants admit that Plaintiff Anthony Austin worked as a customer service representative in

13  St. Louis, Missouri.  Defendants deny the remaining allegations set forth in Paragraph 133 of the

14  Complaint.

15  **COMPLAINT ¶134:**

16         Mr. Austin typically arrived at work 20 minutes before his scheduled shift as he was required to

17  be ready to start taking calls by his scheduled time. Mr. Austin spent 20 minutes "unlocking" his

18  computer, checking morning e-mails and opening and loading approximately seven software programs

19  that he used to perform his work. Mr. Austin likewise stayed 20 minutes after his shift completing calls,

20  inputting notes from his day's calls, checking close-out emails and logging off the various

21  aforementioned software programs. Mr. Austin worked five days a week, Monday through Friday, and

22  was scheduled to work eight hour days. Each day, however, he arrived to work 20 minutes before his

23  scheduled shift and stayed at least 20 minutes after his scheduled shift and was not paid for this pre-shift

24  and post-shift work. Nonetheless, such pre-shift and post-shift work was integral and indispensable to

25  Mr. Austin's performance of his job duties in handling customer inquiries and resolving customer

26  service issues.

27

28

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 134 of the Complaint.

**COMPLAINT ¶135:**

In summary, on most workweeks, Mr. Austin worked on average approximately 43.5 hours a week, but was only compensated for his scheduled shift hours, though having worked additional unpaid overtime hours at the request of and with the full knowledge of Wells Fargo Bank, N.A. and Wells Fargo & Company.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 135 of the Complaint.

**COMPLAINT ¶136:**

In summary, Mr. Austin regularly worked more than 40 hours each workweek without receiving overtime compensation at time and one-half his regular rate of pay for all hours worked in excess of 40 hours in a workweek.  During most workweeks, Mr. Austin worked on average approximately 43.5 hours a week, but was not compensated for all overtime hours. Most workweeks Wells Fargo Bank, N.A. and Wells Fargo & Company compensated Mr. Austin for only 40 hours (or slightly more), despite the fact that Mr. Austin worked significant hours over 40 hours for which he was not paid.  There was never any workweek in which Mr. Austin received all overtime compensation owed for all overtime hours that he worked.  Mr. Austin was instructed by his managers to limit the number of work hours that he recorded on his electronic timesheets, which was always less than the amount of time that he actually worked and was required to work.  Mr. Austin's managers observed him performing his work and were aware of his job duties and requirements.  Mr. Austin's managers were aware of the hours that he worked.  Mr. Austin's managers reviewed his weekly electronic timesheets in accordance with the timekeeping system implemented by Wells Fargo Bank, N.A. and Wells Fargo & Company.  Therefore, Defendants Wells Fargo Bank, N.A. and Wells Fargo & Company knew or should have known that Mr. Austin was performing overtime work for which he was not compensated because Mr. Austin's managers observed him performing his work and instructed him to perform such work and were aware that he was not being compensated for all hours worked.

1  **ANSWER:**

2      Defendants deny the allegations set forth in Paragraph 136 of the Complaint.

3  **COMPLAINT ¶137:**

4      In most workweeks, Mr. Austin worked in excess of 40 hours in a workweek and did not receive

5  all overtime compensation owed for such work.  By way of example only and without limitation,

6      •      during the workweek of July 24, 2011 to July 30, 2011, Mr. Austin was paid for only 40

7  hours for the week and received no overtime compensation, but worked in excess that number of hours

8  (approximately 43.5 hours) without receiving all overtime compensation owed;

9      •      during the workweek of September 25, 2011 through October 1, 2011, Mr. Austin was

10  paid for only 40 hours for the week and received no overtime compensation, but worked in excess that

11  number of hours (approximately 43.5 hours) without receiving all overtime compensation owed; and

12      •      during the workweek of October 2, 2011 through October 8, 2011, Mr. Austin was paid

13  for only 40 hours for the week and received no overtime compensation, but worked in excess that

14  number of hours (approximately 43.5 hours) without receiving all overtime compensation owed.

15  **ANSWER:**

16      Defendants deny the allegations set forth in Paragraph 137 of the Complaint.

17  **COMPLAINT ¶138:**

18      All of the work described above, including the overtime hours that were worked, but unpaid,

19  were at the request and direction of, and with the full knowledge of Defendants Wells Fargo Bank, N.A.

20  and Wells Fargo & Company, and Mr. Austin was therefore suffered or permitted to work hours in

21  excess of 40 hours in a workweek for which he was not paid overtime compensation owed during

22  numerous workweeks within the three years preceding the date on which he filed his notice of consent.

23  **ANSWER:**

24      Defendants deny the allegations set forth in Paragraph 138 of the Complaint.

25

26

27

28

DEFENDANTS' AMENDED ANSWER TO PLAINTIFFS' THIRD AMENDED COMPLAINT -
COLLECTIVE ACTION AND CLASS ACTION - CASE NO. C 14-00989 PJH

*Plaintiff Brandon Grzan*

**COMPLAINT ¶139:**

Plaintiff Brandon Grzan worked as a financial specialist/personal banker (a non-exempt position). During his employment, Mr. Grzan worked at the following eight bank branches all in New York: Cedarhurst (Long Island), Great Neck, Port Washington-Downtown, Port Washington-Up Town, Greenvale, Syosset, Huntington, and Garden City.

**ANSWER:**

Defendants admit that Plaintiff Brandon Grzan worked as a Financial Specialist/Personal Banker for Wachovia in the Cedarhurst, Port Washington, Uptown Port Washington, and Syosset branches in New York.  Defendants deny the remaining allegations set forth in Paragraph 139 of the Complaint.

**COMPLAINT ¶140:**

As a financial specialist/personal banker, Mr. Grzan was responsible for, among other things: (1) performing opening and closing duties at the bank branch; (2) servicing customers' needs by opening and assisting with savings accounts, checking accounts, retirement accounts, and facilitating the applications for loans, credit cards, and mortgages; (3) providing customer service in the branch; (4) meeting sales goals; (5) marketing the bank's products and services; (6) greeting customers; and (7) verifying the existence of businesses to open business accounts.

**ANSWER:**

Defendants admit that Plaintiff Grzan's job duties during part or all of his employment with Wachovia included but were not limited to servicing customers' needs by opening and assisting with savings accounts, checking accounts, retirement accounts, and facilitating the applications for loans, credit cards, and mortgages; providing customer service in the branch; and selling the bank's products and services.  Defendants deny the remaining allegations set forth in Paragraph 140 of the Complaint.

**COMPLAINT ¶141:**

Mr. Grzan typically worked six days a week, Monday through Saturday, customarily arriving each day at the bank at 7:30 a.m.  On Saturdays, Mr. Grzan typically arrived to work at 8:30 a.m. From May 2008 to November 2009, Mr. Grzan was required to work seven days a week, working Sundays

from 11:30 a.m. to 3:30 p.m.  If Mr. Grzan was not at his branch at 7:30 a.m., he usually was visiting businesses that opened new bank accounts to perform site inspections to verify the existence and authenticity of such businesses and would arrive to the bank at 8:00 a.m., in order to perform opening procedures, attend morning huddles, and participate in morning conference calls before the branch opened at 9:00 a.m. (Monday through Friday).

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 141 of the Complaint.

**COMPLAINT ¶142:**

Typically three times a week, Mr. Grzan participated in "call nights" from 6:00 p.m. to 8:00 p.m., with wrap-up calls held at the conclusion of each call night. On other days, Mr. Grzan generally worked until 8:00 p.m. (on Saturdays, he usually left at 3:30 p.m.) completing paperwork, setting appointments, preparing loan documents and assisting customers. Approximately once a month, Mr. Grzan would stay even later, until 9:30 p.m., attending monthly team meetings at the branch.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 142 of the Complaint.

**COMPLAINT ¶143:**

Virtually every work day, Mr. Grzan worked during his lunch break.  Nonetheless, he was required to record a lunch break for which he was not paid.  The corporate policy and practice of Wells Fargo & Company, Wells Fargo Bank, N.A. and Wachovia Bank, N.A. (during the respective employment time periods described herein) required that customers be attended to and serviced in less than five minutes.  As a result, Mr. Grzan was required to interrupt his lunch break to service customers' needs.  For example, typically the branch would become very busy with customers coming to the bank or calling the branch during lunch time, and Mr. Grzan was required to interrupt his meal period and assist customers with their banking needs.  Wells Fargo & Company, Wells Fargo Bank, N.A. and Wachovia Bank, N.A. failed to relieve Mr. Grzan of all duty during his meal periods. Moreover, Wells Fargo & Company, Wells Fargo Bank, N.A. and Wachovia Bank, N.A. did not relinquish control over Mr. Grzan's activities during his meal period and in fact, required him to work and service customers

during his meal periods.  Mr. Grzan rarely, if ever, received an uninterrupted meal break of at least 30 minutes.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 143 of the Complaint.

**COMPLAINT ¶144:**

In summary, Mr. Grzan regularly worked more than 40 hours each workweek without receiving overtime compensation at time and one-half his regular rate of pay for all hours worked in excess of 40 hours in a workweek.  During most workweeks within the relevant period, Mr. Grzan worked on average approximately 69.5 hours a week, but was not compensated for all overtime hours.  Most workweeks Mr. Grzan was paid for only 40 hours (or slightly more), despite the fact that Mr. Grzan worked substantial hours over 40 hours for which he was not paid.  There was never any workweek in which Mr. Grzan received all overtime compensation owed for all overtime hours that he worked. Mr. Grzan was instructed by his managers to limit the number of work hours that he recorded on his electronic timesheets, which was always less than the amount of time that he actually worked and was required to work. Mr. Grzan's managers observed him performing his work and were aware of his job duties and requirements.  Throughout his employment, Mr. Grzan's managers were aware of the hours that he worked.  Throughout his employment, under the timekeeping systems implemented and enforced by Wells Fargo & Company, Wells Fargo Bank, N.A. and Wachovia Bank, N.A., Mr. Grzan's managers reviewed his weekly electronic timesheets.  Therefore, Defendants Wells Fargo & Company, Wells Fargo Bank, N.A. and Wachovia Bank, N.A. knew or should have known that Mr. Grzan was performing overtime work for which he was not compensated because Mr. Grzan's managers observed him performing his work and instructed him to perform such work and were aware that he was not being compensated for all hours worked.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 144 of the Complaint.

1   **COMPLAINT ¶145:**

2       In most workweeks, Mr. Grzan worked in excess of 40 hours in a workweek and did not receive

3   all overtime compensation owed for such work.  By way of example only and without limitation,

4       •    during the workweek of August 24, 2008 through August 30, 2008, Mr. Grzan was paid

5   for only 40 hours for the week and received no overtime compensation, but worked well in excess that

6   number of hours (approximately 69.5 hours) without receiving all overtime compensation owed;

7       •    during the workweek of April 19, 2009 through April 25, 2009, Mr. Grzan was paid for

8   only 40.65 hours for the week, but worked well in excess that number of hours (approximately 69.5

9   hours) without receiving all overtime compensation owed;

10      •    during the workweek of April 26, 2009 through May 2, 2009, Mr. Grzan was paid for

11  only 40.93 hours for the week, but worked well in excess that number of hours (approximately 69.5

12  hours) without receiving all overtime compensation owed;

13      •    during the workweek of May 3, 2009 through May 9, 2009, Mr. Grzan was paid for only

14  40.95 hours for the week, but worked well in excess that number of hours (approximately 69.5 hours)

15  without receiving all overtime compensation owed;

16  **ANSWER:**

17      Defendants deny the allegations set forth in Paragraph 145 of the Complaint.

18  **COMPLAINT ¶146:**

19      All of the work described above, including the overtime hours that were worked, but unpaid,

20  were at the request and direction of, and with the full knowledge of his employers Defendants Wells

21  Fargo & Company, Wells Fargo Bank, N.A. and Wachovia Bank, N.A. (during the respective

22  employment time periods described herein) and was therefore suffered or permitted to work hours in

23  excess of 40 hours in a workweek for which he was not paid all overtime compensation owed during

24  numerous workweeks within the 6 years prior to the filing of this lawsuit.

25  **ANSWER:**

26      Defendants deny the allegations set forth in Paragraph 146 of the Complaint.

27

28

DEFENDANTS' AMENDED ANSWER TO PLAINTIFFS' THIRD AMENDED COMPLAINT -
COLLECTIVE ACTION AND CLASS ACTION - CASE NO. C 14-00989 PJH

*Plaintiff Porcelynne Hawthorne*

**COMPLAINT ¶147:**

Plaintiff Porcelynne Hawthorne worked as a teller (a non-exempt position) at a bank branch. During her employment, Ms. Hawthorne worked at the Santa Monica (California) branch from approximately February 15, 2011 to January 12, 2012 and June 25, 2012 to October 2012. Ms. Hawthorne also worked at the Pacific Palisades (California) branch from approximately October 2012 to October 1, 2013.

**ANSWER:**

Defendants admit that Plaintiff Porcelynne Hawthorne worked for Wells Fargo as a Teller at its Santa Monica and Pacific Palisades branches, and that her dates of employment were from approximately February 15, 2011 to January 12, 2012 and from approximately June 25, 2012 to October 1, 2013. Defendants deny the remaining allegations set forth in Paragraph 147 of the Complaint.

**COMPLAINT ¶148:**

As a teller, Ms. Hawthorne's primary job duties included but were not limited to: assisting customers that came to the bank's teller lines with deposits, withdrawals, money orders, cashier checks, account balance information, and other monetary transactions; providing customer service by answering questions and providing information to customers; offering checking accounts, savings accounts, and referrals to personal bankers if the customer wanted to sign up for a service or account; maintaining and balancing a cash drawer; performing opening and closing procedures at the branch; and attending branch meetings and huddles, among other things.

**ANSWER:**

Defendants admit that Plaintiff Hawthorne's job duties during part or all of her employment with Wells Fargo included but were not limited to: assisting customers that came to the bank's teller lines with deposits, withdrawals, money orders, cashier checks, account balance information, and other monetary transactions; providing customer service by answering questions and providing information to customers; and maintaining and balancing a cash drawer. Defendants deny the remaining allegations set forth in Paragraph 148 of the Complaint.

**COMPLAINT ¶149:**

Ms. Hawthorne typically worked six days a week, Monday through Saturday, arriving each day to the bank at 8:00 a.m., including on Saturdays.  Before the branch opened to the public at 9:00 a.m. (Monday through Saturday), Ms. Hawthorne was required to perform opening procedures and attend morning huddles.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 149 of the Complaint.

**COMPLAINT ¶150:**

At the end of each workday, Ms. Hawthorne was required to balance her cash drawer to make sure it was not "out of balance" before leaving for the day.  She did not start performing this balancing procedure until around 6:30 or 6:45 p.m., after all customers left the bank.  Ms. Hawthorne took anywhere from ten minutes to two hours to verify that her cash drawer was not out of balance. Thereafter, she would perform a sweep of the bank, making sure that sensitive documents (i.e., bank negotiables, customer information, cashier's checks) were placed in the vault and locked, and then performed closing procedures.  On Fridays, after performing closing activities, Ms. Hawthorne participated in team meetings at her branch and the duration of those meetings varied from fifteen minutes to an hour.  Ms. Hawthorne left for the day typically around 8:00 p.m. Monday through Friday and at 6:00 p.m. on Saturdays.

**ANSWER:**

Defendants admit that, immediately prior to the end of each workday at Wells Fargo, Plaintiff Hawthorne was required to balance her cash drawer to make sure it was not "out of balance" before leaving for the day.  Defendants deny the remaining allegations set forth in Paragraph 150 of the Complaint.

**COMPLAINT ¶151:**

Virtually every work day, Ms. Hawthorne worked during her meal break. Ms. Hawthorne almost never had an off-duty, uninterrupted 30 minute meal period.  Nonetheless, she was required to record a lunch break for which she was not paid.  The corporate policy and practice of Wells Fargo & Company

and Wells Fargo Bank, N.A. requires that customers be attended to and serviced in less than five minutes.  As a result, Ms. Hawthorne was required to interrupt her lunch break to service customers' needs. For example, the teller lines would become busy with customers coming to the bank during lunch time, and Ms. Hawthorne would be required to interrupt her meal period and assist customers in the teller line.  Wells Fargo & Company and Wells Fargo Bank, N.A. failed to relieve Ms. Hawthorne of all duty during her meal periods.  Moreover, Wells Fargo & Company and Wells Fargo Bank, N.A. did not relinquish control over Ms. Hawthorne's activities during her meal period and in fact, required her to work and service customers during her meal periods.  Likewise, Ms. Hawthorne worked on average more than 10 hours each work day, but was never given a second meal period of not less than 30 minutes.  Ms. Hawthorne did not receive the requisite statutory penalty of one (1) hour of wages when she was denied meal breaks as required by California wage and hour laws.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 151 of the Complaint.

**COMPLAINT ¶152:**

Ms. Hawthorne also was denied rest periods.  While Ms. Hawthorne worked on average 10 hours or more each work day, she was routinely denied rest breaks by Wells Fargo & Company and Wells Fargo Bank, N.A. and was never afforded three 10 minute rest breaks after working more than 10 hours in a work day.  Ms. Hawthorne did not receive the requisite statutory penalty of one (1) hour of wages when she was denied rest breaks as required by California wage and hour laws.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 152 of the Complaint.

**COMPLAINT ¶153:**

In summary, Ms. Hawthorne regularly worked more than 40 hours each workweek and more than 8 hours each work day without receiving overtime compensation at time and one-half her regular rate of pay for all overtime hours.  During most workweeks within the relevant period, Ms. Hawthorne worked on average approximately 70 hours a week and an average of 12 hours per work day (Monday through Friday) and 10 hours on Saturday, but was not compensated for all overtime hours.  Most

workweeks Wells Fargo & Company and Wells Fargo Bank, N.A. compensated Ms. Hawthorne for only 40 hours (or slightly more), despite the fact that Ms. Hawthorne worked substantial hours over 40 hours for which she was not paid.  Moreover, Wells Fargo & Company and Wells Fargo Bank, N.A. did not pay Ms. Hawthorne all overtime compensation owed when she worked more than 8 hours in a work day. There was never any workweek in which Ms. Hawthorne received all overtime compensation owed for all overtime hours that she worked.  Ms. Hawthorne was instructed by her managers to limit the number of work hours that she recorded on her electronic timesheets, which was always less than the amount of time that she actually worked and was required to work.  Ms. Hawthorne's managers observed her performing her work and were aware of her job duties and requirements.  Ms. Hawthorne's managers were aware of the hours that she worked.  In accordance with the timekeeping policies of Wells Fargo & Company and Wells Fargo Bank, N.A., Ms. Hawthorne's managers reviewed her weekly electronic timesheets.  Therefore, Wells Fargo & Company and Wells Fargo Bank, N.A. knew or should have known that Ms. Hawthorne was performing overtime work for which she was not compensated because Ms. Hawthorne's managers observed her performing her work and instructed her to perform such work and were aware that she was not being compensated for all hours worked.  Likewise, Wells Fargo & Company and Wells Fargo Bank, N.A. knew or should have known that Ms. Hawthorne was performing "off-the-clock" work for which she received no wages, not even the minimum wage.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 153 of the Complaint.

**COMPLAINT ¶154:**

In most workweeks, Ms. Hawthorne worked in excess of 40 hours in a workweek and more than 8 hours in a work day and did not receive all overtime compensation owed for such work.  Further, she did not receive minimum wages for such off-the-clock work.  By way of example only and without limitation,

• during the workweek of June 26, 2011 through July 2, 2011, Ms. Hawthorne was paid for only 39.9 hours for the week and received no overtime compensation, but worked well in excess that

number of hours (approximately 70 hours for the week and more than 10 hours each work day) without receiving all overtime compensation and minimum wages owed;

•     during the workweek of July 10, 2011 through July 16, 2011, Ms. Hawthorne was paid for only 39.5 hours for the week and received no overtime compensation, but worked well in excess that number of hours (approximately 70 hours for the week and more than 10 hours each work day) without receiving all overtime compensation and minimum wages owed; and

•     during the workweek of July 31, 2011 through August 6, 2011, Ms. Hawthorne was paid for only 40 hours for the week and received no overtime compensation, but worked well in excess that number of hours (approximately 70 hours for the week and more than 10 hours each work day) without receiving all overtime compensation and minimum wages owed.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 154 of the Complaint.

**COMPLAINT ¶155:**

All of the work described above, including the overtime hours and off-the-clock hours that were worked, but unpaid, were at the request and direction of, and with the full knowledge of Wells Fargo & Company and Wells Fargo Bank, N.A., and Ms. Hawthorne was therefore suffered or permitted to work hours for which she was not paid overtime compensation and minimum wages during numerous workweeks within the applicable federal statutory period (3 years) and state statutory period (4 years).

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 155 of the Complaint.

*Plaintiff Jason Hoffman*

**COMPLAINT ¶156:**

Plaintiff Jason Hoffman worked as a financial specialist/personal banker (a non-exempt position).  During his employment, Mr. Hoffman worked at the following four branches in New York: Katonah, Yonkers, Tuckahoe and Mamaroneck.

1   **ANSWER:**

2        Defendants admit that Plaintiff Jason Hoffman worked as a Financial Specialist/Personal Banker

3   for Wachovia and Wells Fargo in the Katonah and Yonkers branches in New York. Defendants deny

4   the remaining allegations set forth in Paragraph 156 of the Complaint.

5   **COMPLAINT ¶157:**

6        As a financial specialist/personal banker, Mr. Hoffman was responsible for, among other things:

7   (1) performing opening and closing duties at the bank branch; (2) servicing customers' needs by opening

8   and assisting with savings accounts, checking accounts, retirement accounts, and facilitating the

9   applications for loans, credit cards, and mortgages; (3) providing customer service; (4) meeting sales

10  goals; (5) marketing the bank's products and services; (6) greeting customers; and (7) verifying the

11  existence of businesses to open business accounts.

12  **ANSWER:**

13       Defendants admit that Plaintiff Hoffman's job duties during part or all of his employment with

14  Wachovia and Wells Fargo included but were not limited to servicing customers' needs by opening and

15  assisting with savings accounts, checking accounts, retirement accounts, and facilitating the applications

16  for loans, credit cards, and mortgages; providing customer service; and selling the bank's products and

17  services. Defendants deny the remaining allegations set forth in Paragraph 157 of the Complaint.

18  **COMPLAINT ¶158:**

19       Mr. Hoffman typically worked six days a week, Monday through Saturday, arriving each day at

20  the bank at 8:00 a.m., including on Saturdays. Twice during the week, however, he would perform site

21  inspections at businesses that opened new accounts before arriving to the bank, and that process

22  typically took Mr. Hoffman an average of 30 minutes. Mr. Hoffman was required to make such

23  inspections to verify the existence and authenticity of the business that had opened a new account.

24  Before the branch opened to the public at 9:00 a.m. (Monday through Friday), Mr. Hoffman was

25  required to perform opening procedures, attend morning huddles, and participate in morning conference

26  calls.

27

28

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 158 of the Complaint.

**COMPLAINT ¶159:**

In completing paperwork, setting appointments, preparing loan documents and helping clients, Mr. Hoffman typically worked until at least 6:30 p.m.  On Saturdays, Mr. Hoffman usually left work at 2:00 p.m.  Twice during the week, Mr. Hoffman also participated in "call nights" from 5:30 p.m. to 7:30 p.m., with wrap-up calls typically lasting from 7:30 p.m. to 7:45 p.m.  Mr. Hoffman also worked Saturdays from 8:00 a.m. to 2:00 p.m.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 159 of the Complaint.

**COMPLAINT ¶160:**

Virtually every work day, Mr. Hoffman worked during his lunch break.  Nonetheless, he was required to record a lunch break for which he was not paid.  The corporate policy and practice of Wells Fargo & Company, Wells Fargo Bank, N.A. and Wachovia Bank, N.A. (during the respective employment time periods described herein) required that customers be attended to and serviced in less than five minutes.  As a result, Mr. Hoffman was required to interrupt his lunch break to service customers' needs.  For example, typically the branch would become very busy with customers coming to the bank or calling the branch during lunch time, and Mr. Hoffman was required to interrupt his meal period and assist customers with their banking needs. Wells Fargo & Company, Wells Fargo Bank, N.A. and Wachovia Bank, N.A. failed to relieve Mr. Hoffman of all duty during his meal periods. Moreover, Wells Fargo & Company, Wells Fargo Bank, N.A. and Wachovia Bank, N.A. did not relinquish control over Mr. Hoffman's activities during his meal period and in fact, required him to work and service customers during his meal periods.  Mr. Hoffman rarely, if ever, received an uninterrupted meal break of at least 30 minutes.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 160 of the Complaint.

65

**COMPLAINT ¶161:**

In summary, Mr. Hoffman regularly worked more than 40 hours each workweek without receiving overtime compensation at time and one-half his regular rate of pay for all hours worked in excess of 40 hours in a workweek. During most workweeks, Mr. Hoffman worked on average approximately 62 hours a week, but was not compensated for all overtime hours. Most workweeks Mr. Hoffman was compensated for only 40 hours (or slightly more), despite the fact that he worked substantial hours over 40 hours for which he was not paid. There was never any workweek in which Mr. Hoffman received all overtime compensation owed for all overtime hours that he worked. Mr. Hoffman was instructed by his managers to limit the number of work hours that he recorded on his electronic timesheets, which was always less than the amount of time that he actually worked and was required to work. Mr. Hoffman's managers observed him performing his work and were aware of his job duties and requirements. Throughout his employment, Mr. Hoffman's managers were aware of the hours that he worked. Throughout his employment, under the timekeeping systems implemented and enforced by Wells Fargo & Company, Wells Fargo Bank, N.A. and Wachovia Bank, N.A., Mr. Hoffman's managers reviewed his weekly electronic timesheets. Therefore, Defendants Wells Fargo & Company, Wells Fargo Bank, N.A. and Wachovia Bank, N.A. knew or should have known that Mr. Hoffman was performing overtime work for which he was not compensated because Mr. Hoffman's managers observed him performing his work and instructed him to perform such work and were aware that he was not being compensated for all hours worked.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 161 of the Complaint.

**COMPLAINT ¶162:**

In most workweeks, Mr. Hoffman worked in excess of 40 hours in a workweek and did not receive all overtime compensation owed for such work. By way of example only and without limitation,

• during the workweek of August 10, 2008 through August 16, 2008, Mr. Hoffman was paid for only 40 hours for the week and received no overtime compensation, but worked well in excess that number of hours (approximately 62 hours) without receiving all overtime compensation owed;

1    •    during the workweek of January 4, 2009 through January 10, 2009, Mr. Hoffman was

2    paid for only 40 hours for the week and received no overtime compensation, but worked well in excess

3    that number of hours (approximately 62 hours) without receiving all overtime compensation owed;

4    •    during the workweek of February 1, 2009 through February 7, 2009, Mr. Hoffman was

5    paid for only 40 hours for the week and received no overtime compensation, but worked well in excess

6    that number of hours (approximately 62 hours) without receiving all overtime compensation owed; and

7    •    during the workweek of March 8, 2009 through March 14, 2009, Mr. Hoffman was paid

8    for only 40 hours for the week and received no overtime compensation, but worked well in excess that

9    number of hours (approximately 62 hours) without receiving all overtime compensation owed;

10    •    during the workweek of April 4, 2010 through April 10, 2010, Mr. Hoffman was paid for

11    only 40 hours for the week and received no overtime compensation, but worked well in excess that

12    number of hours (approximately 62 hours) without receiving all overtime compensation owed.

13    **ANSWER:**

14        Defendants deny the allegations set forth in Paragraph 162 of the Complaint.

15    **COMPLAINT ¶163:**

16        All of the work described above, including the overtime hours that were worked, but unpaid,

17    were at the request and direction of, and with the full knowledge of his employers Wells Fargo &

18    Company, Wells Fargo Bank, N.A. and Wachovia Bank, N.A. (during the respective employment time

19    periods described herein), and Mr. Hoffman was therefore suffered or permitted to work hours in excess

20    of 40 hours in a workweek for which he was not paid all overtime compensation owed during numerous

21    workweeks within the applicable state statutory period (6 years).

22    **ANSWER:**

23        Defendants deny the allegations set forth in Paragraph 163 of the Complaint.

24

25

26

27

28

*Plaintiff Brian Lynch*

**COMPLAINT ¶164:**

Plaintiff Brian Lynch worked as a financial specialist/personal banker (a non-exempt position). During his employment, Mr. Lynch worked at the following three bank branches in New York: Great Neck, Port Washington and Huntington.

**ANSWER:**

Defendants admit that Plaintiff Brian Lynch worked as a Financial Specialist/Personal Banker for Wachovia and Wells Fargo in the Great Neck and Huntingon branches in New York. Defendants deny the remaining allegations set forth in Paragraph 164 of the Complaint.

**COMPLAINT ¶165:**

As a financial specialist/personal banker, Mr. Lynch was responsible for, among other things: (1) performing opening and closing duties at the bank branch; (2) servicing customers' needs by opening and assisting with savings accounts, checking accounts, retirement accounts, and facilitating the applications for loans, credit cards, and mortgages; (3) providing customer service; (4) meeting sales goals; (5) marketing the bank's products and services; (6) greeting customers; and (7) verifying the existence of businesses to open business accounts.

**ANSWER:**

Defendants admit that Plaintiff Lynch's job duties during part or all of his employment with Wachovia and Wells Fargo included but were not limited to servicing customers' needs by opening and assisting with savings accounts, checking accounts, retirement accounts, and facilitating the applications for loans, credit cards, and mortgages; providing customer service; and selling the bank's products and services. Defendants deny the remaining allegations set forth in Paragraph 165 of the Complaint.

**COMPLAINT ¶166:**

Mr. Lynch typically worked six days a week,[2] Monday through Saturday, usually arriving each day to the bank at 8:00 a.m., including on Saturdays. Occasionally, during the week, he would visit businesses that opened new accounts to perform site inspections before arriving to the bank, and that

---

[2] Mr. Lynch recalls also working four Sundays during his employment for which he did not receive overtime pay.

process took Mr. Lynch anywhere between five minutes to one hour, depending on the location of the business.  Mr. Lynch was required to make such inspections to verify the existence and authenticity of the business that had opened an account.  Before the branch opened to the public at 9:00 a.m. (Monday through Friday), Mr. Lynch was required to perform opening procedures, attend morning huddles, and participate in morning conference calls.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 166 of the Complaint.

**COMPLAINT ¶167:**

At the end of each workday, Mr. Lynch typically participated in a "wrap-up call," led by either a district manager or regional manager, and depending on the branch's productivity that day, an unscheduled call-night would be announced.  There was an unscheduled call-night at least twice a week and, on those days, Mr. Lynch normally would not leave the branch until approximately 8:15 p.m. at the conclusion of a second wrap-up call.  On Wednesdays there were scheduled call-nights and, on those days, Mr. Lynch typically worked until 8:15 p.m.  In completing paperwork, setting appointments, preparing loan documents, helping clients and performing closing procedures, Mr. Lynch worked until 10:30 or 11:00 p.m. twice a week.  Mr. Lynch also worked three out of every four Saturdays, working from 8:00 a.m. until 4:00 p.m.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 167 of the Complaint.

**COMPLAINT ¶168:**

Virtually every work day, Mr. Lynch worked during his lunch break.  Nonetheless, he was required to record a lunch break for which he was not paid.  The corporate policy and practice of Wells Fargo & Company, Wells Fargo Bank, N.A. and Wachovia Bank, N.A. (during the respective employment time periods described herein) required that customers be attended to and serviced in less than five minutes.  As a result, Mr. Lynch was required to interrupt his lunch break to service customers' needs. For example, typically the branch would become very busy with customers coming to the bank or calling the branch during lunch time, and Mr. Lynch was required to interrupt his meal period and assist

customers with their banking needs.  Wells Fargo & Company, Wells Fargo Bank, N.A. and Wachovia Bank, N.A. failed to relieve Mr. Lynch of all duty during his meal periods.  Moreover, Wells Fargo & Company, Wells Fargo Bank, N.A. and Wachovia Bank, N.A. did not relinquish control over Mr. Lynch's activities during his meal period and in fact, required him to work and service customers during his meal periods.  Mr. Lynch rarely, if ever, received an uninterrupted meal break of at least 30 minutes.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 168 of the Complaint.

**COMPLAINT ¶169:**

In summary, Mr. Lynch regularly worked more than 40 hours each workweek without receiving overtime compensation at time and one-half his regular rate of pay for all hours worked in excess of 40 hours in a workweek.  During most workweeks, Mr. Lynch worked on average approximately 73.75 to 74.75 hours a week, but was not compensated for all overtime hours.  Most workweeks Mr. Lynch was paid for only 40 hours (or slightly more), despite the fact that Mr. Lynch worked substantial hours over 40 hours for which he was not paid.  There was never any workweek in which Mr. Lynch received all overtime compensation owed for all overtime hours that he worked.  Mr. Lynch was instructed by his managers to limit the number of work hours that he recorded on his electronic timesheets, which was always less than the amount of time that he actually worked and was required to work.  Mr. Lynch's managers observed him performing his work and were aware of his job duties and requirements. Throughout his employment, Mr. Lynch's managers were aware of the hours that he worked. Throughout his employment, under the timekeeping systems implemented and enforced by Wells Fargo & Company, Wells Fargo Bank, N.A. and Wachovia Bank, N.A., Mr. Lynch's managers reviewed his weekly electronic timesheets.  Therefore, Defendants Wells Fargo & Company, Wells Fargo Bank, N.A. and Wachovia Bank, N.A. knew or should have known that Mr. Lynch was performing overtime work for which he was not compensated because Mr. Lynch's managers observed him performing his work and instructed him to perform such work and were aware that he was not being compensated for all hours worked.

1    **ANSWER:**

2          Defendants deny the allegations set forth in Paragraph 169 of the Complaint.

3    **COMPLAINT ¶170:**

4          In most workweeks, Mr. Lynch worked in excess of 40 hours in a workweek and did not receive

5    all overtime compensation owed for such work.  By way of example only and without limitation,

6          •        during the workweek of September 14, 2008 through September 20, 2008,, Mr. Lynch

7    was paid for only 40 hours for the week and received no overtime compensation, but worked well in

8    excess that number of hours (approximately 73.75 to 74.75 hours) without receiving all overtime

9    compensation owed;

10         •        during the workweek of July 26, 2009 through August 1, 2009, Mr. Lynch was paid for

11   only 40 hours for the week and received no overtime compensation, but worked well in excess that

12   number of hours (approximately 73.75 to 74.75 hours) without receiving all overtime compensation

13   owed;

14         •        during the workweek of November 29, 2009 through December 5, 2009, Mr. Lynch was

15   paid for only 40 hours for the week and received no overtime compensation, but worked well in excess

16   that number of hours (approximately 73.75 to 74.75 hours) without receiving all overtime compensation

17   owed;

18         •        during the workweek of December 13, 2009 through December 19, 2009, Mr. Lynch was

19   paid for only 40 hours for the week and received no overtime compensation, but worked well in excess

20   that number of hours (approximately 73.75 to 74.75 hours) without receiving all overtime compensation

21   owed;

22   **ANSWER:**

23         Defendants deny the allegations set forth in Paragraph 170 of the Complaint.

24   **COMPLAINT ¶171:**

25         All of the work described above, including the overtime hours that were worked, but unpaid,

26   were at the request and direction of, and with the full knowledge of his employers Wells Fargo &

27   Company, Wells Fargo Bank, N.A. and Wachovia Bank, N.A. (during the respective employment time

28

periods described herein), and Mr. Lynch was therefore suffered or permitted to work hours in excess of 40 hours in a given workweek for which he was not paid all overtime compensation owed during numerous workweeks within the 6 years preceding the filing of this lawsuit.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 171 of the Complaint.

*Plaintiff Jason M. Otto*

**COMPLAINT ¶172:**

Plaintiff Jason M. Otto worked at the Chatsworth branch and Calabasas branch in California and held the non-exempt positions of private banker and business banker.

**ANSWER:**

Defendants admit that Plaintiff Jason M. Otto worked for Wells Fargo at its Chatsworth and Calabasas branches in California and that he held the positions of private banker and business banker, among other positions.

**COMPLAINT ¶173:**

Mr. Otto was responsible for: (1) servicing bank customers with respect to their financial needs; (2) providing customer service in the branch; (3) recommending product/solutions and financial services to meet the customer's needs; (4) opening and servicing accounts within authorized limits such as checking, savings, and credit/loan accounts; (5) referring investment opportunities; (6) opening and closing the branch; (7) meeting sales goals; and (8) cross-selling products and services to existing clients, among other things.

**ANSWER:**

Defendants admit that Plaintiff Otto's job duties in some of the positions he held at Wells Fargo included but were not limited to: servicing bank customers with respect to their financial needs; providing customer service in the branch; recommending solutions and financial services to meet the customer's needs; opening and servicing accounts within authorized limits such as checking, savings, and credit/loan accounts; referring investment opportunities; and cross-selling products and services to

existing clients, among other things.  Defendants deny the remaining allegations set forth in Paragraph 173 of the Complaint.

**COMPLAINT ¶174:**

Mr. Otto typically worked six days a week, Monday through Saturday. Monday through Friday, Mr. Otto would arrive at the bank branch at or around 8:40 a.m., and on Saturdays, Mr. Otto would arrive at the bank at approximately 8:20 a.m.  Each workday before the branch opened to the public at 9:00 a.m., Mr. Otto would attend the daily morning huddles led by his managers, complete necessary paperwork for customers, tend to client e-mails and requests, and review his appointments for the day. On Saturdays, Mr. Otto was additionally responsible for performing the dual-control procedures to properly open the bank with another Wells Fargo employee.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 174 of the Complaint.

**COMPLAINT ¶175:**

Mr. Otto typically left the branch at or around 7:00 p.m., Monday through Friday, and on Saturdays, Mr. Otto left the bank at approximately 5:00 p.m.  Mr. Otto was required to perform work after the bank closed including but not limited to conducting cold calls to customers to meet daily goals and completing paperwork from the day's business transactions.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 175 of the Complaint.

**COMPLAINT ¶176:**

Virtually every work day, Mr. Otto worked during his meal break. Mr. Otto almost never had an off-duty, uninterrupted 30 minute meal period. Nonetheless, he was required to record a lunch break for which he was not paid. The corporate policy and practice of Wells Fargo & Company and Wells Fargo Bank, N.A. requires that customers be attended to and serviced in less than five minutes.  As a result, Mr. Otto was required to interrupt his lunch break to service customers' needs.  For example, the branch would become busy with customers coming to the bank during lunch time, and Mr. Otto would be required to interrupt his meal period and assist customers in the branch.  Wells Fargo & Company and

Wells Fargo Bank, N.A. failed to relieve Mr. Otto of all duty during his meal periods.  Moreover, Wells Fargo & Company and Wells Fargo Bank, N.A. did not relinquish control over Mr. Otto's activities during his meal period and in fact, required him to work and service customers during his meal periods. Mr. Otto rarely, if ever, received an uninterrupted meal break of at least 30 minutes.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 176 of the Complaint.

**COMPLAINT ¶177:**

In summary, Mr. Otto regularly worked more than 40 hours each workweek and more than 8 hours each work day without receiving overtime compensation at time and one-half his regular rate of pay for all overtime hours.  During most workweeks within the relevant period, Mr. Otto worked on average approximately 60 hours a week, but was not compensated for all overtime hours.  Most workweeks Wells Fargo & Company and Wells Fargo Bank, N.A. compensated Mr. Otto for only 40 hours (or slightly more), despite the fact that Mr. Otto worked substantial hours over 40 hours for which he was not paid.  There was never any workweek in which Mr. Otto received all overtime compensation owed for all overtime hours that he worked.  Mr. Otto was instructed by his managers to limit the number of work hours that he recorded on his electronic timesheets, which was always less than the amount of time that he actually worked and was required to work.  Mr. Otto's managers observed him performing his work and were aware of his job duties and requirements. Throughout his employment, Mr. Otto's managers were aware of the hours that he worked. Throughout his employment, under the timekeeping systems implemented and enforced by Wells Fargo & Company and Wells Fargo Bank, N.A., Mr. Otto's managers reviewed his weekly electronic timesheets.  Therefore, Wells Fargo & Company and Wells Fargo Bank, N.A. knew or should have known that Mr. Otto was performing overtime work for which he was not compensated because Mr. Otto's managers observed him performing his work and instructed him to perform such work and were aware that he was not being compensated for all hours worked. Likewise, Wells Fargo & Company and Wells Fargo Bank, N.A. knew or should have known that Mr. Otto was performing "off-the-clock" work for which he did not receive overtime wages.

1   **ANSWER:**

2         Defendants deny the allegations set forth in Paragraph 177 of the Complaint.

3   **COMPLAINT ¶178:**

4         In most workweeks, Mr. Otto worked in excess of 40 hours in a workweek and more than 8

5   hours in a work day and did not receive all overtime compensation owed for such work.  By way of

6   example only and without limitation,

7         •      during the workweek of June 26, 2011 through July 2, 2011, Mr. Otto was paid for only

8   40 hours for the week and received no overtime compensation, but worked well in excess that number of

9   hours (approximately 60 hours for the week) without receiving all overtime compensation owed;

10        •      during the workweek of December 2, 2012 through December 8, 2012, Mr. Otto was paid

11  for only 40 hours for the week and received no overtime compensation, but worked well in excess that

12  number of hours (approximately 60 hours for the week) without receiving all overtime compensation

13  owed; and

14        •      during the workweek of January 27, 2013 through February 2, 2013, Mr. Otto was paid

15  for only 40 hours for the week and received no overtime compensation, but worked well in excess that

16  number of hours (approximately 60 hours for the week) without receiving all overtime compensation

17  owed.

18  **ANSWER:**

19        Defendants deny the allegations set forth in Paragraph 178 of the Complaint.

20  **COMPLAINT ¶179:**

21        All of the work described above, including the overtime hours and off-the-clock hours that were

22  worked, but unpaid, were at the request and direction of, and with the full knowledge of Wells Fargo &

23  Company and Wells Fargo Bank, N.A., and Mr. Otto was therefore suffered or permitted to work hours

24  for which he was not paid overtime compensation during numerous workweeks within the three years

25  prior to the date on which Mr. Otto filed his notice of consent.

26  **ANSWER:**

27        Defendants deny the allegations set forth in Paragraph 179 of the Complaint.

28

1 *Plaintiff Monique Perez*

2 **COMPLAINT ¶180:**

3     Plaintiff Monique Perez worked as a customer service sales and service representative ("CSSR")

4 (a non-exempt position) in the Chatsworth, California branch from September 4, 2012 to December 4,

5 2012.

6 **ANSWER:**

7     Defendants admit that Plaintiff Monique Perez worked for Wells Fargo as a customer service

8 sales and service representative ("CSSR") in the Chatsworth, California branch from September 4, 2012

9 to December 4, 2012.

10 **COMPLAINT ¶181:**

11     As a CSSR, Ms. Perez was responsible for a dual role as a personal banker and teller and

12 performed a wide range of services mainly including customer service functions within the branch in the

13 teller line and on the floor/platform regardless of whether in a personal banker or teller role. Ms. Perez's

14 duties additionally included, among other things: (1) handing cash transactions; (2) meeting sales goals;

15 (3) maintaining a cash drawer; (4) opening accounts and servicing accounts; (5) opening and closing the

16 bank branch; and (6) referring customers to other areas of the bank for more complex products and

17 services.

18 **ANSWER:**

19     Defendants admit that Plaintiff Perez's job duties as a CSSR during part or all of her

20 employment at Wells Fargo included but were not limited to: handing cash transactions; maintaining a

21 cash drawer; opening accounts and servicing accounts; and referring customers to other areas of the

22 bank for more complex products and services. Defendants deny the remaining allegations set forth in

23 Paragraph 181 of the Complaint.

24 **COMPLAINT ¶182:**

25     Ms. Perez worked five days a week in the bank branch, typically arriving each day to the bank at

26 8:00 a.m., including on Saturdays (when she was scheduled to work on weekends). Before the branch

27 opened to the public at 9:00 a.m., Ms. Perez was required to perform opening procedures, attend

28

1    morning huddles, and participate in morning conference calls.  Ms. Perez usually worked until 9:00 p.m.

2    on most days, completing paperwork, setting appointments, preparing loan documents, helping clients

3    and performing closing activities.  On Saturdays, she typically left at 5:30 p.m. In addition to her work

4    in the branch, on her scheduled days off, Ms. Perez also performed work "off-site," marketing at

5    restaurants like Taco Bell, Del Taco and McDonald's, among others.

6    **ANSWER:**

7         Defendants deny the allegations set forth in Paragraph 182 of the Complaint.

8    **COMPLAINT ¶183:**

9         Virtually every work day, Ms. Perez worked during her meal break. Ms. Perez almost never had

10   an off-duty, uninterrupted 30 minute meal period.  Nonetheless, she was required to record a lunch break

11   for which she was not paid.  The corporate policy and practice of Wells Fargo & Company and Wells

12   Fargo Bank, N.A. requires that customers be attended to and serviced in less than five minutes.  As a

13   result, Ms. Perez was required to interrupt her lunch break to service customers' needs.  For example,

14   the branch would become busy with customers coming to the bank during lunch time, and Ms. Perez

15   would be required to interrupt her meal period and assist customers in the teller line.  Wells Fargo &

16   Company and Wells Fargo Bank, N.A. failed to relieve Ms. Perez of all duty during her meal periods.

17   Moreover, Wells Fargo & Company and Wells Fargo Bank, N.A. did not relinquish control over Ms.

18   Perez's activities during her meal period and in fact, required her to work and service customers during

19   her meal periods.  Likewise, Ms. Perez worked on average more than 10 hours each work day, but was

20   never given a second meal period of not less than 30 minutes.  Ms. Perez did not receive the requisite

21   statutory penalty of one (1) hour of wages when she was denied meal breaks as required by California

22   wage and hour laws.

23   **ANSWER:**

24        Defendants deny the allegations set forth in Paragraph 183 of the Complaint.

25   **COMPLAINT ¶184:**

26        Ms. Perez also was denied rest periods.  While Ms. Perez worked on average more than 10 hours

27   or more each work day, Wells Fargo & Company and Wells Fargo Bank, N.A. routinely denied her rest

28

breaks and she was never afforded three 10 minute rest breaks after working more than 10 hours in a work day.  Ms. Perez rarely, if ever, was provided with a rest break, and on the rare occasions when she was provided with a rest break, her break was virtually always interrupted to return to work to service customers.  Ms. Perez did not receive the requisite statutory penalty of one (1) hour of wages when she was denied rest breaks as required by California wage and hour laws.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 184 of the Complaint.

**COMPLAINT ¶185:**

In summary, Ms. Perez regularly worked more than 40 hours each workweek and more than 8 hours each work day without receiving overtime compensation at time and one-half her regular rate of pay for all overtime hours.  During most workweeks within the relevant period, Ms. Perez worked on average approximately 65 hours a week and an average of 12 hours per work day, but was not compensated for all overtime hours. Most workweeks Wells Fargo & Company and Wells Fargo Bank, N.A. compensated Ms. Perez for only 40 hours (or slightly more), despite the fact that Ms. Perez worked substantial hours over 40 hours for which she was not paid.  Moreover, Wells Fargo did not pay Ms. Perez all overtime compensation owed when she worked more than 8 hours in a work day.  There was never any workweek in which Ms. Perez received all overtime compensation owed for all overtime hours that she worked.  Ms. Perez was instructed by her managers to limit the number of work hours that she recorded on her electronic timesheets, which was always less than the amount of time that she actually worked and was required to work.  Ms. Perez's managers observed her performing her work and were aware of her job duties and requirements.  Ms. Perez's managers were aware of the hours that she worked. In accordance with the timekeeping policies of Wells Fargo & Company and Wells Fargo Bank, N.A., Ms. Perez's managers reviewed her weekly electronic timesheets.  Therefore, Wells Fargo & Company and Wells Fargo Bank, N.A. knew or should have known that Ms. Perez was performing overtime work for which she was not compensated because Ms. Perez's managers observed her performing her work and instructed her to perform such work and were aware that she was not being compensated for all hours worked.  Likewise, Wells Fargo & Company and Wells Fargo Bank, N.A.

knew or should have known that Ms. Perez was performing "off-the-clock" work for which she received no wages, not even the minimum wage.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 185 of the Complaint.

**COMPLAINT ¶186:**

In most workweeks, Ms. Perez worked in excess of 40 hours in a workweek and more than 8 hours in a work day and did not receive all overtime compensation owed for such work.  Further, she did not receive minimum wages for such off-the-clock work.  By way of example only and without limitation,

• during the workweek of October 21, 2012 through October 27, 2012, Ms. Perez was paid for only 39 hours for the week, but worked well in excess that number of hours (approximately 65 hours for the week and 12 hours each work day) without receiving all overtime compensation and minimum wages owed;

• during the workweek of October 28, 2012 through November 3, 2012, Ms. Perez was paid for only 39.67 hours for the week, but worked well in excess that number of hours (approximately 65 hours for the week and 12 hours each work day) without receiving all overtime compensation and minimum wages owed; and

• during the workweek of November 25, 2012 through December 1, 2012, Ms. Perez was paid for only 39.75 hours for the week, but worked well in excess that number of hours (approximately 65 hours for the week and 12 hours each work day) without receiving all overtime compensation and minimum wages owed.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 186 of the Complaint.

**COMPLAINT ¶187:**

All of the work described above, including the overtime hours and off-the-clock hours that were worked, but unpaid, were at the request and direction of, and with the full knowledge of Wells Fargo & Company and Wells Fargo Bank, N.A., and Ms. Perez was therefore suffered or permitted to work hours

for which she was not paid overtime compensation and minimum wages during numerous workweeks within the applicable federal statutory period (3 years) and state statutory period (4 years).

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 187 of the Complaint.

*Plaintiff Thaxton V. Rowe, Jr.*

**COMPLAINT ¶188:**

Plaintiff Thaxton V. Rowe, Jr. worked as a teller at the Culver City (Downtown), California branch from October 25, 2011 to March 22, 2013.

**ANSWER:**

Defendants admit that Plaintiff Thaxton V. Rowe, Jr. worked for Wells Fargo as a part-time teller at the Culver City, California branch from October 25, 2011 to March 22, 2013. Defendants deny the remaining allegations set forth in Paragraph 188 of the Complaint.

**COMPLAINT ¶189:**

As a teller, Mr. Rowe's primary job duties included but were not limited to: assisting customers that came to the bank's teller lines with deposits, withdrawals, money orders, cashier checks, account balance information, and other monetary transactions; providing customer service by answering questions and providing information to customers; offering checking accounts, savings accounts, and referrals to personal bankers if the customer wanted to sign up for a service or account; maintaining and balancing a cash drawer; and performing opening and closing procedures at the branch; and attending branch meetings and huddles, among other things.

**ANSWER:**

Defendants admit that Plaintiff Rowe's job duties during part or all of his employment as a part-time teller for Wells Fargo included by were not limited to: assisting customers that came to the bank's teller lines with deposits, withdrawals, money orders, cashier checks, account balance information, and other monetary transactions; providing customer service by answering questions and providing information to customers; offering checking accounts, savings accounts, and referrals to personal

bankers if the customer wanted to sign up for a service or account; and maintaining and balancing a cash drawer.  Defendants deny the remaining allegations set forth in Paragraph 189 of the Complaint.

**COMPLAINT ¶190:**

Mr. Rowe was scheduled to work five days a week, approximately five hours each day-- from 1:30 p.m. to 6:30 p.m.[3] with either a thirty-minute or a one-hour break for lunch.  Mr. Rowe, however, worked until 7:30 p.m. on most days, attending evening huddles, balancing his cash drawer and performing closing procedures.  On Saturdays, and on days during the week that Mr. Rowe was scheduled to open the branch, he arrived 30 minutes to an hour before his scheduled time to perform opening procedures, attend morning huddles, and participate in morning conference calls.

**ANSWER:**

Defendants admit that Plaintiff Rowe typically was scheduled to work approximately 25 hours per week at Wells Fargo.  Defendants deny the remaining allegations set forth in Paragraph 190 of the Complaint.

**COMPLAINT ¶191:**

Moreover, Wells Fargo & Company and Wells Fargo Bank, N.A. required Mr. Rowe to work during his lunch break servicing bank customers but he was not paid for that time.  Wells Fargo & Company and Wells Fargo Bank, N.A. also denied Mr. Rowe rest breaks after mid-2012.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 191 of the Complaint.

**COMPLAINT ¶192:**

In summary, during most workweeks, Mr. Rowe performed in excess of five hours of off-the-clock work at the request of and with the full knowledge of Wells Fargo & Company and Wells Fargo Bank, N.A. By way of example only and without limitation,

---

[3] Generally, if Mr. Rowe was scheduled to work on Mondays through Fridays, he was scheduled to work from 1:30 p.m. to 6:30 p.m. If Mr. Rowe was scheduled to work on Saturdays, he was scheduled to work from 9:30 a.m. to 4:30 p.m.

• during the workweek of December 18, 2011 through December 24, 2011, Mr. Rowe was paid for only 42.15 hours for the week, but worked well in excess that number of hours without receiving all overtime compensation and minimum wages owed; and

• during the workweek of January 1, 2012 through January 7, 2012, Mr. Rowe was paid for only 43 hours for the week, but worked well in excess that number of hours without receiving all overtime compensation and minimum wages owed.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 192 of the Complaint.

**COMPLAINT ¶193:**

All of the work described above, including the overtime hours and off-the-clock hours that were worked, but unpaid, were at the request and direction of, and with the full knowledge of Wells Fargo & Company and Wells Fargo Bank, N.A., and Mr. Rowe was therefore suffered or permitted to work hours for which he was not paid overtime compensation and minimum wages during numerous workweeks within the applicable federal statutory period (3 years) and state statutory period (4 years).

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 193 of the Complaint.

***Plaintiff Karla P. Salazar***

**COMPLAINT ¶194:**

Plaintiff Karla P. Salazar held various non-exempt positions, including as a teller and personal banker in the Boca Raton, Florida branch.

**ANSWER:**

Defendants admit that Plaintiff Karla P. Salazar held various positions at Wachovia and Wells Fargo in Boca Raton, Florida, including the positions of teller and personal banker.  Defendants deny the remaining allegations set forth in Paragraph 194 of the Complaint.

**COMPLAINT ¶195:**

As a teller, Ms. Salazar's primary job duties included but were not limited to: assisting customers that came to the bank's teller lines with deposits, withdrawals, money orders, cashier checks, account

balance information, and other monetary transactions; providing customer service by answering questions and providing information to customers; offering checking accounts, savings accounts, and referrals to personal bankers if the customer wanted to sign up for a service or account; maintaining and balancing a cash drawer; and performing opening and closing procedures at the branch; and attending branch meetings and huddles, among other things.  As a personal banker, Ms. Salazar was responsible for, among other things: (1) performing opening and closing duties at the bank branch; (2) servicing customers' needs by opening and assisting with savings accounts, checking accounts, retirement accounts, and facilitating the applications for loans, credit cards, and mortgages; (3) providing customer service in the branch; (4) meeting sales goals; (5) marketing the bank's products and services; and (6) greeting customers.

**ANSWER:**

Defendants admit that Plaintiff Salazar's job duties during part or all of her employment as a teller at Wells Fargo included but were not limited to assisting customers that came to the bank's teller lines with deposits, withdrawals, money orders, cashier checks, account balance information, and other monetary transactions; providing customer service by answering questions and providing information to customers; offering checking accounts, savings accounts, and referrals to personal bankers if the customer wanted to sign up for a service or account; and maintaining and balancing a cash drawer. Defendants admit that Plaintiff Salazar's job duties during part or all of her employment as a personal banker at Wells Fargo included but were not limited to servicing customers' needs by opening and assisting with savings accounts, checking accounts, retirement accounts, and facilitating the applications for loans, credit cards, and mortgages; providing customer service in the branch; and selling the bank's products and services.  Defendants deny the remaining allegations set forth in Paragraph 195 of the Complaint.

**COMPLAINT ¶196:**

Ms. Salazar worked five days a week. Two or three times a week she would arrive to work at 7:30 a.m., and on the other days at 8:00 a.m.[4]  Before the branch opened at 9:00 a.m., Ms. Salazar was

---

[4] Approximately once a week, Ms. Salazar arrived to the bank after the bank lobby opened at 9:00 a.m.

required to perform opening procedures (on those days she arrived to the bank at 7:30 a.m.), attend morning huddles, and participate in morning conference calls. Ms. Salazar typically worked until 7:00 p.m. completing paperwork, setting appointments, helping clients, balancing her cash drawers and performing closing activities.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 196 of the Complaint.

**COMPLAINT ¶197:**

Virtually every work day, Ms. Salazar worked during her uncompensated meal break. Ms. Salazar almost never had an off-duty, uninterrupted 30 minute meal period. Nonetheless, she was required to record a lunch break for which she was not paid. The corporate policy and practice of Wells Fargo & Company and Wells Fargo Bank, N.A. requires that bank customers be attended to and serviced in less than five minutes. As a result, Ms. Salazar was required to interrupt her lunch break to service customers' needs. For example, the branch would become busy with customers coming to the bank during lunch time, and Ms. Salazar would be required to interrupt her meal period and assist customers in the branch. Wells Fargo & Company and Wells Fargo Bank, N.A. failed to relieve Ms. Salazar of all duty during her meal periods. Moreover, Wells Fargo & Company and Wells Fargo Bank, N.A. did not relinquish control over Ms. Salazar's activities during her meal period and in fact, required her to work and service customers during her meal periods. Ms. Salazar rarely, if ever, received an uninterrupted meal break of at least 30 minutes.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 197 of the Complaint.

**COMPLAINT ¶198:**

In summary, Ms. Salazar regularly worked more than 40 hours each workweek without receiving overtime compensation at time and one-half her regular rate of pay for all hours worked in excess of 40 hours in a workweek. During most workweeks, Ms. Salazar worked on average approximately 56 hours a week, but was not compensated for all overtime hours. Most workweeks Ms. Salazar was paid for only 40 hours (or slightly more), despite the fact that Ms. Salazar worked substantial hours over 40

hours for which she was not paid. There was never any workweek in which Ms. Salazar received all overtime compensation owed for all overtime hours that she worked. Ms. Salazar was instructed by her managers to limit the number of work hours that she recorded on her electronic timesheets, which was always less than the amount of time that she actually worked and was required to work. Ms. Salazar's managers observed her performing her work and were aware of her job duties and requirements. Throughout her employment, Ms. Salazar's managers were aware of the hours that she worked. Throughout her employment, under the timekeeping systems implemented and enforced by Wells Fargo & Company and Wells Fargo Bank, N.A., Ms. Salazar's managers reviewed her weekly electronic timesheets. Therefore, Wells Fargo & Company and Wells Fargo Bank, N.A. knew or should have known that Ms. Salazar was performing overtime work for which she was not compensated because Ms. Salazar's managers observed her performing her work and instructed her to perform such work and were aware that she was not being compensated for all hours worked. Likewise, Wells Fargo & Company and Wells Fargo Bank, N.A. knew or should have known that Ms. Salazar was performing "off-the-clock" work for which she did not receive overtime wages.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 198 of the Complaint.

**COMPLAINT ¶199:**

In most workweeks, Ms. Salazar worked well in excess of 40 hours in a workweek and did not receive all overtime compensation owed for such work. By way of example only and without limitation,

• during the workweek of March 6, 2011 through March 12, 2011, Ms. Salazar was paid for only 40 hours for the week and received no overtime compensation, but worked well in excess that number of hours (approximately 56 hours) without receiving all overtime compensation owed;

• during the workweek of March 20, 2011 through March 26, 2011, Ms. Salazar was paid for only 40 hours for the week and received no overtime compensation, but worked well in excess that number of hours (approximately 56 hours) without receiving all overtime compensation owed; and

1          •       during the workweek of March 27, 2011 through April 2, 2011, Ms. Salazar was paid for

2   only 40 hours for the week and received no overtime compensation, but worked well in excess that

3   number of hours (approximately 56 hours) without receiving all overtime compensation owed.

4   **ANSWER:**

5          Defendants deny the allegations set forth in Paragraph 199 of the Complaint.

6   **COMPLAINT ¶200:**

7          All of the work described above, including the overtime hours that were worked, but unpaid,

8   were at the request and direction of, and with the full knowledge of Wells Fargo & Company and Wells

9   Fargo Bank, N.A., and Ms. Salazar was therefore suffered or permitted to work hours in excess of 40

10  hours in a workweek for which she was not paid all overtime compensation owed during numerous

11  workweeks within the 3 years preceding the date on which she filed her notice of consent.

12  **ANSWER:**

13         Defendants deny the allegations set forth in Paragraph 200 of the Complaint.

14  ***Plaintiff John Sorocenski***

15  **COMPLAINT ¶201:**

16         Plaintiff John Sorocenski worked as a financial specialist/personal banker (a non-exempt

17  position) in the Huntington, New York bank branch.

18  **ANSWER:**

19         Defendants admit that Plaintiff John Sorocenski worked for Wachovia and Wells Fargo in the

20  Huntington, New York bank branch, and that his positions included financial specialist and personal

21  banker.  Defendants deny the remaining allegations set forth in Paragraph 201 of the Complaint.

22  **COMPLAINT ¶202:**

23         As a financial specialist/personal banker, Mr. Sorocenski was responsible for, among other

24  things: (1) performing opening and closing duties at the bank branch; (2) servicing customers' needs by

25  opening and assisting with savings accounts, checking accounts, retirement accounts, and facilitating the

26  applications for loans, credit cards, and mortgages; (3) providing customer service in the branch; (4)

27

28

DEFENDANTS' AMENDED ANSWER TO PLAINTIFFS' THIRD AMENDED COMPLAINT -
COLLECTIVE ACTION AND CLASS ACTION - CASE NO. C 14-00989 PJH

meeting sales goals; (5) marketing the bank's products and services; (6) greeting customers; and (7) verifying the existence of businesses to open business accounts.

**ANSWER:**

Defendants admit that Plaintiff Sorocenski's job duties during part or all of his employment as a financial specialist and personal banker at Wachovia and Wells Fargo included, but were not limited to: servicing customers' needs by opening and assisting with savings accounts, checking accounts, retirement accounts, and facilitating the applications for loans, credit cards, and mortgages; providing customer service in the branch; and selling the bank's products and services. Defendants deny the remaining allegations set forth in Paragraph 202 of the Complaint.

**COMPLAINT ¶203:**

Mr. Sorocenski worked six days a week, Monday through Saturday,[5] arriving each day to the bank at 7:45 a.m. Before the branch opened to the public at 9:00 a.m., Mr. Sorocenski was required to perform opening procedures, attend morning huddles, and participate in morning conference calls.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 203 of the Complaint.

**COMPLAINT ¶204:**

At the end of each workday, at around 6:30 p.m., Mr. Sorocenski participated in a "wrap-up call" (also known as a "cool-down call"), led by either a district manager or regional manager, and depending on the branch's productivity that day, an unscheduled call-night would be announced, which occurred frequently. In completing paperwork, setting appointments, preparing loan documents, helping clients, performing closing procedures and participating in call-nights, Mr. Sorocenski worked until 8:00 p.m., Monday through Friday, and worked until at least 3:00 p.m. on Saturdays. After leaving the branch for the day, however, Mr. Sorocenski would also visit businesses that opened new accounts. In the months of January through March, Mr. Sorocenski typically worked until 8:30/9:00 p.m. participating in the "Jump into January" campaign, where the expectation during those months was for Personal Bankers to over-exceed their goals so as to set the tone for the rest of the year.

---

[5] Most months, Mr. Sorocenski took only one Saturday off.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 204 of the Complaint.

**COMPLAINT ¶205:**

Virtually every work day, Mr. Sorocenski worked during his lunch break. Nonetheless, he was required to record a lunch break for which he was not paid. The corporate policy and practice of Wells Fargo & Company, Wells Fargo Bank, N.A. and Wachovia Bank, N.A. (during the respective employment time periods described herein) required that customers be attended to and serviced in less than five minutes. As a result, Mr. Sorocenski was required to interrupt his lunch break to service customers' needs. For example, typically the branch would become very busy with customers coming to the bank or calling the branch during lunch time, and Mr. Sorocenski was required to interrupt his meal period and assist customers with their banking needs. Wells Fargo & Company, Wells Fargo Bank, N.A. and Wachovia Bank, N.A. failed to relieve Mr. Sorocenski of all duty during his meal periods. Moreover, Wells Fargo & Company, Wells Fargo Bank, N.A. and Wachovia Bank, N.A. did not relinquish control over Mr. Sorocenski's activities during his meal period and in fact, required him to work and service customers during his meal periods. Mr. Sorocenski rarely, if ever, received an uninterrupted meal break of at least 30 minutes.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 205 of the Complaint.

**COMPLAINT ¶206:**

In summary, Mr. Sorocenski regularly worked more than 40 hours each workweek without receiving overtime compensation at time and one-half his regular rate of pay for all hours worked in excess of 40 hours in a workweek. During most workweeks, Mr. Sorocenski worked on average approximately 68.5 hours a week, but was not compensated for all overtime hours. Most workweeks Mr. Sorocenski was paid for only 40 hours (or slightly more), despite the fact that Mr. Sorocenski worked substantial hours over 40 hours for which he was not paid. There was never any workweek in which Mr. Sorocenski received all overtime compensation owed for all overtime hours that he worked. Mr. Sorocenski was instructed by his managers to limit the number of work hours that he recorded on

his electronic timesheets, which was always less than the amount of time that he actually worked and was required to work. Mr. Sorocenski's managers observed him performing his work and were aware of his job duties and requirements. Throughout his employment, Mr. Sorocenski's managers were aware of the hours that he worked. Throughout his employment, under the timekeeping systems implemented and enforced by Wells Fargo & Company, Wells Fargo Bank, N.A. and Wachovia Bank, N.A., Mr. Sorocenski's managers reviewed his weekly electronic timesheets. Therefore, Defendants Wells Fargo & Company, Wells Fargo Bank, N.A. and Wachovia Bank, N.A. knew or should have known that Mr. Sorocenski was performing overtime work for which he was not compensated because Mr. Sorocenski's managers observed him performing his work and instructed him to perform such work and were aware that he was not being compensated for all hours worked.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 206 of the Complaint.

**COMPLAINT ¶207:**

In most workweeks, Mr. Sorocenski worked in excess of 40 hours in a workweek and did not receive all overtime compensation owed for such work. By way of example only and without limitation,

• during the workweek of November 2, 2008 through November 8, 2008, Mr. Sorocenski was paid for only 40 hours for the week and received no overtime compensation, but worked well in excess that number of hours (approximately 68.5 hours) without receiving all overtime compensation owed;

• during the workweek of November 30, 2008 through December 6, 2008, Mr. Sorocenski was paid for only 40 hours for the week and received no overtime compensation, but worked well in excess that number of hours (approximately 68.5 hours) without receiving all overtime compensation owed;

• during the workweek of March 20, 2011 through March 26, 2011, Mr. Sorocenski was paid for only 40 hours for the week and received no overtime compensation, but worked well in excess that number of hours (approximately 68.5 hours) without receiving all overtime compensation owed;

1         •     during the workweek of April 3, 2011 to April 9, 2011, Mr. Sorocenski was paid for only

2 40 hours for the week and received no overtime compensation, but worked well in excess that number of

3 hours (approximately 68.5 hours) without receiving all overtime compensation owed; and

4         •     during the workweek of April 17, 2011 to April 23, 2011, Mr. Sorocenski was paid for

5 only 40 hours for the week and received no overtime compensation, but worked well in excess that

6 number of hours (approximately 68.5 hours) without receiving all overtime compensation owed.

7 **ANSWER:**

8     Defendants deny the allegations set forth in Paragraph 207 of the Complaint.

9 **COMPLAINT ¶208:**

10     All of the work described above, including the overtime hours that were worked, but unpaid,

11 were at the request and direction of, and with the full knowledge his employers Wells Fargo &

12 Company, Wells Fargo Bank, N.A. and Wachovia Bank, N.A. (during the respective employment time

13 periods defined herein) and Mr. Sorocenski was therefore suffered or permitted to work hours in excess

14 of 40 hours in a workweek for which he was not paid all overtime compensation owed during numerous

15 workweeks within the applicable federal statutory period (3 years) and state statutory period (6 years).

16 **ANSWER:**

17     Defendants deny the allegations set forth in Paragraph 208 of the Complaint.

18 ***Plaintiff Anthony Sosa***

19 **COMPLAINT ¶209:**

20     Plaintiff Anthony Sosa worked as a teller, customer service representative ("CSSR"), and

21 personal banker (all non-exempt positions) at the Santa Monica branch in California.

22 **ANSWER:**

23     Defendants admit that Plaintiff Anthony Sosa worked for Wells Fargo as a teller, CSSR, and

24 personal banker at the Santa Monica branch in California.  Defendants deny the remaining allegations

25 set forth in Paragraph 209 of the Complaint.

26

27

28

**COMPLAINT ¶210:**

Mr. Sosa's primary job duties as a teller were: assisting customers that came to the bank's teller lines with deposits, withdrawals, money orders, cashier checks, account balance information, and other monetary transactions; providing customer service by answering questions and providing information to customers; offering checking accounts, savings accounts, and referrals to personal bankers if the customer wanted to sign up for a service or account; maintaining and balancing a cash drawer; and performing opening and closing procedures at the branch; and attending branch meetings and huddles, among other things.   As a personal banker, Mr. Sosa was responsible for, among other things: (1) performing opening and closing duties at the bank branch; (2) servicing customers' needs by opening and assisting with savings accounts, checking accounts, retirement accounts, and facilitating the applications for loans, credit cards, and mortgages; (3) providing customer service in the branch; (4) meeting sales goals; and (5) greeting customers.   As a CSSR, Mr. Sosa performed the job duties of both a teller and personal banker.

**ANSWER:**

Defendants admit that Plaintiff Sosa's job duties during part or all of his employment as a teller at Wells Fargo included but were not limited to: assisting customers that came to the bank's teller lines with deposits, withdrawals, money orders, cashier checks, account balance information, and other monetary transactions; providing customer service by answering questions and providing information to customers; offering checking accounts, savings accounts, and referrals to personal bankers if the customer wanted to sign up for a service or account; and maintaining and balancing a cash drawer. Defendants admit that Plaintiff Sosa's job duties during part or all of his employment as a personal banker at Wells Fargo included but were not limited to: servicing customers' needs by opening and assisting with savings accounts, checking accounts, retirement accounts, and facilitating the applications for loans, credit cards, and mortgages; and providing customer service in the branch. Defendants admit that Plaintiff Sosa's job duties during part or all of his employment as a CSSR at Wells Fargo included some of the job duties of the teller and personal banker positions. Defendants deny the remaining allegations set forth in Paragraph 210 of the Complaint.

1   **COMPLAINT ¶211:**

2       Mr. Sosa generally worked six days a week, Monday through Saturday. Generally, during any

3   given Monday through Friday, Mr. Sosa would open the bank during two workdays and would arrive at

4   the Santa Monica branch at approximately 7:55 a.m. Before the bank branch would open to the public,

5   Mr. Sosa was required to refill the branch's four ATMs by gathering money from the bank vault and

6   placing it into the ATM machines. On the two days when Mr. Sosa would arrive at the bank at 7:55

7   a.m., he generally left at or around 6:30 p.m. On the remaining three workdays (Monday through

8   Friday), Mr. Sosa would arrive at the bank at approximately 8:45 a.m.  On these days, Mr. Sosa was

9   required to close the bank branch, and he would leave the bank at or around 7:30 p.m. Here, Mr. Sosa

10  was required to work after the branch closed to conduct cold calls to meet his daily goals and help

11  remedy shortages on the teller line.  On Saturdays, Mr. Sosa arrived at the bank at 8:45 a.m. to perform

12  opening duties, and he would leave the branch at or around 5:30 p.m. Saturdays denoted the end of the

13  workweek for the bank branch, and Mr. Sosa was required to work after the branch closed completing

14  any and all paperwork necessary to accomplish weekly goals.

15  **ANSWER:**

16      Defendants deny the allegations set forth in Paragraph 211 of the Complaint.

17  **COMPLAINT ¶212:**

18      Virtually every work day, Mr. Sosa worked during his meal break.  Mr. Sosa almost never had

19  an off-duty, uninterrupted 30 minute meal period.  Nonetheless, he was required to record a lunch break

20  for which he was not paid.  The corporate policy and practice of Wells Fargo & Company and Wells

21  Fargo Bank, N.A. requires that customers be attended to and serviced in less than five minutes.  As a

22  result, Mr. Sosa was required to interrupt his lunch break to service customers' needs.  For example, the

23  branch would become busy with customers coming to the bank during lunch time, and Mr. Sosa would

24  be required to interrupt his meal period and assist customers in the branch.  Wells Fargo & Company

25  and Wells Fargo Bank, N.A. failed to relieve Mr. Sosa of all duty during his meal periods.  Moreover,

26  Wells Fargo & Company and Wells Fargo Bank, N.A. did not relinquish control over Mr. Sosa's

27

28

DEFENDANTS' AMENDED ANSWER TO PLAINTIFFS' THIRD AMENDED COMPLAINT -
COLLECTIVE ACTION AND CLASS ACTION - CASE NO. C 14-00989 PJH

activities during his meal period and in fact, required him to work and service customers during his meal periods.  Mr. Sosa rarely, if ever, received an uninterrupted meal break of at least 30 minutes.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 212 of the Complaint.

**COMPLAINT ¶213:**

In summary, Mr. Sosa regularly worked more than 40 hours each workweek and more than 8 hours each work day without receiving overtime compensation at time and one-half his regular rate of pay for all overtime hours.  During most workweeks within the relevant period, Mr. Sosa worked on average approximately 62 hours a week, but was not compensated for all overtime hours.  Most workweeks Wells Fargo & Company and Wells Fargo Bank, N.A. compensated Mr. Sosa for only 40 hours (or slightly more), despite the fact that Mr. Sosa worked substantial hours over 40 hours for which he was not paid.  There was never any workweek in which Mr. Sosa received all overtime compensation owed for all overtime hours that he worked.  Mr. Sosa was instructed by his managers to limit the number of work hours that he recorded on his electronic timesheets, which was always less than the amount of time that he actually worked and was required to work.  Mr. Sosa's managers observed him performing his work and were aware of his job duties and requirements.  Throughout his employment, Mr. Sosa's managers were aware of the hours that he worked.  Throughout his employment, under the timekeeping systems implemented and enforced by Wells Fargo & Company and Wells Fargo Bank, N.A., Mr. Sosa's managers reviewed his weekly electronic timesheets.  Therefore, Wells Fargo & Company and Wells Fargo Bank, N.A. knew or should have known that Mr. Sosa was performing overtime work for which he was not compensated because Mr. Sosa's managers observed him performing his work and instructed him to perform such work and were aware that he was not being compensated for all hours worked.  Likewise, Wells Fargo & Company and Wells Fargo Bank, N.A. knew or should have known that Mr. Sosa was performing "off-the-clock" work for which he did not receive overtime wages.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 213 of the Complaint.

**COMPLAINT ¶214:**

In most workweeks, Mr. Sosa worked in excess of 40 hours in a workweek and more than 8 hours in a work day and did not receive all overtime compensation owed for such work.  By way of example only and without limitation,

•      during the workweek of December 9, 2012 through December 15, 2012, Mr. Sosa was paid for only 40 hours for the week and received no overtime compensation, but worked well in excess that number of hours (approximately 62 hours for the week) without receiving all overtime compensation;

•      during the workweek of January 20, 2013 through January 26, 2013, Mr. Sosa was paid for only 40 hours for the week and received no overtime compensation, but worked well in excess that number of hours (approximately 62 hours for the week) without receiving all overtime compensation; and

•      during the workweek of February 17, 2013 through February 2, 2013, Mr. Sosa was paid for only 40 hours for the week and received no overtime compensation, but worked well in excess that number of hours (approximately 62 hours for the) without receiving all overtime compensation owed.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 214 of the Complaint.

**COMPLAINT ¶215:**

All of the work described above, including the overtime hours and off-the-clock hours that were worked, but unpaid, were at the request and direction of, and with the full knowledge of Wells Fargo & Company and Wells Fargo Bank, N.A., and Mr. Sosa was therefore suffered or permitted to work hours for which he was not paid overtime compensation during numerous workweeks within the applicable federal statutory period (3 years).

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 215 of the Complaint.

*Plaintiff Sezgin Unay*

**COMPLAINT ¶216:**

Plaintiff Sezgin Unay worked as a financial specialist/personal banker (a non-exempt position) in the Port Washington, New York bank branch.

**ANSWER:**

Defendants admit that Plaintiff Sezgin Unay worked for Wachovia and Wells Fargo as a financial specialist and personal banker in the Port Washington, New York bank branch. Defendants deny the remaining allegations set forth in Paragraph 216 of the Complaint.

**COMPLAINT ¶217:**

As a financial specialist/personal banker, Mr. Unay was responsible for, among other things: (1) performing opening and closing duties at the bank branch; (2) servicing customers' needs by opening and assisting with savings accounts, checking accounts, retirement accounts, and facilitating the applications for loans, credit cards, and mortgages; (3) providing customer service in the branch; (4) meeting sales goals; (5) marketing the bank's products and services; (6) greeting customers; and (7) verifying the existence of businesses to open business accounts.

**ANSWER:**

Defendants admit that Plaintiff Unay's job duties as a financial specialist or personal banker during part or all of his employment at Wachovia or Wells Fargo included but were not limited to: servicing customers' needs by opening and assisting with savings accounts, checking accounts, retirement accounts, and facilitating the applications for loans, credit cards, and mortgages; providing customer service in the branch; and selling the bank's products and services. Defendants deny the remaining allegations set forth in Paragraph 217 of the Complaint.

**COMPLAINT ¶218:**

Mr. Unay worked six days a week, Monday through Saturday,[6] arriving each day to the bank at 8:00 a.m. On Saturdays, Mr. Unay arrived to work at 8:30 a.m. Before the branch opened at 9:00 a.m.,

---

[6] Mr. Unay worked three out of every four Saturdays.

Mr. Unay was required to perform opening procedures, attend morning huddles, and participate in morning conference calls.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 218 of the Complaint.

**COMPLAINT ¶219:**

Two times a week, on Tuesday and Thursday, Mr. Unay participated in "call nights," led by district managers and hosted at Melville, New York.  Those call nights lasted until 8:00 p.m., with wrap-up calls (lasting approximately thirty minutes) held at the conclusion of each call night.  On other days during the week, Mr. Unay stayed at his branch until 7:30 p.m. completing paperwork, setting appointments and helping clients.   Though Mr. Unay left the branch at 7:30 p.m. on Monday, Wednesday and Friday, he was expected to (and did in fact) participate in 8:00 p.m. wrap-ups calls each of those days. On Saturdays, Mr. Unay worked until 2:30 p.m.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 219 of the Complaint.

**COMPLAINT ¶220:**

Virtually every work day, Mr. Unay worked during his lunch break.  Nonetheless, he was required to record a lunch break for which he was not paid.  The corporate policy and practice of Wells Fargo & Company, Wells Fargo Bank, N.A. and Wachovia Bank, N.A. (during the respective employment time periods described herein) required that customers be attended to and serviced in less than five minutes.  As a result, Mr. Unay was required to interrupt his lunch break to service customers' needs.  For example, typically the branch would become very busy with customers coming to the bank or calling the branch during lunch time, and Mr. Unay was required to interrupt his meal period and assist customers with their banking needs.  Wells Fargo & Company, Wells Fargo Bank, N.A. and Wachovia Bank, N.A. failed to relieve Mr. Unay of all duty during his meal periods.  Moreover, Wells Fargo & Company, Wells Fargo Bank, N.A. and Wachovia Bank, N.A. did not relinquish control over Mr. Unay's activities during his meal period and in fact, required him to work and service customers

during his meal periods.  Mr. Unay rarely, if ever, received an uninterrupted meal break of at least 30 minutes.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 220 of the Complaint.

**COMPLAINT ¶221:**

In summary, Mr. Unay regularly worked more than 40 hours each workweek without receiving overtime compensation at time and one-half his regular rate of pay for all hours worked in excess of 40 hours in a workweek.  During most workweeks, Mr. Unay worked on average approximately 67 hours a week, but was not compensated for all overtime hours.  Most workweeks Mr. Unay was paid for only 40 hours (or slightly more), despite the fact that Mr. Unay worked substantial hours over 40 hours for which he was not paid.  There was never any workweek in which Mr. Unay received all overtime compensation owed for all overtime hours that he worked.  Mr. Unay was instructed by his managers to limit the number of work hours that he recorded on his electronic timesheets, which was always less than the amount of time that he actually worked and was required to work.  Mr. Unay's managers observed him performing his work and were aware of his job duties and requirements.  Throughout his employment, Mr. Unay's managers were aware of the hours that he worked.  Throughout his employment, under the timekeeping systems implemented and enforced by Wells Fargo & Company, Wells Fargo Bank, N.A. and Wachovia Bank, N.A., Mr. Unay's managers reviewed his weekly electronic timesheets.  Therefore, Defendants Wells Fargo & Company, Wells Fargo Bank, N.A. and Wachovia Bank, N.A. knew or should have known that Mr. Unay was performing overtime work for which he was not compensated because Mr. Unay's managers observed him performing his work and instructed him to perform such work and were aware that he was not being compensated for all hours worked.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 221 of the Complaint.

**COMPLAINT ¶222:**

In most workweeks, Mr. Unay worked in excess of 40 hours in a workweek and did not receive all overtime compensation owed for such work.  By way of example only and without limitation,

• during the workweek of April 26, 2009 to May 2, 2009, Mr. Unay was paid for only 40.25 hours for the week, but worked well in excess that number of hours (approximately 67 hours) without receiving all overtime compensation owed.

• during the workweek of May 31, 2009 to June 6, 2009, Mr. Unay was paid for only 39.98 hours for the week and received no overtime compensation, but worked well in excess that number of hours (approximately 67 hours) without receiving all overtime compensation owed;

• during the workweek of June 7, 2009 to June 13, 2009, Mr. Unay was paid for only 39.63 hours for the week and received no overtime compensation, but worked well in excess that number of hours (approximately 67 hours) without receiving all overtime compensation owed; and

• during the workweek of June 21, 2009 to June 27, 2009, Mr. Unay was paid for only 40 hours for the week and received no overtime compensation, but worked well in excess that number of hours (approximately 67 hours) without receiving all overtime compensation owed.

• during the workweek of April 25, 2010 to May 1, 2010, Mr. Unay was paid for only 40 hours for the week and received no overtime compensation, but worked well in excess that number of hours (approximately 67 hours) without receiving all overtime compensation owed.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 222 of the Complaint.

**COMPLAINT ¶223:**

All of the work described above, including the overtime hours that were worked, but unpaid, were at the request and direction of, and with the full knowledge his employers Wells Fargo & Company, Wells Fargo Bank, N.A. and Wachovia Bank, N.A. (during the respective employment time periods described herein), and Mr. Unay was therefore suffered or permitted to work hours in excess of 40 hours in a workweek for which he was not paid all overtime compensation owed during numerous workweeks within the 6 years preceding the filing of this lawsuit.

1     **ANSWER:**

2          Defendants deny the allegations set forth in Paragraph 223 of the Complaint.

3     ***Plaintiff Corry A. Williams***

4     **COMPLAINT ¶224:**

5          Plaintiff Corry A. Williams worked as a personal banker (a non-exempt position) at a bank

6     branch in Sugar Land, Texas.

7     **ANSWER:**

8          Defendants admit that Plaintiff Corry A. Williams worked for Wells Fargo as a personal banker

9     at an in-store bank location in Sugar Land, Texas.  Defendants deny the remaining allegations set forth

10    in Paragraph 224 of the Complaint.

11    **COMPLAINT ¶225:**

12         As a personal banker, Mr. Williams was responsible for, among other things: (1) performing

13    opening and closing duties at the bank branch; (2) servicing customers' needs by opening and assisting

14    with savings accounts, checking accounts, retirement accounts, and facilitating the applications for

15    loans, credit cards, and mortgages; (3) providing customer service in the branch; (4) meeting sales goals;

16    (5) marketing the bank's products and services; and (6) greeting customers.

17    **ANSWER:**

18         Defendants admit that, during part or all of his employment as a personal banker for Wells

19    Fargo, Plaintiff Williams' job duties included but were not limited to: servicing customers' needs by

20    opening and assisting with savings accounts, checking accounts, retirement accounts, and facilitating the

21    applications for loans, credit cards, and mortgages; providing customer service in the branch; and selling

22    the bank's products and services.  Defendants deny the remaining allegations set forth in Paragraph 225

23    of the Complaint.

24    **COMPLAINT ¶226:**

25         Mr. Williams worked five or six days a week. Mr. Williams was assigned to perform opening

26    procedures four days a week and, on those days, he arrived to the branch at 7:30 a.m.  On days he did

27    not open the branch, Mr. Williams arrived to work at 8:15 a.m. to generate his call list for the day.

28

99

DEFENDANTS' AMENDED ANSWER TO PLAINTIFFS' THIRD AMENDED COMPLAINT -
COLLECTIVE ACTION AND CLASS ACTION - CASE NO. C 14-00989 PJH

1  **ANSWER:**

2      Defendants deny the allegations set forth in Paragraph 226 of the Complaint.

3  **COMPLAINT ¶227:**

4      Two times during the week, Mr. Williams participated in "call nights," led by Wells Fargo

5  district managers. Those call nights lasted from 7:30 p.m. to 9:00 p.m.  On other days during the week,

6  Mr. Williams stayed at his branch until 7:30 p.m., completing paperwork, setting appointments, helping

7  clients and performing closing activities.

8  **ANSWER:**

9      Defendants deny the allegations set forth in Paragraph 227 of the Complaint.

10  **COMPLAINT ¶228:**

11      Moreover, in order to meet the goals set by Wells Fargo & Company and Wells Fargo Bank,

12  N.A., Mr. Williams marketed the banks' products on the weekends outside his scheduled hours.  On

13  Saturdays, Mr. Williams visited a Sprint call center at 7:00 p.m., and stayed there for approximately an

14  hour and a half talking to employees and opening Wells Fargo accounts.  Mr. Williams performed the

15  same activities on Sundays at the New Greater Faith church, located in Pearland, Texas, and stayed there

16  for also approximately an hour and a half.  Wells Fargo & Company and Wells Fargo Bank, N.A. had

17  knowledge of Mr. Williams' off-site marketing activities.

18  **ANSWER:**

19      Defendants deny the allegations set forth in Paragraph 228 of the Complaint.

20  **COMPLAINT ¶229:**

21      Mr. Williams enjoyed an uninterrupted, off duty 30 minute lunch break only two times during

22  the week; otherwise, he generally always worked through his lunch break servicing Wells Fargo

23  customers.  Mr. Williams was nevertheless required to (and did in fact) record a one-hour lunch break

24  on his electronic timesheets for which he was not paid.  On these occasions, Wells Fargo & Company

25  and Wells Fargo Bank, N.A. failed to relieve Mr. Williams of all duty during his meal periods.

26  Moreover, Wells Fargo & Company and Wells Fargo Bank, N.A. did not relinquish control over

27

28

DEFENDANTS' AMENDED ANSWER TO PLAINTIFFS' THIRD AMENDED COMPLAINT -
COLLECTIVE ACTION AND CLASS ACTION - CASE NO. C 14-00989 PJH

1    Mr. Williams' activities during his meal period and in fact, required him to work and service customers

2    during his uncompensated meal periods.

3    **ANSWER:**

4         Defendants deny the allegations set forth in Paragraph 229 of the Complaint.

5    **COMPLAINT ¶230:**

6         In summary, Mr. Williams regularly worked more than 40 hours each workweek without

7    receiving overtime compensation at time and one-half his regular rate of pay for all hours worked in

8    excess of 40 hours in a workweek. During most workweeks, Mr. Williams worked on average

9    approximately 63.75 hours a week, but was not compensated for all overtime hours. Most workweeks

10   Mr. Williams was paid for only 40 hours (or slightly more), despite the fact that Mr. Williams worked

11   substantial hours over 40 hours for which he was not paid. There was never any workweek in which Mr.

12   Williams received all overtime compensation owed for all overtime hours that he worked. Mr. Williams

13   was instructed by his managers to limit the number of work hours that he recorded on his electronic

14   timesheets, which was always less than the amount of time that he actually worked and was required to

15   work. Mr. Williams' managers observed him performing his work and were aware of his job duties and

16   requirements. Throughout his employment, Mr. Williams' managers were aware of the hours that he

17   worked. Throughout his employment, under the timekeeping systems implemented and enforced by

18   Wells Fargo & Company and Wells Fargo Bank, N.A., Mr. Williams' managers reviewed his weekly

19   electronic timesheets.  Therefore, Wells Fargo & Company and Wells Fargo Bank, N.A. knew or should

20   have known that Mr. Williams was performing overtime work for which he was not compensated

21   because Mr. Williams' managers observed him performing his work and instructed him to perform such

22   work and were aware that he was not being compensated for all hours worked. Likewise, Wells Fargo &

23   Company and Wells Fargo Bank, N.A. knew or should have known that Mr. Williams was performing

24   "off-the-clock" work for which he did not receive overtime wages.

25   **ANSWER:**

26        Defendants deny the allegations set forth in Paragraph 230 of the Complaint.

27

28

**COMPLAINT ¶231:**

In most workweeks, Mr. Williams worked in excess of 40 hours in a workweek and did not receive all overtime compensation owed for such work.  By way of example only and without limitation,

• during the workweek of May 22, 2011 through May 28, 2011, Mr. Williams was paid for only 40 hours for the week and received no overtime compensation, but worked well in excess that number of hours (approximately 63.75 hours) without receiving all overtime compensation owed; and

• during the workweek of July 10, 2011 through July 16, 2011, Mr. Williams was paid for only 39.58 hours for the week and received no overtime compensation, but worked well in excess that number of hours (approximately 63.75 hours) without receiving all overtime compensation owed.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 231 of the Complaint.

**COMPLAINT ¶232:**

All of the work described above, including the overtime hours that were worked, but unpaid, were at the request and direction of, and with the full knowledge of Wells Fargo & Company and Wells Fargo Bank, N.A., and Mr. Williams was therefore suffered or permitted to work hours in excess of 40 hours in a workweek for which he was not paid all overtime compensation owed during numerous workweeks during the three years preceding the date that he filed his notice of consent herein.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 232 of the Complaint.

<u>**CLAIMS FOR RELIEF**</u>

<u>**FIRST CAUSE OF ACTION**</u>

**INDIVIDUAL OVERTIME CLAIMS AGAINST WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A. UNDER THE FAIR LABOR STANDARD ACT**

**COMPLAINT ¶233:**

Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

102

1   **ANSWER:**

2          Defendants incorporate their responses to the preceding paragraphs of this Answer as if they

3   were fully set forth here.

4   **COMPLAINT ¶234:**

5          Plaintiffs Monique Perez, Porcelynne Hawthorne, Thaxton V. Rowe, Jr., Corry A. Williams,

6   Karla P. Salazar, John Sorocenski, Sona K. Anand, Jason M. Otto, Anthony Sosa, and Anthony Austin

7   bring individual FLSA claims for off-the-clock violations as described herein (collectively referred to as

8   "FLSA Plaintiffs") against Defendants Wells Fargo & Company and Wells Fargo Bank, N.A.

9   **ANSWER:**

10          Defendants admit that the FLSA Plaintiffs, as defined in Paragraph 234 of the Complaint,

11   purport to bring individual FLSA claims for alleged off-the-clock violations.  Defendants deny that they

12   violated the FLSA or any state or federal laws with respect to Plaintiffs or any other employees.

13   Defendants deny the remaining allegations set forth in Paragraph 234 of the Complaint.

14   **COMPLAINT ¶235:**

15          Wells Fargo & Company and Wells Fargo Bank, N.A. jointly employed the FLSA Plaintiffs

16   during the three years preceding the date on which each FLSA Plaintiff filed his/her notice of consent to

17   join this action.

18   **ANSWER:**

19          Defendants deny the allegations set forth in Paragraph 235 of the Complaint.

20   **COMPLAINT ¶236:**

21          Each FLSA Plaintiff has signed a consent pursuant to 29 U.S.C. §§ 216(b) and 256, and these

22   consents have been filed in this action and are incorporated herein.

23   **ANSWER:**

24          Defendants admit that the FLSA Plaintiffs have filed consents to join this action.  Defendants

25   deny the remaining allegations set forth in Paragraph 236 of the Complaint.

26

27

28

**COMPLAINT ¶237:**

At all relevant times, Wells Fargo & Company and Wells Fargo Bank, N.A. have been engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

**ANSWER:**

Defendants admit Wells Fargo is engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA and aver that Defendants have complied with the FLSA. Defendants deny the remaining allegations set forth in Paragraph 237 of the Complaint.

**COMPLAINT ¶238:**

At all relevant times, Wells Fargo & Company and Wells Fargo Bank, N.A. have each been subject to complying with the provisions of the FLSA and each is a covered employer under the FLSA.

**ANSWER:**

Defendants admit the allegations set forth in Paragraph 238 of the Complaint and aver that Defendants have complied with the FLSA. Defendants deny that WFC was Plaintiffs' employer.

**COMPLAINT ¶239:**

The FLSA requires that each covered employer compensate its non-exempt employees at a rate of one and one-half times their regular rate of pay for all hours worked in excess of 40 hours each workweek.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 239 of the Complaint.

**COMPLAINT ¶240:**

The FLSA Plaintiffs are former non-exempt of employees of Wells Fargo & Company and Wells Fargo Bank, N.A. who were entitled to overtime compensation for all overtime hours worked in excess of 40 hours in a workweek.

**ANSWER:**

Defendants admit that Monique Perez, Porcelynne Hawthorne, Thaxton V. Rowe, Jr., Corry A. Williams, Karla P. Salazar, John Sorocenski, Sona K. Anand, Jason M. Otto, Anthony Sosa, and

Anthony Austin are former employees of Wells Fargo. Defendants deny the remaining allegations set forth in Paragraph 240 of the Complaint.

**COMPLAINT ¶241:**

At all relevant times, pursuant to company policies, procedures and practices, Wells Fargo & Company and Wells Fargo Bank, N.A. failed and refused to pay overtime compensation to the FLSA Plaintiffs in violation of the FLSA.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 241 of the Complaint.

**COMPLAINT ¶242:**

Plaintiffs Monique Perez, Porcelynne Hawthorne, Thaxton V. Rowe, Jr., Corry A. Williams, Karla P. Salazar, John Sorocenski, Sona K. Anand, Jason M. Otto, Anthony Sosa, and Anthony Austin were each injured and suffered damages because Wells Fargo & Company and Wells Fargo Bank, N.A. failed to pay them all overtime compensation owed for all hours worked over 40 hours in a workweek during the relevant time period.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 242 of the Complaint.

**COMPLAINT ¶243:**

In further violation of the FLSA, Wells Fargo & Company and Wells Fargo Bank, N.A. have failed to maintain accurate employee records, including the number of hours worked per workweek by each of the FLSA Plaintiffs during the relevant time period.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 243 of the Complaint.

**COMPLAINT ¶244:**

Such conduct and violations as described herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 244 of the Complaint.

**COMPLAINT ¶245:**

The FLSA Plaintiffs seek damages in the amount of their respective unpaid overtime compensation, liquidated damages as provided by the FLSA, pre-judgment and post-judgment interest, and all other compensatory, equitable and other legal relief to which they may be entitled.

**ANSWER:**

Defendants admit that the FLSA Plaintiffs seek damages, liquidated damages, interest, and compensatory, equitable and other relief under the FLSA.  Defendants deny that Plaintiffs are entitled to recover any damages or any other relief, and deny that they violated the FLSA or any state or federal laws with respect to Plaintiffs.  Defendants deny the remaining allegations set forth in Paragraph 245 of the Complaint.

**COMPLAINT ¶246:**

The FLSA Plaintiffs also seek recovery of their attorneys' fees, litigation expenses (including but not limited to expert witness fees), and costs to be paid by Wells Fargo & Company and Wells Fargo Bank, N.A. as provided by the FLSA, 29 U.S.C. § 216(b).

**ANSWER:**

Defendants admit that the FLSA Plaintiffs seek attorneys' fees, litigation expenses and costs. Defendants deny that Plaintiffs are entitled to recover any attorneys' fees, litigation expenses, costs, or any other relief, and deny that they violated the FLSA or any state or federal laws with respect to Plaintiffs.  Defendants deny the remaining allegations set forth in Paragraph 246 of the Complaint.

<u>**SECOND CAUSE OF ACTION**</u>

**INDIVIDUAL OVERTIME CLAIMS AGAINST WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A. UNDER CALIFORNIA LABOR CODE §§ 510, 1194**

**COMPLAINT ¶247:**

Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

1   **ANSWER:**

2           Defendants incorporate their responses to the preceding paragraphs of this Answer as if they

3   were fully set forth here.

4   **COMPLAINT ¶248:**

5           Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., and Porcelynne Hawthorne bring individual

6   claims against Wells Fargo & Company and Wells Fargo Bank, N.A. for off-the-clock claims in

7   violation of the California Labor Code.

8   **ANSWER:**

9           Defendants admit that Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., and Porcelynne

10  Hawthorne purport to bring individual claims for alleged violations of the California Labor Code.

11  Defendants deny that they violated the California Labor Code, or any state or federal laws with respect

12  to Plaintiffs.  Defendants deny the remaining allegations set forth in Paragraph 248 of the Complaint.

13  **COMPLAINT ¶249:**

14          California Labor Code §§ 510, 1194 and all applicable Industrial Welfare Commission Wage

15  Orders (including but not necessarily limited to, 8 Cal Code Regs § 11070), provide that employees in

16  California shall not be employed more than 8 hours in any workday, and more than 40 hours in any

17  workweek, unless they receive additional compensation beyond their regular wages at a rate of time and

18  one-half (1 1/2), with double time after 8 hours of the seventh day of any workweek or 12 hours in any

19  work day.

20  **ANSWER:**

21          Defendants deny the allegations set forth in Paragraph 249 of the Complaint.

22  **COMPLAINT ¶250:**

23          Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., and Porcelynne Hawthorne were regularly and

24  consistently required to work more than 8 hours in any work day (sometimes exceeding 12 hours), and

25  more than 40 hours in a workweek and were not compensated for such work at premium rates.

26  **ANSWER:**

27          Defendants deny the allegations set forth in Paragraph 250 of the Complaint.

28

1

**COMPLAINT ¶251:**

2

    Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., and Porcelynne Hawthorne were each injured

3

and suffered damages because Wells Fargo & Company and Wells Fargo Bank, N.A. failed to pay them

4

all overtime compensation owed for all hours worked over 8 hours in a workday during the relevant time

5

period.

6

**ANSWER:**

7

    Defendants deny the allegations set forth in Paragraph 251 of the Complaint.

8

**COMPLAINT ¶252:**

9

    Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., and Porcelynne Hawthorne were each injured

10

and suffered damages because Wells Fargo & Company and Wells Fargo Bank, N.A. failed to pay them

11

all overtime compensation owed for all hours worked over 12 hours in a workday during the relevant

12

time period.

13

**ANSWER:**

14

    Defendants deny the allegations set forth in Paragraph 252 of the Complaint.

15

**COMPLAINT ¶253:**

16

    Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., and Porcelynne Hawthorne were each injured

17

and suffered damages because Wells Fargo & Company and Wells Fargo Bank, N.A. failed to pay them

18

all overtime compensation owed for all hours worked over 40 hours in a workweek during the relevant

19

time period.

20

**ANSWER:**

21

    Defendants deny the allegations set forth in Paragraph 253 of the Complaint.

22

**COMPLAINT ¶254:**

23

    Wells Fargo & Company and Wells Fargo Bank, N.A. knowingly and willfully violated the

24

provisions of the California Labor Code §§ 510 and 1194 by refusing to perform their obligations to

25

compensate Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., and Porcelynne Hawthorne for all wages

26

earned and all hours worked.

27

28

DEFENDANTS' AMENDED ANSWER TO PLAINTIFFS' THIRD AMENDED COMPLAINT -
COLLECTIVE ACTION AND CLASS ACTION - CASE NO. C 14-00989 PJH

1   **ANSWER:**

2       Defendants deny the allegations set forth in Paragraph 254 of the Complaint.

3   **COMPLAINT ¶255:**

4       As a result of the unlawful acts of Wells Fargo & Company and Wells Fargo Bank, N.A.,

5   Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., and Porcelynne Hawthorne have been deprived of

6   overtime in amounts to be determined at trial and are entitled to recover such amounts, plus interest and

7   penalties, liquidated damages, attorneys' fees and costs pursuant to Labor Code §§ 510 and 1194.

8   **ANSWER:**

9       Defendants deny the allegations set forth in Paragraph 255 of the Complaint.

10                              **THIRD CAUSE OF ACTION**

11   **INDIVIDUAL CLAIMS AGAINST WELLS FARGO & COMPANY AND WELLS FARGO**

12   **BANK, N.A. FOR VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE §**

13                                **17200 ET SEQ.**

14   **COMPLAINT ¶256:**

15       Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten

16   herein.

17   **ANSWER:**

18       Defendants incorporate their responses to the preceding paragraphs of this Answer as if they

19   were fully set forth here.

20   **COMPLAINT ¶257:**

21       Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., and Porcelynne Hawthorne bring these claims

22   individually against Wells Fargo & Company and Wells Fargo Bank, N.A.

23   **ANSWER:**

24       Defendants admit that Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., and Porcelynne

25   Hawthorne purport to bring individual claims for alleged violations of the California Business &

26   Professions Code.  Defendants deny that they violated the California Business & Professions Code, or

27

28

any state or federal laws with respect to Plaintiffs.  Defendants deny the remaining allegations set forth in Paragraph 257 of the Complaint.

**COMPLAINT ¶258:**

The California Unfair Competition Law ("UCL"), California Business & Professions Code § 17200 et seq., prohibits unfair competition in the form of any unlawful, unfair, deceptive, or fraudulent business practices.

**ANSWER:**

Defendants admit that the California Unfair Competition Law ("UCL"), California Business & Professions Code § 17200 et seq., prohibits unfair competition in the form of any unlawful, unfair, deceptive, or fraudulent business practices.  Defendants deny that they violated California law, or any state or federal laws with respect to Plaintiffs.  Defendants deny the remaining allegations set forth in Paragraph 258 of the Complaint.

**COMPLAINT ¶259:**

During all relevant times, Wells Fargo & Company and Wells Fargo Bank, N.A. committed unlawful, unfair, deceptive, and/or fraudulent acts as defined by California Business & Professions Code § 17200, et seq. Wells Fargo & Company's and Wells Fargo Bank, N.A.'s unlawful, unfair, deceptive, and/or fraudulent business practices include, without limitation, failing to pay overtime wages, failing to pay for all hours worked or that were required to be paid, failing to pay minimum wages, failing to provide and authorize mandated meal and rest periods, and failing to pay all wages upon termination in violation of California law.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 259 of the Complaint.

**COMPLAINT ¶260:**

Wells Fargo & Company's and Wells Fargo Bank, N.A.'s course of conduct, acts, and practices in violation of the California laws mentioned in the above paragraph constitute a separate and independent violation of the UCL.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 260 of the Complaint.

**COMPLAINT ¶261:**

As a result of this unlawful and/or unfair and/or fraudulent business practice, Wells Fargo & Company and Wells Fargo Bank, N.A. injured Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., and Porcelynne Hawthorne by reaping unfair benefits and illegal profits at their expense.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 261 of the Complaint.

**COMPLAINT ¶262:**

Wells Fargo & Company and Wells Fargo Bank, N.A. must disgorge these illegally obtained gains and restore to Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., and Porcelynne Hawthorne all wrongfully withheld wages, including, but not limited to minimum wages and overtime compensation and all unpaid wages.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 262 of the Complaint.

**COMPLAINT ¶263:**

Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., and Porcelynne Hawthorne respectfully request that judgment be awarded in their favor to provide restitution and interest, and the relief requested herein.

**ANSWER:**

Defendants admit that Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., and Porcelynne Hawthorne seek judgment, restitution, interest, and other relief on behalf of themselves. Defendants deny that Plaintiffs are entitled to recover any of the relief they seek, and deny that they violated the UCL or any state or federal laws with respect to Plaintiffs. Defendants deny the remaining allegations set forth in Paragraph 263 of the Complaint.

**FOURTH CAUSE OF ACTION**

**INDIVIDUAL CLAIMS FOR FAILURE TO PROVIDE REQUIRED MEAL BREAKS AGAINST WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A. PURSUANT TO CALIFORNIA LABOR CODE §§ 226.7, 512**

**COMPLAINT ¶264:**

Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

**ANSWER:**

Defendants incorporate their responses to the preceding paragraphs of this Answer as if they were fully set forth here.

**COMPLAINT ¶265:**

Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., and Porcelynne Hawthorne bring these claims individually against Wells Fargo & Company and Wells Fargo Bank, N.A.

**ANSWER:**

Defendants admit that Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., and Porcelynne Hawthorne purport to bring individual claims for alleged violations of the California Labor Code. Defendants deny that they violated the California Labor Code, or any state or federal laws with respect to Plaintiffs. Defendants deny the remaining allegations set forth in Paragraph 265 of the Complaint.

**COMPLAINT ¶266:**

At all times relevant herein, in violation of Labor Code § 226.7(a), Wells Fargo & Company and Wells Fargo Bank, N.A. knowingly and intentionally required employees to work during meal periods mandated by Labor Code § 512 and California Administrative Code § 11040.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 266 of the Complaint.

**COMPLAINT ¶267:**

Section 11 of the applicable Wage Order and section 512 of the Labor Code require an employer to pay an additional hour of compensation for each meal period the employer fails to provide.

112

Employees are entitled to a meal period of at least 30 minutes uninterrupted per five hour work period. Moreover, an employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes. The employee must be relieved of all duty during meal periods.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 267 of the Complaint.

**COMPLAINT ¶268:**

Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., and Porcelynne Hawthorne worked over 5 hour shifts. Many days they worked 10 hours or more.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 268 of the Complaint.

**COMPLAINT ¶269:**

Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., and Porcelynne Hawthorne were not given a reasonable opportunity to take an uninterrupted 30 minute meal period. Moreover, they were not relieved of all duty during meal periods.  Likewise, they were not afforded all meal breaks owed to them under California law, including a second meal break after working 10 hours in a work day.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 269 of the Complaint.

**COMPLAINT ¶270:**

Wells Fargo & Company and Wells Fargo Bank, N.A. failed to provide the Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., and Porcelynne Hawthorne with meal breaks as required by California wage and hour laws.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 270 of the Complaint.

1   **COMPLAINT ¶271:**

2        Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., and Porcelynne Hawthorne were each injured

3   and suffered damages because Wells Fargo & Company and Wells Fargo Bank, N.A. failed to provide

4   them with uninterrupted 30 minute meal breaks as required by California wage and hour laws.

5   **ANSWER:**

6        Defendants deny the allegations set forth in Paragraph 271 of the Complaint.

7   **COMPLAINT ¶272:**

8        Section 11(B) of the applicable Wage Order states that if an employer fails to provide an

9   employee with a meal period, the employer shall pay the employee an additional one hour of pay at the

10  employee's regular rate of compensation for each workday that the meal period is not provided.

11  **ANSWER:**

12       Defendants deny the allegations set forth in Paragraph 272 of the Complaint.

13  **COMPLAINT ¶273:**

14       As a proximate result of Wells Fargo & Company's and Wells Fargo Bank, N.A.'s violations,

15  Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., and Porcelynne Hawthorne were injured. Pursuant to

16  Labor Code § 226.7(b) and related administrative orders and regulations, Plaintiffs Monique Perez,

17  Thaxton V. Rowe, Jr., and Porcelynne Hawthorne are entitled to damages in an amount equal to one (1)

18  hour of wages for each missed uninterrupted 30 minute meal break, in a sum to be proven at trial.

19  **ANSWER:**

20       Defendants deny the allegations set forth in Paragraph 273 of the Complaint.

21  **FIFTH CAUSE OF ACTION**

22  **INDIVIDUAL CLAIMS FOR FAILURE TO ALLOW REST BREAKS AGAINST WELLS**

23  **FARGO & COMPANY AND WELLS FARGO BANK, N.A. PURSUANT TO CALIFORNIA**

24  **LABOR CODE § 226.7**

25  **COMPLAINT ¶274:**

26       Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten

27  herein.

28

114

1  **ANSWER:**

2      Defendants incorporate their responses to the preceding paragraphs of this Answer as if they

3  were fully set forth here.

4  **COMPLAINT ¶275:**

5      Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., and Porcelynne Hawthorne bring these claims

6  individually against Wells Fargo & Company and Wells Fargo Bank, N.A.

7  **ANSWER:**

8      Defendants admit that Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., and Porcelynne

9  Hawthorne purport to bring individual claims for alleged violations of the California Labor Code.

10 Defendants deny that they violated the California Labor Code, or any state or federal laws with respect

11 to Plaintiffs.  Defendants deny the remaining allegations set forth in Paragraph 275 of the Complaint.

12 **COMPLAINT ¶276:**

13     California Labor Code § 226.7(b) prohibits an employer from requiring employees to work

14 during any rest period mandated by an applicable order of the IWC.

15 **ANSWER:**

16     Defendants admit that California Labor Code § 226.7(b) provides: "An employer shall not

17 require an employee to work during a meal or rest or recovery period mandated pursuant to an

18 applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission, the

19 Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health."

20 Defendants deny that they violated California law, or any state or federal laws with respect to Plaintiffs.

21 **COMPLAINT ¶277:**

22     The IWC has issued various Wage Orders including Wage Order 4, which regulates

23 Professional, Technical, Clerical, Mechanical and Similar Operations, including persons such as

24 Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., and Porcelynne Hawthorne.

25 **ANSWER:**

26     Defendants admit that the IWC has issued various Wage Orders, including Wage Order 4, which

27 regulates wages, hours, and working conditions in Professional, Technical, Clerical, Mechanical and

28

Similar Occupations.  Defendants deny that they violated any Wage Orders, California law, or any state or federal laws with respect to Plaintiffs, and also deny the remaining allegations set forth in Paragraph 277 of the Complaint.

**COMPLAINT ¶278:**

Section 12(A) of the applicable Wage Order states that "the authorized rest period time shall be based on the total hours worked daily at the rate of 10 minutes net rest time per four hours or major fraction thereof."

**ANSWER:**

Defendants admit that Section 12(A) of Wage Order 4 states that "the authorized rest period time shall be based on the total hours worked daily at the rate of ten minutes net rest time per four hours or major fraction thereof."  Defendants deny that they violated California law, or any state or federal laws with respect to Plaintiffs.

**COMPLAINT ¶279:**

Section 12(B) of the applicable Wage Order requires an employer to pay an employee one hour of regular pay for each work day that the rest period is not provided.

**ANSWER:**

Defendants admit that Section 12(B) of Wage Order 4 states: "If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period is not provided."  Defendants deny that they violated California law, or any state or federal laws with respect to Plaintiffs.

**COMPLAINT ¶280:**

At all times relevant herein, in violation of Labor Code § 226.7, Wells Fargo & Company and Wells Fargo Bank, N.A. knowingly and intentionally denied employees, including Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., and Porcelynne Hawthorne, statutorily mandated rest periods and required employees to work during required rest periods.

DEFENDANTS' AMENDED ANSWER TO PLAINTIFFS' THIRD AMENDED COMPLAINT -
COLLECTIVE ACTION AND CLASS ACTION - CASE NO. C 14-00989 PJH

1    **ANSWER:**

2         Defendants deny the allegations set forth in Paragraph 280 of the Complaint.

3    **COMPLAINT ¶281:**

4         Wells Fargo & Company and Wells Fargo Bank, N.A. failed to provide Plaintiffs Monique

5    Perez, Thaxton V. Rowe, Jr., and Porcelynne Hawthorne with rest breaks as required by the Code.

6    **ANSWER:**

7         Defendants deny the allegations set forth in Paragraph 281 of the Complaint.

8    **COMPLAINT ¶282:**

9         Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., and Porcelynne Hawthorne were injured and

10   suffered damages because Wells Fargo & Company and Wells Fargo Bank, N.A failed to provide them

11   with rest breaks during the relevant time period as required by the California Labor Code.

12   **ANSWER:**

13        Defendants deny the allegations set forth in Paragraph 282 of the Complaint.

14   **COMPLAINT ¶283:**

15        As a proximate result of Wells Fargo & Company's and Wells Fargo Bank, N.A.'s violation,

16   Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., and Porcelynne Hawthorne were injured. Pursuant to

17   Labor Code § 226.7(c) and related administrative orders and regulations, Plaintiffs Monique Perez,

18   Thaxton V. Rowe, Jr., and Porcelynne Hawthorne are entitled to damages in an amount equal to one (1)

19   hour of wages per missed rest break, in a sum to be proven at trial.

20   **ANSWER:**

21        Defendants deny the allegations set forth in Paragraph 283 of the Complaint.

22

23

24

25

26

27

28

**SIXTH CAUSE OF ACTION**

**INDIVIDUAL CLAIMS FOR WAITING TIME PENALTIES**

**AGAINST WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A.**

**UNDER CALIFORNIA LABOR CODE §§ 201-203**

**COMPLAINT ¶284:**

Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

**ANSWER:**

Defendants incorporate their responses to the preceding paragraphs of this Answer as if they were fully set forth here.

**COMPLAINT ¶285:**

Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., and Porcelynne Hawthorne bring these claims individually against Wells Fargo & Company and Wells Fargo Bank, N.A.

**ANSWER:**

Defendants admit that Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., and Porcelynne Hawthorne purport to bring individual claims for alleged violations of the California Labor Code. Defendants deny that they violated the California Labor Code, or any state or federal laws with respect to Plaintiffs. Defendants deny the remaining allegations set forth in Paragraph 285 of the Complaint.

**COMPLAINT ¶286:**

Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., and Porcelynne Hawthorne are no longer employed by Wells Fargo & Company and Wells Fargo Bank, N.A., in that they quit or were discharged from employment.

**ANSWER:**

Defendants admit that Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., and Porcelynne Hawthorne are no longer employed by Wells Fargo.  Defendants deny that Plaintiffs were ever employed by WFC, and further deny that Defendants violated California law, or any state or federal laws with respect to Plaintiffs.

1  **COMPLAINT ¶287:**

2      Wells Fargo & Company and Wells Fargo Bank, N.A. willfully refused, and continue to refuse,

3  to pay Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., and Porcelynne Hawthorne all wages earned and

4  owed in a timely manner as required by California Labor Code §§ 201, 202, and 203.

5  **ANSWER:**

6      Defendants deny the allegations set forth in Paragraph 287 of the Complaint.

7  **COMPLAINT ¶288:**

8      Wells Fargo & Company and Wells Fargo Bank, N.A.'s failure to pay wages, as alleged above,

9  was willful in that Wells Fargo & Company and Wells Fargo Bank, N.A. knew wages were due but

10  failed to pay them, thus entitling Plaintiffs Monique Perez, Thaxton V. Rowe, Jr., and Porcelynne

11  Hawthorne to penalties under Labor Code § 203, which provides than an employee's wages shall

12  continue as a penalty for a period up to 30 days from the time they were due.

13  **ANSWER:**

14      Defendants deny the allegations set forth in Paragraph 288 of the Complaint.

15  **COMPLAINT ¶289:**

16      Wells Fargo & Company and Wells Fargo Bank, N.A. have failed to pay the Plaintiffs Monique

17  Perez, Thaxton V. Rowe, Jr., and Porcelynne Hawthorne a sum certain at the time of termination or

18  within seventy-two (72) hours of their resignation, and have failed to pay those sums for 30 days

19  thereafter.

20  **ANSWER:**

21      Defendants deny the allegations set forth in Paragraph 289 of the Complaint.

22  **COMPLAINT ¶290:**

23      Pursuant to the provisions of California Labor Code § 203, Plaintiffs Monique Perez, Thaxton V.

24  Rowe, Jr., and Porcelynne Hawthorne are entitled to a penalty in the amount of their daily wage

25  multiplied by thirty (30) days.

26  **ANSWER:**

27      Defendants deny the allegations set forth in Paragraph 290 of the Complaint.

28

119

DEFENDANTS' AMENDED ANSWER TO PLAINTIFFS' THIRD AMENDED COMPLAINT -
COLLECTIVE ACTION AND CLASS ACTION - CASE NO. C 14-00989 PJH

**SEVENTH CAUSE OF ACTION**

**INDIVIDUAL OVERTIME CLAIMS AGAINST WELLS FARGO & COMPANY,**

**WELLS FARGO BANK, N.A., AND**

**WACHOVIA BANK, N.A. FOR VIOLATIONS OF NYLL AND NYCRR**

**COMPLAINT ¶291:**

Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

**ANSWER:**

Defendants incorporate their responses to the preceding paragraphs of this Answer as if they were fully set forth here.

**COMPLAINT ¶292:**

Plaintiffs Sona K. Anand, Brandon Grzan, Jason L. Hoffman, Brian Lynch, John Sorocenski and Sezgin Unay bring individual claims for unpaid overtime compensation as a result of violations of New York Labor Laws committed by their employers Wells Fargo & Company, Wells Fargo Bank, N.A. and Wachovia Bank, N.A. (during their respective employment time periods as set forth herein).

**ANSWER:**

Defendants admit that Plaintiffs Sona K. Anand, Brandon Grzan, Jason L. Hoffman, Brian Lynch, John Sorocenski and Sezgin Unay purport to bring individual claims for alleged violations of New York Labor Laws. Defendants deny that WFC employed any of the Plaintiffs, and further deny that Wells Fargo employed Plaintiff Grzan. Defendants further deny that they violated the NYLL, the NYCRR, or any state or federal laws with respect to Plaintiffs. Defendants deny the remaining allegations set forth in Paragraph 292 of the Complaint.

**COMPLAINT ¶293:**

The individual New York state law claims of Plaintiffs Sona K. Anand, Brandon Grzan, Jason L. Hoffman, Brian Lynch, John Sorocenski, and Sezgin Unay arise under (1) 12 NYCRR § 142-2.2, which provides that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half

120

1   times the employee's regular rate," and (2) NYLL §§ 190 and 191, which require that employees be

2   compensated at the legal rates for all hours worked.

3   **ANSWER:**

4       Defendants admit that Plaintiffs Sona K. Anand, Brandon Grzan, Jason L. Hoffman, Brian

5   Lynch, John Sorocenski, and Sezgin Unay purport to bring individual claims for alleged violations of

6   the NYLL and NYCRR. Defendants deny that WFC employed any of the Plaintiffs, and further deny

7   that Wells Fargo employed Plaintiff Grzan. Defendants further deny that they violated the NYLL, the

8   NYCRR, or any state or federal laws with respect to Plaintiffs. Defendants deny the remaining

9   allegations set forth in Paragraph 293 of the Complaint.

10  **COMPLAINT ¶294:**

11      The individual state law claims of Plaintiffs Sona K. Anand, Brandon Grzan, Jason L. Hoffman,

12  Brian Lynch, John Sorocenski, and Sezgin Unay are further actionable pursuant to NYLL § 663, which

13  creates a private right of action to enforce the rights established by NYCRR § 142-2.2, and which states

14  "[i]f any employee is paid by his or her employer less than the wage to which he or she is entitled under

15  the provisions of this article, he or she shall recover in a civil action the amount of any such

16  underpayments, together with costs, [and] all reasonable attorney's fees." NYLL § 663. This cause of

17  action is therefore properly maintained pursuant to NYLL § 663.

18  **ANSWER:**

19      Defendants admit that Plaintiffs Sona K. Anand, Brandon Grzan, Jason L. Hoffman, Brian

20  Lynch, John Sorocenski, and Sezgin Unay purport to bring individual claims for alleged violations of

21  the NYLL and NYCRR. Defendants deny that WFC employed any of the Plaintiffs, and further deny

22  that Wells Fargo employed Plaintiff Grzan. Defendants further deny that they violated the NYLL, the

23  NYCRR, or any state or federal laws with respect to Plaintiffs. Defendants deny the remaining

24  allegations set forth in Paragraph 294 of the Complaint.

25

26

27

28

1

**COMPLAINT ¶295:**

2

     Plaintiffs Sona K. Anand, Brandon Grzan, Jason L. Hoffman, Brian Lynch, John Sorocenski, and

3

Sezgin Unay are non-exempt employees who are entitled to overtime pay for all hours in excess of 40

4

hours worked during each workweek.

5

**ANSWER:**

6

     Defendants deny the allegations set forth in Paragraph 295 of the Complaint.

7

**COMPLAINT ¶296:**

8

     Plaintiffs Sona K. Anand, Brandon Grzan, Jason L. Hoffman, Brian Lynch, John Sorocenski, and

9

Sezgin Unay did not receive overtime pay at a rate of time and one-half their regular rate of pay for all

10

hours worked after the first 40 hours in a workweek.

11

**ANSWER:**

12

     Defendants deny the allegations set forth in Paragraph 296 of the Complaint.

13

**COMPLAINT ¶297:**

14

     Consequently, by failing to pay Plaintiffs Sona K. Anand, Brandon Grzan, Jason L. Hoffman,

15

Brian Lynch, John Sorocenski, and Sezgin Unay overtime compensation for work performed after the

16

first 40 hours worked in a workweek, Defendants Wells Fargo & Company, Wells Fargo Bank, N.A.

17

and Wachovia Bank, N.A. each violated NYLL §§ 190 and 191 and 12 NYCRR § 142-2.2.

18

**ANSWER:**

19

     Defendants deny the allegations set forth in Paragraph 297 of the Complaint.

20

**COMPLAINT ¶298:**

21

     In further violation of the NYCRR, specifically section 142-2.6, Wells Fargo & Company, Wells

22

Fargo Bank, N.A. and Wachovia Bank, N.A. have failed to maintain accurate employee records,

23

including the number of hours worked per workweek by Plaintiffs Sona K. Anand, Brandon Grzan,

24

Jason L. Hoffman, Brian Lynch, John Sorocenski, and Sezgin Unay.

25

**ANSWER:**

26

     Defendants deny the allegations set forth in Paragraph 298 of the Complaint.

27

28

1

**COMPLAINT ¶299:**

2

Plaintiffs Sona K. Anand, Brandon Grzan, Jason L. Hoffman, Brian Lynch, John Sorocenski, and

3

Sezgin Unay were each injured and suffered damages because Wells Fargo & Company, Wells Fargo

4

Bank, N.A. and Wachovia Bank, N.A. each failed to pay them all overtime pay and all wages owed for

5

all the hours worked over 40 hours per workweek during the relevant time period.

6

**ANSWER:**

7

Defendants deny the allegations set forth in Paragraph 299 of the Complaint.

8

**COMPLAINT ¶300:**

9

The violations of Wells Fargo & Company, Wells Fargo Bank, N.A., and Wachovia Bank, N.A.

10

constitute willful violations. Plaintiffs Sona K. Anand, Brandon Grzan, Jason L. Hoffman, Brian Lynch,

11

John Sorocenski, and Sezgin Unay are, therefore, entitled to recover liquidated damages.

12

**ANSWER:**

13

Defendants deny the allegations set forth in Paragraph 300 of the Complaint.

14

**COMPLAINT ¶301:**

15

By the foregoing actions, Wells Fargo & Company, Wells Fargo Bank, N.A. and Wachovia

16

Bank, N.A. have violated the NYLL and NYCRR and are liable to Plaintiffs Sona K. Anand, Brandon

17

Grzan, Jason L. Hoffman, Brian Lynch, John Sorocenski, and Sezgin Unay for unpaid overtime

18

compensation in an amount to be determined at trial, plus interest, liquidated damages, attorneys' fees,

19

litigation expenses and costs.

20

**ANSWER:**

21

Defendants deny the allegations set forth in Paragraph 301 of the Complaint.

22

23

24

25

26

27

28

DEFENDANTS' AMENDED ANSWER TO PLAINTIFFS' THIRD AMENDED COMPLAINT -
COLLECTIVE ACTION AND CLASS ACTION - CASE NO. C 14-00989 PJH

**EIGHTH CAUSE OF ACTION**

**FAILURE TO PAY OVERTIME WAGES FOR RECORDED BREAKS OF 20 MINUTES OR**

**LESS IN VIOLATION OF NEW YORK STATE LAW AGAINST WELLS FARGO &**

**COMPANY, WELLS FARGO BANK, N.A. AND WACHOVIA BANK, N.A.**

**(CLASS ACTION CLAIM)**

**COMPLAINT ¶302:**

Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

**ANSWER:**

Defendants incorporate their responses to the preceding paragraphs of this Answer as if they were fully set forth here.

**COMPLAINT ¶303:**

Plaintiff Sona K. Anand ("New York Class Representative") brings these claims individually and in a representative capacity on behalf of New York Class against Defendants Wells Fargo & Company, Wells Fargo Bank, N.A. and Wachovia Bank, N.A.

**ANSWER:**

Defendants admit that Plaintiff Sona K. Anand purports to bring a Rule 23 class action as a class representative of a New York class.  Defendants deny that this lawsuit is suitable for class action treatment, and deny that they violated New York law, or any state or federal laws with respect to Plaintiff Sona K. Anand or any other employees.  Defendants deny the remaining allegations set forth in Paragraph 303 of the Complaint.

**COMPLAINT ¶304:**

The New York State Department of Labor is charged with enforcing New York State Labor Laws, ensuring a fair wage for all workers.  The New York Department of Labor has stated that:

**Must employees be paid for breaks and rest periods?**

While the Labor Law does not require that employers provide rest periods of short

duration, if they are provided to or taken by employees, they must be counted as working

124

time.  The Department follows Federal Regulation 29 CFR §785.18 which provides that rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry.  They promote the efficiency of the employee and are customarily paid for as working time. They must be counted as hours worked. Compensable time of rest periods may not be offset against other working time such as compensable waiting time or on-call time[.]

**ANSWER:**

Defendants admit the allegations set forth in Paragraph 304 of the Complaint, but deny that they violated New York Law, the FLSA, or any other law with respect to Plaintiffs' employment.

**COMPLAINT ¶305:**

This cause of action involves violations of sections 190 and 191 of the NYLL, which require that employees must be compensated at the legal rates for all hours worked.

**ANSWER:**

Defendants admit the allegations set forth in Paragraph 305 of the Complaint, but deny that they violated New York Law, the FLSA, or any other law with respect to Plaintiffs' employment.

**COMPLAINT ¶306:**

Section 663 of the NYLL creates a private right of action to enforce the rights established by Article 19, and it states "[i]f any employee is paid by his or her employer less than the wage to which he or she is entitled under the provisions of this article, he or she shall recover in a civil action the amount of any such underpayments, together with costs, all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total of such underpayments found to be due." NYLL § 663.

**ANSWER:**

Defendants admit the allegations set forth in Paragraph 306 of the Complaint, but deny that they violated New York Law, the FLSA, or any other law with respect to Plaintiffs' employment.

**COMPLAINT ¶307:**

Under New York State law, private causes of action for unpaid wages are authorized under section 663 of the NYLL and are appropriate for class treatment.

**ANSWER:**

Defendants admit that private causes of action are authorized under section 663 of the NYLL. Defendants deny the remaining allegations set forth in Paragraph 307 of the Complaint.

**COMPLAINT ¶308:**

Plaintiff Sona K. Anand and the New York Class were not paid overtime wages for recorded breaks of 20 minutes or less in duration taken in workweeks in which they recorded on their electronic timesheets at least 40 hours of work time.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 308 of the Complaint.

**COMPLAINT ¶309:**

Plaintiff Sona K. Anand was employed by Defendants Wells Fargo & Company, Wells Fargo Bank, N.A. and Wachovia Bank, N.A. during the respective employment periods defined herein. During this time, Ms. Anand was not paid overtime wages for recorded breaks of 20 minutes or less in duration taken in workweeks in which she recorded at least 40 hours of work time on her electronic timesheets.

**ANSWER:**

Defendants admit that Plaintiff Sona K. Anand was employed by Wells Fargo and Wachovia, and that she was not paid overtime wages for recorded breaks of 20 minutes or less in duration taken in workweeks in which she recorded at least 40 hours of work time on her electronic timesheets. Defendants deny the remaining allegations set forth in Paragraph 309 of the Complaint.

**COMPLAINT ¶310:**

Consequently, by failing to pay Plaintiff Sona K. Anand and the New York Class overtime wages for such breaks, Wells Fargo & Company, Wells Fargo Bank, N.A. and Wachovia Bank, N.A. each violated NYLL §§ 190 and 191.

126

1  **ANSWER:**

2      Defendants deny the allegations set forth in Paragraph 310 of the Complaint.

3  **COMPLAINT ¶311:**

4      The violations of Wells Fargo & Company, Wells Fargo Bank, N.A. and Wachovia Bank, N.A.

5  as described herein constitute willful violations.  Plaintiff Sona K. Anand and the New York Class are

6  entitled to recover liquidated damages.

7  **ANSWER:**

8      Defendants deny the allegations set forth in Paragraph 311 of the Complaint.

9  **COMPLAINT ¶312:**

10     By the foregoing actions, Wells Fargo & Company, Wells Fargo Bank, N.A. and Wachovia

11  Bank, N.A. have each violated the NYLL and are liable to Plaintiff Sona K. Anand, and the New York

12  Class for unpaid overtime wages in an amount to be determined at trial, plus pre-judgment and post-

13  judgment interest, liquidated damages, attorneys' fees, litigation expenses and costs.

14  **ANSWER:**

15     Defendants deny the allegations set forth in Paragraph 312 of the Complaint.

16                                  **<u>PRAYER</u>**

17     WHEREFORE Plaintiffs, on behalf of themselves and the putative class members and collective

18  action members, respectfully pray that this Court certify that Causes of Action 2, 4, 5, 6, 7, 8, 9, and 11

19  be maintained as a class action (or sub-classes thereof) and/or collective action as described herein, and

20  that subsequent thereto Plaintiffs and all others to this action, including class members and collective

21  action members, recover the following:

22     a.     statutory and common law damages and restitution for all unpaid regular wages

23             (including fringe benefits and bonuses), unpaid overtime compensation (at the requisite

24             statutory rate), and unpaid minimum wages and other injuries and damages, as provided

25             by the FLSA, Cal. Labor Code (and applicable Wage Orders), Cal. Bus. & Prof. Code,

26             California state law, NYLL, and NYCRR;

27

28     b.     breach of contract damages, including all compensatory, special or other damages;

                                       127

d.      liquidated damages;

e.      all applicable penalties for the violations set forth herein;

f.      an award of reasonable attorneys' fees, litigation expenses, expert fees, and costs incurred in vindicating the rights of Plaintiffs and all other members of the putative classes and FLSA collective action;

g.      an award of pre-judgment and post-judgment interest at the highest rate permitted by law; and

h.      such other and further relief, at law or in equity, as this Court deems just and appropriate.

**ANSWER:**

Defendants deny the allegations made or implied in the Prayer beginning "WHEREFORE," and deny that Plaintiffs are entitled to the relief sought in that paragraph of the Complaint, or any relief whatsoever.  Defendants also deny that Plaintiffs, or any putative class members, are entitled to recover any damages or other relief in this lawsuit under the FLSA or that this lawsuit is suitable for class action treatment.  Defendants further deny that they violated any state or federal laws with respect to Plaintiffs or any other employees.

<u>**DEFENDANTS' SEPARATE DEFENSES**</u>

In further answer to Plaintiffs' Complaint, Defendants allege the following additional defenses. In asserting these defenses, Defendants do not assume the burden of proof as to matters that, pursuant to law, are Plaintiffs' burden to prove.

<u>**FIRST SEPARATE DEFENSE**</u>

**(Not Statutory Employer - All Claims)**

1.      Defendants deny that WFC and Wachovia can be held liable under the FLSA, the California Labor Code and applicable regulations, California Industrial Welfare Commission ("IWC")

Orders, California Division of Labor Standards Enforcement ("DLSE") regulations, the California

Business and Professions Code, the California Unfair Competition Law ("UCL"), California state law,

NYLL, or the NYCRR because they are not "employers" within the meaning of those statutes.

## SECOND SEPARATE DEFENSE

### (Not Employed by Defendant - All Claims)

2.      The claims of Plaintiffs, and each and every member of the putative class, are barred to

the extent that Plaintiffs allege claims for time periods during which they or any other member of the

putative class was not employed by any of the Defendants in this action.

## THIRD SEPARATE DEFENSE

### (Settlement and Release - All Claims)

3.      Plaintiffs' claims and those of the individuals they seek to represent are barred to the

extent that they have entered into or are otherwise bound by compromise, settlement, or release

agreements regarding those claims.

## FOURTH SEPARATE DEFENSE

### (Unclean Hands - All Claims)

4.      Plaintiffs' claims and those of the putative class members are barred, in whole or in part,

by the doctrine of unclean hands because, among other things, Plaintiffs and any putative class members

intentionally falsified their time records, underreported their hours worked, or intentionally hid their off-

the-clock activities from Defendants, and Defendants were unaware of their alleged off-the-clock

activities or otherwise did not suffer or permit Plaintiffs or any putative class members to work off the

clock.

## FIFTH SEPARATE DEFENSE

### (Statute of Limitations - All Claims for Relief)

5.      Plaintiffs' claims and those of the putative class members are barred, in whole or in part,

by the applicable statute of limitations.

## SIXTH SEPARATE DEFENSE

### (Payment and Offset - All Claims)

6.     Defendants state, in the alternative if necessary, that Plaintiffs and the putative class members have received full payment for all work performed, thereby barring their claims; alternatively, Defendants are entitled to an offset of any amount of relief claimed by Plaintiffs and the putative class members based on compensation previously paid by Wells Fargo to Plaintiffs and the putative class members.

## SEVENTH SEPARATE DEFENSE

### (No Willful Violation - All Claims)

7.     Defendants' acts or omissions were not willful within the meaning of the FLSA, the California Labor Code and applicable regulations, California IWC Orders, California DLSE regulations, the California Business and Professions Code, the California Unfair Competition Law, California state law, NYCRR, or the NYLL.

## EIGHTH SEPARATE DEFENSE

### (No Violation - All Claims)

8.     Defendants at all times, in all manners, acted in accordance with any and all duties and obligations under the FLSA and its regulations, California state law and its regulations, and/or New York state law and its regulations.

## NINTH SEPARATE DEFENSE

### (Estoppel - All Claims)

9.     Plaintiffs' claims and those of the putative class members are barred, in whole or in part, by the doctrine of estoppel, judicial or equitable.

## TENTH SEPARATE DEFENSE

### (*Res Judicata*/Collateral Estoppel/Improper Claim Splitting - All Claims)

10.     Plaintiffs' claims and those of the putative class members are barred by the doctrine of *res judicata* and/or collateral estoppel to the extent that any of the Plaintiffs or any other putative class member or beneficiary of this action has asserted in any prior legal or administrative proceeding that he

or she was entitled to any additional payment to which Plaintiffs claim that they, or members of the putative class action, are entitled.  Plaintiffs' claims are also barred under the doctrine of improper claim splitting.

### ELEVENTH SEPARATE DEFENSE

### (Exempt Employees - All Claims)

11.     Defendants assert the additional defense that one or more Plaintiffs, and the group of persons Plaintiffs purport to represent, were and are exempt from the overtime, minimum-wage, and/or recordkeeping provisions of the FLSA, the California Labor Code and applicable regulations, IWC Orders, DLSE regulations, the California Business and Professions Code, the California Unfair Competition Law, California state law, NYLL, and/or the NYCRR, as executive, administrative, professional, and/or highly compensated employees under 29 U.S.C. § 213(a), the California Labor Code, IWC Orders, DLSE regulations, the California Business and Professions Code, the California Unfair Competition Law, California state law, NYLL, and/or the NYCRR, and related regulations, because Plaintiffs and each and every member of the putative class qualified for one or more applicable exemption provisions, including, but not limited to the Commissioned Employee exemption (Wage Order 4-2001 § 3(D)), and the Administrative, Professional, and Executive Exemptions authorized by California Labor Code section 515(a).

### TWELFTH SEPARATE DEFENSE

### (Accord and Satisfaction - All Claims)

12.     Plaintiffs' claims and those of the putative class members are barred, in whole or in part, by accord and satisfaction.

### THIRTEENTH SEPARATE DEFENSE

### (Waiver - All Claims)

13.     Plaintiffs' claims and those of the putative class members are barred, in whole or in part, by the doctrine of waiver.

**FOURTEENTH SEPARATE DEFENSE**

**(Consent, Acquiescence, or Ratification - All Claims)**

14.     Plaintiffs' claims are barred because Plaintiffs and the individuals they seek to represent consented to, acquiesced in, and/or ratified, through express or implied agreement, the conduct of which they now complain.

**FIFTEENTH SEPARATE DEFENSE**

**(Uncompensated Time Is *De Minimis* - All Claims)**

15.     Defendants state, in the alternative if necessary, that if, in fact, any Defendant has failed to pay any non-exempt employee for work in excess of 40 hours in a work week, the uncompensated time is *de minimis*.

**SIXTEENTH SEPARATE DEFENSE**

**(Uncompensated Time Is Not Compensable - All Claims)**

16.     Defendants state, in the alternative if necessary, that even if any Defendant has in fact failed to pay individuals for any of the activities alleged in Plaintiffs' Complaint, such activities do not constitute compensable work under the FLSA, the California Labor Code and applicable regulations, California IWC Orders, California DLSE regulations, the California Business and Professions Code, the California Unfair Competition Law, California state law, NYCRR, and the NYLL, and furthermore, such activities were not an integral and indispensable part or intrinsic element of Plaintiffs' principal activities of employment and are not compensable.

**SEVENTEENTH SEPARATE DEFENSE**

**(Pending Actions - All Claims)**

17.     The claims of Plaintiffs and each putative class member are barred to the extent that there is/are currently other action(s) pending on the same claims.

**EIGHTEENTH SEPARATE DEFENSE**

**(Payment and Release - All Claims)**

18.     Plaintiffs' claims and those of the putative class members are barred, in whole or in part, by the doctrines of payment and release.

## NINETEENTH SEPARATE DEFENSE

### (Meal Period Provided - First through Fourth and Sixth through Eighth Claims for Relief)

19.     At all times relevant to the Complaint, Defendant(s) provided Plaintiffs and the putative

class members meal periods.  To the extent that Plaintiffs or any putative class members voluntarily

chose not to take their meal periods Defendant(s) have not violated the FLSA, the California Labor

Code, the IWC Wage Orders, California state law, NYLL,  or the NYCRR, and Plaintiffs' meal period

claims are barred.

## TWENTIETH SEPARATE DEFENSE

### (Preliminary and/or Postliminary Activities - First through Third and Sixth through Eighth Claims for Relief)

20.     Part or all of any time Plaintiffs allege should be paid to them and the group of persons

Plaintiffs purport to represent, is preliminary or postliminary time under the Portal-to-Portal Act, 29

U.S.C. § 254(a), the California Labor Code and applicable regulations, California IWC Orders,

California DLSE regulations, the California Business and Professions Code, the California Unfair

Competition Law, California state law, NYCRR, and/or the NYLL, and therefore, not compensable.

## TWENTY-FIRST SEPARATE DEFENSE

### (Excessive Penalties Unconstitutional - Second through Eighth Claims for Relief)

21.     Plaintiffs and the members of the putative class action are not entitled to any penalty or

award to the extent that the penalty provisions of the applicable statutes invoked establish penalties that

are unjust, arbitrary, oppressive, confiscatory and are disproportionate to any damage or loss incurred as

a result of any Defendant's conduct, and thus violate Defendants' rights under the state and federal

Constitutions, including, but not limited to, the Fifth, Eighth, and Fourteenth amendments to the United

States Constitution.

### TWENTY-SECOND SEPARATE DEFENSE

**(No Willful Violation of Cal. Labor Code § 203 - Second through Sixth Claims for Relief)**

22.     Plaintiffs may not claim California Labor Code section 203 penalties because Defendants did not willfully fail to comply with the requirements of the California Labor Code, including, without limitation, sections 201 and 202.

### TWENTY-THIRD SEPARATE DEFENSE

**(Good Faith Dispute—Cal. Labor Code § 203 - Second through Sixth Claims for Relief)**

23.     Plaintiffs are not entitled to Labor Code section 203 penalties because a good faith dispute exists as to the monies allegedly owed at the time of the termination of employment, such that Defendants cannot be held to have willfully failed to comply with the requirements of the applicable California Labor Code sections.

### TWENTY-FOURTH SEPARATE DEFENSE

**(No Willful Violation —Cal. Labor Code § 226 - Second through Sixth Claims for Relief)**

24.     Plaintiffs' claims are barred, in whole or in part, because Plaintiffs are not entitled to any penalty award under section 226 of the California Labor Code since, at all times relevant and material herein, Defendants did not knowingly and intentionally fail to comply with this code section.

### TWENTY-FIFTH SEPARATE DEFENSE

**(Cal. Labor Code § 2856 - Second through Sixth Claims for Relief)**

25.     This Complaint is barred by California Labor Code sections 2856 to the extent that Plaintiffs failed substantially to comply with all the directions of Defendant(s), and such failure proximately caused the alleged damages.

### TWENTY-SIXTH SEPARATE DEFENSE

**(No Cal. Bus. & Prof. Code § 17200 Standing - Third Claim for Relief)**

26.     Plaintiffs' claim under the UCL, California Business & Professions Code section 17200, *et seq.*, is barred to the extent that Plaintiffs lack standing to sue under those sections.

134

## TWENTY-SEVENTH SEPARATE DEFENSE

### (No Recovery Under UCL - Third Claim for Relief)

27.   Plaintiffs improperly seek through their UCL cause of action to recover monies that are not recoverable under the UCL.

## TWENTY-EIGHTH SEPARATE DEFENSE

### (Uncompensated Breaks Are *De Minimis* and/or Bona Fide Meal Break - Eighth Claim for Relief)

28.   Plaintiffs, and the group of persons Plaintiffs purport to represent, are not entitled to compensation for breaks of 20 minutes or less because that time is *de minimis* and because, among other things, Plaintiffs, and the group of persons Plaintiffs purport to represent, spent that time primarily for their own benefit and were able to eat a full meal during that time.

## TWENTY-NINTH SEPARATE DEFENSE

### (Class Action Inappropriate - Eighth Claim for Relief)

29.   Plaintiffs cannot satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure and thus, this lawsuit cannot be maintained as a class action.

## THIRTIETH SEPARATE DEFENSE

### (Individualized Proof – Eighth Claim for Relief)

30.   Plaintiffs' claims and those of the putative class members require individualized proof and therefore cannot be tried as a class action consistent with Defendants' due process rights.

## ADDITIONAL DEFENSES

31.   Defendants are continuing to investigate Plaintiffs' allegations.  Therefore, Defendants reserve the right to amend their Answer and Defenses.

## PRAYER

Defendants pray that Plaintiffs' Third Amended Complaint be dismissed and that Plaintiffs take nothing thereby; that the Court deny certification of this action as a class action under New York law; that Defendants be awarded their costs in this matter, including, but not limited to, reasonable attorneys' fees as permitted by law; and that Defendants be granted such other and further relief to which they may show themselves to be justly entitled.

1   DATED: July 6, 2015

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

SEYFARTH SHAW LLP


By: /s/ Christian J. Rowley
    Christian J. Rowley (SBN 187293)
    Richard L. Alfred (pro hac vice)
    Timothy M. Watson (pro hac vice)

Attorneys for Defendants
WELLS FARGO & COMPANY, WELLS
FARGO BANK, N.A., and WACHOVIA BANK,
N.A.

DEFENDANTS' AMENDED ANSWER TO PLAINTIFFS' THIRD AMENDED COMPLAINT -
COLLECTIVE ACTION AND CLASS ACTION - CASE NO. C 14-00989 PJH

1

## CERTIFICATE OF SERVICE

2

3       I hereby certify that on July 6, 2015, I caused **Defendants' Amended Answer to Plaintiffs' Third Amended Complaint** to be filed using the United States District Court for the Northern District of California's CM/ECF electronic filing system, which sent notification of such filing to all parties registered to receive notice via that service, including Plaintiffs' counsel of record listed below.

4

5       Rhonda H. Wills
        *Appearance Pro Hac Vice*

6       WILLS LAW FIRM, PLLC
        1776 Yorktown, Suite 570

7       Houston, Texas 77056

8       John M. Padilla
        PADILLA & RODRIGUEZ, L.L.P.

9       601 South Figueroa Street, Suite 4050
        Los Angeles, California 90017

10

11                                           /s/ Christian J. Rowley
                                             Christian J. Rowley

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28